# WINDELS MARX

**Windels Marx Lane &
Mittendorf, LLP**

Jeffrey C. Hoffman
212-237-1018
jhoffman@windelsmarx.com

156 West 56th Street, New York,
T. 212.237.1000  F. 212.262.1215

June 20, 2018

*Via E-mail*

Honorable John Michael Vazquez
United States District Judge
Martin Luther King, Jr. Federal
Bldg. & U.S. Courthouse 50 Walnut
Street, Room 4C
Newark, New Jersey 07102

RE:  **United States v. Paul Parmar,** Criminal No. 18-8040
     **Bail Appeal Reply**

Dear Judge Vazquez:

According to the government, Paul Parmar is such a criminal genius that he deceived the smartest (most "sophisticated") financial and legal minds in the world with all of the resources in the world, and therefore could and would figure out how to surreptitiously bust through a "hardened steel band," the SecureCuff,™ and then sprint anonymously across at least two borders, landing out of the reach of the US government.  Apart from being a fanciful scenario, the government does not and cannot explain why, if this were true, such a person would not have, long ago, leisurely boarded a plane and not come back.

In addressing its evidence, the government avoids evidence that, not only did the "Private Investment Firm" and its army of lawyers and accountants in fact detect the alleged fraud, but so did a reporter.  As a result, the Investor (Chinh Chu) offered to and did purchase "Company A" for

Honorable John Michael Vazquez
June 20, 2018
Page 2

$2 million less than its initial valuation.   Parmar must have been a bumbling idiot to think he could deceive this crew or, more likely than not, he never intended to deceive them.  As reported in one of the articles attached to Parmar's motion, the alleged conduct appeared "maladroit and hapless," rather than "'large, complex and brazen.'"
*https://ftalphaville.ft.com/2018/05/17/1526551440000/Criminal-charges-filed-against-former-Constellation-Health-execs/*

The government's opposition brief relies primarily on an inaccurate and overstated recitation of the strength of its evidence.  However, this recitation actually highlights the failure of the government to fully investigate and evaluate the facts before making their charging decision in this matter.  The government's theory of Parmar's guilt fails for two reasons – their "victim" was fully aware of the true valuation of Company A and, moreover, did not pay an inflated price to purchase Company A.

The flaw in the government's theory is their failure to calculate an appropriate valuation of Company A.  The government claims that Parmar "inflate[d] the value of Company A and tricked the Private Investment Firm and others into believing that Company A was worth substantially more than its actual value."  This is an oversimplification that does not take into account what the allegedly inflated value and the actual value of the company were.

The government cannot reasonably dispute the fact that during the negotiation and due diligence phase of the Private Investor CC Capital's acquisition of Company A, two separate firms were hired to perform a valuation and issue a "fairness opinion," as required by 17 CFR §229.1014.  Duff & Phelps Corp. and SunTrust Bank, relying on the data that the government alleges was false and inflated, determined that Company A should be valued at *over double the price*[1] that CC Capital and Company A agreed to close at.

The reason that CC Capital, the U.S. Attorney's Office, the Justice Department, and the Securities and Exchange Commission have failed to make

---

[1] While the government repeatedly refers to this case as a "$300 million fraud," this $300 million total price tag also accounted for the fact that other entities would retain just under 50% ownership of the company.  At no time were any payments made totaling $300 million.

Honorable John Michael Vazquez
June 20, 2018
Page 3

any allegations as to the true value of Company A is because the actual value of Company A is the price that CC Capital paid for it.

The government goes on to claim that "the defendants argument that the victims actually knew of the fraud beforehand and went forward anyway is not credible." The provable facts strongly suggest otherwise.

First, CC Capital was motivated to go forward with the deal because, at a $300 million price tag, it was a good deal for a controlling interest in a profitable company, not to mention the fact that Chu stood earn over $20 million in fees if the deal was consummated.[2] But, more importantly, by discovering the allegedly inflated data. CC Capital recognized that leverage could be gained in order to later seize the remaining interest in the company and end up with 100% of the stock at a massive discount. Chu's conduct pre- and post-closing bears this out.

When the transaction did not receive a "fairness opinion," required from Company A's Independent Committee, Chu was willing to indemnify the committee members to approve a lower-priced offer.

The day after the closing, Chu hired a forensic accounting firm to conduct an audit and "discover" (rediscover) the allegedly inflated data that had already been uncovered during the due diligence phase.

In a conversation which, on information and belief, may have even been recorded, Chu attempted to extort Parmar, demanding that all interest in Company A be transferred to CC Capital and that Parmar pay CC Capital $10 million in exchange for Chu ensuring that the FBI investigation would stop. Parmar did not submit to this attempted extortion, which led to significant litigation where CC Capital is attempting to take total control of Company A by other means.

There was no oversight on the part of KPMG, as simple arithmetic would have revealed that the data provided was 30% short of the inflated collections

---

[2] In its response, the government expresses disbelief that Chu *et.al.* would have learned of the fraud and disregarded their fiduciary duties, to put themselves in jeopardy and their reputations in harm's way. Welcome to the real world. Chu acquired a company he coveted, saw an angle to control all of its shares and stood to earn a cool $20 million in fees.

Honorable John Michael Vazquez
June 20, 2018
Page 4

claims.  An experienced KPMG expert such as Truc To and his world-class team from KPMG would not have such a large discrepancy in collections.  Chu, KPMG and others had the correct data at their disposal.

As noted in Parmar's bail appeal motion, the government has apparently failed to analyze their "victim's" story with a critical eye; two of the world's leading publications on financial news have published articles subsequent to Parmar's arrest questioning how KPMG and CC Capital could have been so utterly negligent in their due diligence efforts to have missed this.  The Financial Times described Parmar's alleged fraud as "less large, complex and brazen" and "more maladroit and hapless."[3] Bloomberg took this analysis one step further, noting the extensive due diligence efforts by KPMG and CC Capital to conclude that "it is hard to escape the feeling that the victims look bad too."[4]

In addition, in the government's response, it paints a picture of Company A as a vast colony of fabricated companies.  Company A consisted of approximately 20 companies, only two of which are alleged to be fraudulent, which explained why Chu was willing to and did purchase a controlling interest in it.

The issue is not whether a defendant has a government- generated incentive to flee (generated by the arrest and charges) and the alleged means to flee, but whether it is more likely than not that he *will* or is decidedly inclined to flee, despite the imposition of "hardened steel" conditions, among others.  The fact that he did not flee month after month with knowledge of the government's investigation tips the scales well beyond 51% in his favor.

The government points to Parmar's ties to India on the one hand, it acknowledges on the other hand that he has disincentives for going there.  It also mentions an Indian-based company Portek, which provided back office services for Company A's operating company.  The government does not allege that Porteck engaged in any wrongdoing. The company is in the medical billing industry, an industry where it is quite common to outsource services to India.

---

[3] https://ftalphaville.ft.com/2018/05/17/1526551440000/Criminal-charges-filed-against-former-Constellation-Health-execs/
[4] https://www.bloomberg.com/view/articles/2018-05-17/securities-fraud-can-happen-with-private-transactions

Honorable John Michael Vazquez
June 20, 2018
Page 5

     With respect to the "anonymous tip," this is evidence that would not support a search warrant and it has all of the hallmarks of a person with an ax to grind.   The government has had more than sufficient time to investigate, and it has not, or it would have said so, attempted to speak to the two individuals identified in the "electronic submission."

     Again, if you put, on one side of the scale, the fact that Parmar is here and has been here knowing what was coming down the pike, and this "anonymous tip" on the other, the Parmar side hits the ground with a bang and propels the "tip" out into the stratosphere.  In fact, load all the government's arguments on top of the "tip," and add just family and community ties and the "SecureCuff" to Parmar's side, and you have at least a 51% chance that Parmar is *not* an unreasonable risk of flight.

     Finally, the government claims that the proposed real estate collateral provides insufficient incentive for Parmar to stay put, because he allegedly put his brother-in-law at risk before, and would do it again.  That his sister and brother-in-law have come under the microscope of a criminal investigation because of him is his greatest incentive for ensuring that no further harm comes to them.

     It is respectfully submitted that Mr. Parmar should be released on the conditions proposed in his motion.

                  Respectfully submitted,

                    S/

                  Jeffrey C. Hoffman
                  Windels Marx Lane & Mittendorf, LLP
                  156 West 56th Street, New York, New York 10019
                  Tel: 212.237.1018 | Fax: 212.262.1215
                  jhoffman@windelsmarx.com |

Honorable John Michael Vazquez
June 20, 2018
Page 6

cc: AUSA Paul Murphy

Elizabeth Auson, Pretrial
Services Officer

Elizabeth_Auson@njpt.uscourts.gov