# WINDELS MARX

**Windels Marx Lane & Mittendorf, LLP**

Jeffrey C. Hoffman
212-237-1018
jhoffman@windelsmarx.com

156 West 56th Street, New York,
T. 212.237.1000  F. 212.262.1215

June 21, 2018

*Via E-mail*

Honorable John Michael Vazquez
United States District Judge
Martin Luther King, Jr. Federal
Bldg. & U.S. Courthouse 50 Walnut
Street, Room 4C
Newark, New Jersey 07102

RE:  **United States v. Paul Parmar**, Criminal No. 18-8040
    **Bail Appeal Reply**

Dear Judge Vazquez:

    I am writing to respectfully submit supplementary information to our previous reply in further support of Paul Parmar's Bail Appeal.  Unfortunately, due to the combination of the late hour that we received the government's opposition on Tuesday and the logistical difficulties in reviewing both the government's submission and our reply with an incarcerated client, there are a few supplementary items that Mr. Parmar would like to ensure are put before the Court prior to tomorrow's hearing.

    As a preliminary matter, there was a small, but significant typo at the top of page 2 in our reply submission.  The investor, Chinh Chu, did not purchase Company A for $2 million less than its initial valuation, but rather $200 million less than the initial valuation and over $300 million less than the subsequent valuation.

Honorable John Michael Vazquez
June 21, 2018
Page 2

On the topic of the value of Company A, Mr. Parmar would like the Court to note that the guidelines calculation provided by the government cannot possibly be accurate, as §2B1.1 does not use the total price of Company A in the going private transaction, but rather the "loss amount," or the difference, if any, between the actual value and what was paid.[1]  Given the undisputable fact that CC Capital closed the deal at over $300 million less than the allegedly inflated value, the likely loss amount is zero.  Thus, accepting the government's guideline calculation, but reducing the loss amount, this results in a guideline range of **8-14 months** (4-10 months with acceptance of responsibility).

Mr. Parmar is particularly troubled by the government's misleading statements about his proffer session.  While it is true that representatives of the government asked him three times the very narrow question of whether he had ever explicitly explained this to Chu, which he admitted that he did not, Mr. Parmar did discuss the basis for Chu's knowledge of the true numbers in far more depth than simply "because the journalist contacted him."[2]  When Parmar attempted to further explain the basis of Chu's knowledge, representatives of the government attempted to rush the proffer to a quick close, claiming that Parmar had to be returned to the Marshals to be transported back to Essex County Correctional Facility.  Then, when the prosecutor contacted Parmar's counsel to discuss the possibility of additional proffer sessions, he explained that they only wanted to hear about information that Parmar had about other people, but did not want to hear anything else about Chinh Chu or CC Capital.  The government's statement that it did not want to hear any more about its sophisticated "victim" bespeaks willful blindness.

In the government's submission, they provide, at exhibits C and D, several emails, purportedly sent by Mr. Parmar in furtherance of this alleged scheme.  However, the government fails to mention the source of these purported emails because they were not obtained pursuant to any search

---

[1] Despite Chu's best efforts to devalue Company A over the past year and a half and place it into bankruptcy, at the time of the transaction, it was a profitable and valuable company.

[2] For the purposes of this submission, I am not going into the content of Mr. Parmar's further explanations, so as to avoid the possibility that retelling these statements here could cause them to fall outside the protections of the proffer agreement.  However, should the Court desire more detail and the government agrees that providing this additional detail would not be subject to use against Mr. Parmar in any manner not covered under the proffer agreement, I am happy to elaborate.

Honorable John Michael Vazquez
June 21, 2018
Page 3

warrant, but rather were delivered to the government by their "sophisticated" victim, Chinh Chu. Chu had illegally stolen all of Mr. Parmar's emails[3] and held them for several months before turning them over to the government. Neither defendant, nor the government, have any way of determining whether these emails are genuine of if they have been tampered with by the government's "sophisticated" victim.

While the questionable authenticity and integrity of the emails submitted by the government is troubling, their inclusion of the Civil Forfeiture Complaint at Exhibit G and discussion of the "Ranga Bhoomi" account is far more problematic, as it relies upon stolen emails that are also protected by attorney-client privilege. Many of the email communications quoted in the Civil Forfeiture Complaint are between Mr. Parmar and his personal attorneys. Ordinarily, if the Government had subpoenaed these emails from Mr. Parmar, he would have had the opportunity to assert his privilege, but since the Government instead obtained them from Chu, no such review appears to have been conducted. The fact that the government even includes Mr. Parmar's privileged communications in its pleadings and references them here in opposition to bail demonstrate the prejudice suffered by Mr. Parmar by this violation of his rights. While this subject will undoubtedly be litigated in later motion practice, Mr. Parmar respectfully submits that its inclusion in a bail opposition is improper and should be stricken and disregarded.

Regarding the anonymous tip, Mr. Parmar would like to reemphasize the fact that there are numerous investigative steps that the government could have taken to corroborate or disprove this tip, but have failed to do so. At his hearing before Magistrate Wettre, I raised the issue that the government could easily contact the two individuals identified in the anonymous tip to interview them, but had made no efforts to do so at that time. One of the individuals, Arvind Walia, works for Chu as the CEO of Company A, so the government cannot credibly claim that they were unable to locate him. The government's silence on this issue in their brief indicates either that they still have made no efforts to interview these individuals, or that the information they obtained is not helpful to their argument.

---

[3] A copy of a letter that I sent to Chinh Chu's attorney, John Altorelli concerning these stolen emails is annexed hereto at Exhibit "A."

Honorable John Michael Vazquez
June 21, 2018
Page 4

Instead of pursuing legitimate investigative steps to corroborate or disprove the anonymous tip, the government has devoted their efforts to connecting Mr. Parmar to the Address Boulevard Building in Dubai through bank records and flight records. However, there would be a much easier way to connect Mr. Parmar to the building, through the visitor and access logs of the building, or an interview of the building's management. However, the government did not take these steps, which would have shown that Mr. Parmar has never been to this building. More importantly, if Mr. Parmar had access to such an apartment in Dubai, why wouldn't he have stayed there on his trips? In the government's discussion of flight records and Mr. Parmar's frequent trips to Dubai, they are silent on the fact that their review of Mr. Parmar's credit card records show that he stayed in a hotel every single time.

Mr. Parmar would like to note that, while the government has failed to distinguish a single case cited by defendant that demonstrate that bail has been routinely granted in similar cases, the cases cited by the government are significantly distinguishable. For example, where the government lists several factors that are similar to the case at bar in *United States v. Gentry,* 445 F.Supp.2d 1018 (D. Ariz. 2006), they have noticeably omitted one of the most important factors that the *Gentry* court considered: "Gentry applied for and established an identification/passport in the name of Don I. Williams for the Kingdom of Kerguelen, a country this Court has never heard of before this case." *Id.* at 1028. The government goes on to cite *United States v. Stewart,* 19 Fed.Appx 46 (4th Cir. 2001), who, like Gentry, but unlike Mr. Parmar, used an alias when traveling. However, two other significant distinguishable factors from *Stewart* were omitted in the government's brief – Stewart was initially released on bail and the government moved for remand after both of his co-defendants took pleas and agreed to cooperate against him and, at the time he was remanded, he was *pro se*. In *United States v. Ishraiteh*, 59 F. Supp. 2d 160 (D. Mass. 1999) and *United States v. Stanford*, 341 Fed. Appx. 979 (5th Cir. 2009), the government correctly notes that, unlike Mr. Parmar, the defendants has minimal contacts in the district or the United States and thus are clearly distinguishable.

For these reasons, and those contained in defendant's prior submissions, it is respectfully submitted that Mr. Parmar should be released on the conditions proposed in his motion.

Honorable John Michael Vazquez
June 21, 2018
Page 5

Respectfully submitted,

S/

Jeffrey C. Hoffman
Windels Marx Lane & Mittendorf, LLP
156 West 56th Street, New York, New York 10019
Tel: 212.237.1018 | Fax: 212.262.1215
jhoffman@windelsmarx.com |

cc: AUSA Paul Murphy

Elizabeth Auson, Pretrial Services Officer

Elizabeth_Auson@njpt.uscourts.gov