RECEIVED

DEC 1 3 2018

AT 8:30_____M
WILLIAM T. WALSH, CLERK

FILED

DEC 1 3 2018

AT 8:30___2:17pm___WM___M
WILLIAM T. WALSH
CLERK

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA | : Hon. ~~Michael A. Shipp~~ (MCA) |
| | : |
| | : Criminal No. 18- 735 |
| v. | : |
| | : |
| | : 18 U.S.C. § 371 |
| PARMJIT PARMAR, | : 15 U.S.C. §§ 78j(b) & 78ff |
|  a/k/a "Paul Parmar," | : 17 C.F.R. § 240.10b-5 |
| SOTIRIOS ZAHARIS, | : 18 U.S.C. § 1343 |
|  a/k/a "Sam Zaharis," | : 18 U.S.C. § 2 |
| RAVI CHIVUKULA, and | : |
| PAVANDEEP BAKHSHI | : |

**I N D I C T M E N T**

The Grand Jury, in and for the District of New Jersey, sitting at Newark,

charges:

**Count 1**
**(Conspiracy to Commit Securities Fraud)**

**Relevant Individuals and Entities**

1.      At all times relevant to Count 1 of this Indictment:

        a.      Defendant PARMJIT PARMAR, a/k/a "Paul Parmar"

("PARMAR"), was a resident of New Jersey and was the Chief Executive Officer

of Company A from its inception through in or about September 2017.

PARMAR also was a member of Company A's Board of Directors.  Until in or

around January 2017, PARMAR, and various entities he owned and controlled,

owned the majority of Company A's shares.

b.      Defendant SOTIRIOS ZAHARIS, a/k/a "Sam Zaharis" ("ZAHARIS"), was a resident of New Jersey and was the Chief Financial Officer of Company A.  He also served on its Board of Directors.

c.      Defendant RAVI CHIVUKULA ("CHIVUKULA") was a resident of New Jersey and served as the Chief Financial Officer of one of Company A's subsidiary companies.  He also was a member of Company A's Board of Directors.

d.      Defendant PAVANDEEP BAKHSHI ("BAKHSHI") was a resident of New York City and London and was a member of Company A's Board of Directors.

e.      "Company A" was a publicly-traded company that, through a web of operating subsidiaries, provided outsourced revenue cycle management ("RCM"), physician practice management, and other related services to hospitals and medical practices in the United States.  Company A was incorporated in Delaware in or around September 2014 as a holding company for the "Operating Company," which owned several subsidiary entities engaged in the businesses referenced above.  In or around December 2014, Company A's securities began trading on the Alternative Investment Market ("AIM") of the London Stock Exchange ("LSE").

f.      The "Private Investment Firm" was a private investment management firm based in New York City that sought to acquire, own and operate businesses by providing long-term capital solutions.

2

g.     The "Go-Private Transaction" referred to a domestic merger transaction, whereby Company A was taken private, that closed on or about January 30, 2017.  As part of the financing of the Go-Private Transaction, the Private Investment Firm invested approximately $82 million in equity and a consortium of financial institutions (the "Lenders") provided another approximately $130 million in debt, in exchange for which the Private Investment Firm received a number of Class A units associated with Company A.

## The Conspiracy

2.     From in or about May 2015 through in or about September 2017, in the District of New Jersey and elsewhere, defendants

**PARMJIT PARMAR,**
**a/k/a "Paul Parmar,"**
**SOTIRIOS ZAHARIS,**
**a/k/a "Sam Zaharis"**
**RAVI CHIVUKULA, and**
**PAVANDEEP BAKHSHI**

did knowingly and willfully conspire and agree with each other and others, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, to use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in contravention of Title 17, Code of Federal Regulations, Section 240.10b-5 in connection with the purchases and sales of securities, by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of

material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, contrary to Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

### Goal of the Conspiracy

3.      The goal of the conspiracy was for the defendants to enrich themselves by falsely inflating the value of Company A and its operating companies and subsidiaries through various fraudulent means to make Company A an attractive investment or acquisition target at prices that far exceeded Company A's true value.

### Manner and Means of the Conspiracy

4.      It was part of the conspiracy that:

a.      Between in or about May 2015 through in or about September 2017, the defendants orchestrated an elaborate scheme to defraud the Private Investment Firm and others out of hundreds of millions of dollars in connection with the Go-Private Transaction.

b.      The defendants employed a variety of fraudulent techniques to induce the Private Investment Firm, the Lenders, and others to fund the transaction.  These tactics included, but were not limited to: (1) falsifying and, in some cases, wholly fabricating, bank and accounting records of subsidiary entities, including the Operating Company, in order to generate a phony

4

picture of Company A's revenue streams; (2) generating fake income streams and, in some cases, fabricating customers of Company A and its subsidiaries; (3) creating fictitious operating companies that Company A purportedly acquired in sham acquisitions; and (4) making other material misrepresentations and omissions to representatives of the Private Investment Firm, the Lenders, and others.  Through these actions, the defendants caused the Private Investment Firm and others to value Company A at over $300 million for purposes of financing the Go-Private Transaction, far in excess of Company A's actual value.

### A.    False Accounting Entries and Fabricated/Altered Bank Statements

c.    The defendants inflated Company A's revenue and overall value by fabricating transfers, customer receipts and other purported income to Company A and its subsidiaries, including the Operating Company.

d.    The defendants created false entries in the Operating Company's accounting records to create the appearance of customer revenue. These entries either reflected transactions that never occurred, or represented transfers into the Operating Company's bank accounts from related companies, rather than revenue from third-party customers.  The Operating Company's revenue, as Company A's primary subsidiary, had a significant impact on Company A's overall financial performance.

e.    The defendants created fake or altered bank statements to match the fraudulent and mischaracterized transactions set forth in the

5

Operating Company's accounting records and to further create the impression of real revenue to the Operating Company.

      f.    The defendants also created fake bank statements for other purported subsidiaries of Company A, including a fictitious entity the defendants created as a part of the scheme.

**B.**    **Bogus Customers and Customer Contracts**

      g.    The defendants fabricated customers and associated revenue of certain of Company A's subsidiaries, including the Operating Company.

      h.    During the due diligence period of the Go-Private Transaction, the co-conspirators sent the Private Investment Firm information concerning customers that either did not exist or that had no relationship with the Operating Company.

      i.    In or around late January 2016, defendant ZAHARIS leased temporary office space throughout the country for numerous companies that the defendants claimed were real customers of the Operating Company. The fake office locations were designed to further create the appearance that these entities were legitimate clients of the Operating Company.

**C.**    **Fake Operating Companies and Sham Acquisitions**

      j.    To further inflate Company A's revenues and overall value, the defendants orchestrated sham acquisitions by Company A of three separate purported medical billing and/or RCM businesses: Northstar First Health, LLC ("Northstar"); Phoenix Health, LLC ("Phoenix"); and MDRX Medical Billing ("MDRX").

6

k.     Each of the three transactions followed a similar pattern: Company A raised money for the purported acquisition through a secondary stock offering on the AIM; the target or acquired company was formed shortly before the announced acquisition; and the funds raised for the acquisition were used for other purposes. In all three transactions, the defendants made numerous false and misleading statements about the assets, operations and value of the acquired companies.  In reality, Phoenix and MDRX had no real assets or revenues, and Northstar had one asset that was worth substantially less than the amount Company A claimed to have used to acquire it.

l.     The defendants used the money raised from the sham secondary stock offerings for other purposes.  For example, the funds from one such secondary offering were used to, among other things, make it falsely appear as though the Operating Company had substantial customer revenue when, in fact, the customer revenue was simply comprised of transfers of the money that had been raised in the secondary offering.  In order to make it falsely appear as though the funds were revenue, the defendants created phony customers and altered bank statements to make it appear as though the funds had originated with the phony customers.

## **Overt Acts**

5.     In furtherance of the conspiracy and to effect the unlawful object thereof, defendants PARMAR, ZAHARIS, CHIVUKULA, BAKHSHI and others committed and caused to be committed the following overt acts, among others, in the District of New Jersey and elsewhere:

a.      On or about January 27, 2016, the defendants caused approximately $31,344.88 to be transferred from Company A's bank account to the Operating Company's bank account and then falsely recorded that transfer in the Operating Company's general ledger as revenue from a purported third-party customer of Company A.

b.      On or about June 26, 2016, defendant BAKHSHI sent an email to defendant PARMAR regarding slides he had prepared for an upcoming presentation to the Private Investment Firm, the Lenders, and others, concerning Company A.

c.      On or about June 27, 2016, the defendants gave a presentation to the Private Investment Firm, the Lenders, and others, during which they made several material misrepresentations and omissions regarding Company A, including highlighting Company A's sham acquisitions of Northstar, Phoenix and MDRX.

d.      On or about July 15, 2016, defendant ZAHARIS sent an email to representatives of the Private Investment Firm attaching a spreadsheet of financial information containing various material misrepresentations and omissions regarding Company A.

e.      On or about July 19, 2016, defendant PARMAR sent an email to representatives of the Private Investment Firm, copying defendants ZAHARIS and CHIVUKULA, and attaching a spreadsheet of financial information containing various material misrepresentations and omissions regarding Company A.

f.       On or about July 22, 2016, defendant CHIVUKULA sent an email to representatives of the Private Investment Firm, copying defendants PARMAR and ZAHARIS, and attaching a spreadsheet of financial information containing various material misrepresentations and omissions regarding Company A.

g.       On or about July 29, 2016, defendants PARMAR and ZAHARIS met with a representative of the Private Investment Firm at an office in or around Hazlet, New Jersey, in connection with the Go-Private Transaction.

All in violation of Title 18, United States Code, Section 371.

**Count 2**
**(Securities Fraud)**

1.      The allegations set forth in Paragraphs 1, 4 and 5 of Count 1 of this Indictment are hereby repeated, realleged, and incorporated as if fully set forth herein.

2.      From in or about April 2016 through on or about January 30, 2017, in the District of New Jersey and elsewhere, defendants

**PARMJIT PARMAR,**
**a/k/a "Paul Parmar,"**
**SOTIRIOS ZAHARIS,**
**a/k/a "Sam Zaharis"**
**RAVI CHIVUKULA, and**
**PAVANDEEP BAKHSHI**

by use of the means and instrumentalities of interstate commerce, the mails, and facilities of national securities exchanges, directly and indirectly, knowingly and willfully used manipulative and deceptive devices and contrivances in contravention of Title 17, Code of Federal Regulations, Section 240.10b-5 in connection with the purchases and sales of securities, to wit, Class A Units issued by a company affiliated with Company A, by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, namely, by engaging in deceptive and fraudulent acts upon

10

purchasers of Class A Units of a company affiliated with Company A in connection with the Go-Private Transaction described herein.

In violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Section 2.

**Count 3**
**(Wire Fraud)**

1.      The allegations set forth in Paragraphs 1, 4 and 5 of Count 1 of
this Indictment are hereby repeated, realleged, and incorporated as if fully set
forth herein.

2.      On or about January 27, 2016, in the District of New Jersey and
elsewhere, defendants

**PARMJIT PARMAR,**
**a/k/a "Paul Parmar,"**
**SOTIRIOS ZAHARIS,**
**a/k/a "Sam Zaharis"**
**RAVI CHIVUKULA, and**
**PAVANDEEP BAKHSHI**

knowingly and intentionally devised a scheme and artifice to defraud, namely,
the scheme described in Paragraph 4 of Count 1, and to obtain money and
property by means of materially false and fraudulent pretenses,
representations, and promises, and, for the purpose of executing and
attempting to execute such scheme and artifice, did knowingly transmit and
cause to be transmitted by means of wire, radio, and television communication
in interstate and foreign commerce, certain writings, signs, signals, pictures,
and sounds, specifically, an electronic transfer of funds in the amount of
$31,344.88 from one of Company A's bank accounts to the Operating
Company's bank account.

In violation of Title 18, United States Code, Section 1343 and Section 2.

## Forfeiture Allegation

1.      As a result of committing the offenses constituting specified

unlawful activity as defined in 18 U.S.C. § 1956(c)(7), as alleged in Counts 1

through 3 of this Indictment, defendants

**PARMJIT PARMAR,**
**a/k/a "Paul Parmar,"**
**SOTIRIOS ZAHARIS,**
**a/k/a "Sam Zaharis"**
**RAVI CHIVUKULA, and**
**PAVANDEEP BAKHSHI**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28

U.S.C. § 2461(c), all property, real and personal, that constitutes or is derived

from proceeds traceable to the commission of the charged wire fraud and

securities fraud offenses, and all property traceable thereto, including, but not

limited to the following:

    a. A sum of money equal to the amount of proceeds traceable to the offenses charged in Counts 1 through 3 of this Indictment; and

    b. All of the defendants' right, title and interest in the following specific property:

        i.      The real property known as 50 Riverside Boulevard, Unit 21b, New York, New York;

        ii.     The real property known as 2 River Terrace, Unit 12J, New York, New York;

        iii.    The real property known as 40 Broad Street, Unit 20FG, New York, New York;

        iv.     The real property known as 18 and 19 Colts Gait Late, Colts Neck, New Jersey;

v.      The contents of TD Bank Account number ██████8861, held in the name of First Connect Center Investors Fund LP;

vi.     The contents of TD Bank Account number ██████3616, held in the name of Sunshine Star LLC;

vii.    The contents of TD Bank Account number ██████3418, held in the name of Aquila Alpha;

viii.   The contents of Wells Fargo Account number ██████7693, held in the name of Sequoia Training and Nutrition;

ix.     The contents of Wells Fargo Account number ██████4994, held in the name of Aquila Alpha LLC;

x.      The contents of Bank of America Account number ██████7218, held in the name of First Connect Center Investors Fund LP;

## **Substitute Assets Provision**

2.      If any of the above-described forfeitable property, as a result of any act or omission of the defendant(s):

(a)      cannot be located upon the exercise of due diligence;

(b)      has been transferred or sold to, or deposited with, a third person;

(c)      has been placed beyond the jurisdiction of the Court;

(d)      has been substantially diminished in value; or

(e)      has been commingled with other property which cannot be subdivided without difficulty;

14

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

A TRUE BILL

Grand Jury Foreperson

CRAIG CARPENITO
UNITED STATES ATTORNEY

15

CASE NUMBER: 18- 735 (MAS) MCA

**United States District Court**
**District of New Jersey**

**UNITED STATES OF AMERICA**

v.

**PARMJIT PARMAR,**
**a/k/a "Paul Parmar,"**
**SOTIRIOS ZAHARIS,**
**a/k/a "Sam Zaharis,"**
**RAVI CHIVUKULA,**
**PAVANDEEP BAKHSHI**

**INDICTMENT FOR**
18 U.S.C. § 371
15 U.S.C. §§ 78j(b) & 78ff
17 C.F.R. § 240.10b-5
18 U.S.C. § 1343
18 U.S.C. § 2

Foreperson

**CRAIG CARPENITO**
*UNITED STATES ATTORNEY*
*NEWARK, NEW JERSEY*

NICHOLAS P. GRIPPO
PAUL A. MURPHY
*ASSISTANT U.S. ATTORNEYS*
LESLIE E. LEHNERT
*TRIAL ATTORNEY, MONEY LAUNDERING ASSET RECOVERY SECTION*