# WINDELS MARX

**Windels Marx Lane & Mittendorf, LLP**

Jeffrey C. Hoffman
156 West 56th Street
New York, New York 10019
T. 212.237.1000  F. 212.262.1215
jhoffman@windelsmarx.com

July 17, 2022

*Via ECF*

Honorable Madeline Cox Arleo
United States District Judge
Martin Luther King, Jr. Federal
Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

> RE: <u>United States v. Paul Parmar,</u> Criminal No. 2:18-cr-00735-MCA
> <u>Request for Permission to File</u>

Dear Judge Arleo:

     I am writing to respectfully request leave from this Court to file a motion for reconsideration or, in the alternative, an interlocutory appeal and, as it relates to the issue of venue, a petition for a writ of mandamus. I do not make this request lightly, but because it appeared from the oral argument held in relation to this matter on July 12, 2022, that I and my co-counsel had apparently failed to clearly set forth a few key factual and legal points, thus inadvertently handicapping the Court in making the decisions leading to its July 13, 2022, Order (ECF No. 154).

     As this Court noted at the outset of the oral argument, the motions in this matter were extensively briefed by the parties. However, as all agree that this matter is a complex case and as the briefing was completed more than a year before the arguments were held – due unfortunately in large part to delays caused by my client's ongoing health issues – an unusually lengthy

Honorable Madeline Cox Arleo
July 17, 2022
Page 2

period of time had passed between the matters being briefed and the Court hearing from the parties. Some of the issues raised by Mr. Parmar were dependent on small but legally significant factual distinctions that may have impacted this Court's decisions.

For example, on the issue of venue the Court during oral argument relied in substantial part on *United States v. Menendez*, 137 F. Supp. 3d 688 (D.N.J. 2015), *aff'd on other grounds*, 831 F.3d 155 (3d Cir. 2016) – yet the key distinction between the *Menendez* decision and the instant case is the factual impossibility of the Government proving the sole overt act alleged to have taken place in New Jersey. In *Menendez*, the Government supplied an exhibit supporting its contention that the challenged conduct had taken place in New Jersey; here, on the contrary, the Government did no such thing and does not allege anywhere in its Opposition brief that the meeting referenced in Overt Act (g) actually *did* take place in New Jersey. Nor could it do so in good faith, based on its own discovery. *See* Exhibit A attached hereto. This is significant in light of the clear legal requirement for at least one overt act in order to establish venue in a conspiracy count (*United States v. Birks*, 2008 U.S. Dist. LEXIS 71721 (D.N.J. Sep. 2, 2008). The requirement for a single overt act taking place within a jurisdiction in order for venue to attach distinguishes the conspiracy count in the instant indictment from the substantive counts, where the more general "in the District of New Jersey and elsewhere" language may be sufficient.

The question of venue becomes ripe when it is apparent that there is a defect in the allegations of venue in the existing indictment. It is thus appropriately brought in a pre-trial motion to ensure that the objection to venue is not inadvertently waived by the defendant and to prevent the risk of irreparable harm to a defendant's Fifth and Sixth Amendment rights (*see United States v. Perez*, 280 F.3d 318 [3d Cir. 2002]; *United States v. Sandini*, 803 F.2d 123 [3d Cir. 1986]) by proceeding to trial on a defective indictment. As the Supreme Court of the United States has stated, "[q]uestions of venue in criminal cases, therefore, are not merely matters of formal legal procedure. They raise deep issues of public policy…" *United States v. Johnson*, 323 U.S. 273, 276 (1944). While venue can be appropriate in a conspiracy case so long as one overt act took place in that jurisdiction, the requirement that *at least one* overt act in that jurisdiction must be charged to properly establish venue is not an empty one. *See Perez,* 280 F.3d at 329. Here, the sole overt act listed

in the indictment as taking place in New Jersey indisputably took place in New York instead. Significantly, the Government's opposition papers did not allege that any of the other indicted overt acts actually took place in New Jersey but instead asserted that there would be sufficient proof of venue elicited at trial. Regardless of the potential trial evidence, however, the defendant is entitled to proceed on a valid indictment as voted upon by a Grand Jury, an essential right secured to him by the Fifth Amendment.

Similarly, the Court's reliance upon *United States v. Shkreli*, 2017 U.S. Dist. LEXIS 140150 (E.D.N.Y. May 16, 2017) which bears superficial similarity but essential factual differences to Mr. Parmar's situation, makes it seem that we apparently failed to clearly set forth those factual distinctions for this Court. The defendant in *Shkreli* sought – and failed – to suppress emails and documents recovered from a corporate entity that no longer existed and in which he had no legitimate privacy concern. The *Shkreli* Court rightly emphasized the corporate nature of the domain and emails sought to be suppressed by the defendant in that case. Mr. Parmar, on the other hand, was not using a corporate email domain but, rather, one that was privately owned and that was never sold or transferred by him. As a result, Mr. Parmar retained and made multiple efforts to assert his privacy interest in that domain.

As questioned by this Court, one of the reasons that Mr. Parmar sought with such diligence to assert his privacy interest in the constellationhealthgroup.com domain was the fact that it retained years' worth of personal and privileged emails completely unrelated to Company A or the Go Private transaction.[1] While the account clearly, based on the Government's statement to this Court in oral argument, also held a number of emails of interest to the Government, the inculpatory or even exculpatory nature of the emails is beside the point that Mr. Parmar wishes to clarify. Mr. Parmar has been unable in substantial part to supply examples of privileged emails because his access to the domain and its contents was prevented in or about early October of 2017. While the Government has provided voluminous discovery recovered from the domain, and while this discovery has formed the

---

[1] Indeed, the constellationhealthgroup.com domain hosted several email accounts used by Mr. Parmar for personal reasons and for other businesses unrelated to Company A, such as pegasusbluestarfund.

Honorable Madeline Cox Arleo
July 17, 2022
Page 4

basis of motions by Mr. Parmar, it is by no means the equivalent of unfettered access to the contents of the domain.  However, some emails have been provided by the Government which contain privileged communications.  One of the many issues caused by the lack of a privilege review for the contents of this private account is that some of the emails are among multiple individuals; this circumstance viewed in a vacuum might lead one to believe that such an email was not privileged, yet with many of them the attorney-client privilege would apply as each of the individuals copied had a formal attorney-client relationship with the law firm.  *See* Exhibit B attached hereto containing an example of such an email.

In addition to the lack of access to the domain rendering it difficult to clearly elucidate the point regarding privileged communications for the Court, the timeline is essential to Mr. Parmar's argument regarding the question of whether or not Company A or its representatives were acting as agents of the Government when they seized the domain and its contents and, months later, provided them to the prosecutorial team. All of these issues create clear factual distinctions between the instant matter and the *Shkreli* Court's analysis. Therefore, we respectfully seek leave to file a motion for reconsideration so that we can more clearly illuminate these points for the Court.  In the alternative, we seek the Court's permission to pursue these issues via interlocutory appeal.

Respectfully submitted,

*/s/ Jeffrey C. Hoffman*

Jeffrey C. Hoffman
Windels Marx Lane & Mittendorf, LLP
156 West 56th Street
New York, New York 10019
Tel: 212.237.1018 | Fax: 212.262.1215
jhoffman@windelsmarx.com |

cc: AUSA Nicholas Grippo

Honorable Madeline Cox Arleo
July 17, 2022
Page 5

AUSA Caroline Silane
AUSA Matthew Nikic

Ricardo Solano
Friedman Kaplan Seiler & Adelman LLP

Franklin G. Monsour, Jr.
Orrick Herrington & Sutcliffe LLP