

**U.S. DEPARTMENT OF JUSTICE**

*United States Attorney*
*District of New Jersey*

---

*Olta Bejleri & Carolyn A. Silane*          *970 Broad Street, 7th floor*          *973-645-2700*
*Assistant United States Attorneys*          *Newark, New Jersey 07102*

September 6, 2024

**VIA EMAIL & ECF**

Hon. Madeline Cox Arleo, U.S.D.J.
United States District Court
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07102

      Re:    *United States v. Parmar*, Crim. No. 18-735

Dear Judge Arleo:

      The Court permitted Defendant Parmjit Parmar, a/k/a "Paul Parmar" until September 3, 2024 to retain counsel. That deadline has now passed, and Parmar has failed to comply with the Court's order. The Government submits this letter to respectfully request a conference at which the Court either appoint Parmar counsel or permit him to proceed *pro se*.[1]

      As the Court knows, this matter has been ready for trial since at least 2022. In an effort to delay the trial, Parmar terminated his relationship with his prior attorneys and requested 60 days to retain new counsel. The Court granted that request on May 14, 2024—nearly four months ago. And during the bail violation hearing on August 22, 2024, the Court gave Parmar until September 3, 2024 to retain new counsel. As far as the Government knows, no one has been retained. To avoid permitting Parmar to cause further delay, the Government requests a hearing at the Court's earliest convenience for the Court to either appoint him counsel or permit him to proceed *pro se*. Should Parmar elect to proceed *pro se*, below is the law and required colloquy regarding a defendant's right to self-representation.

---

[1]     The Government defers to the Court's judgment on whether Parmar meets the financial criteria for appointed counsel.

### A. The Law Governing Self-Representation

A defendant charged with a crime has an absolute and automatic right to counsel. U.S. Const. Amend. VI; 28 U.S.C. § 1654; *Gideon v. Wainwright*, 372 U.S. 335 (1963); *see also Faretta v. California*, 422 U.S. 806, 819 (1975). This right requires that legal assistance be made available even if the defendant has not requested it. *Carnley v. Cochran*, 369 U.S. 506, 513 (1962). A defendant also has the right to represent himself in criminal proceedings. *Faretta*, 422 U.S. at 819; *United States v. Wade*, 388 U.S. 218, 223-27 (1967).

When a defendant unequivocally asserts the right to represent himself in a criminal proceeding, that assertion "place[s] on [the trial] court[s] the burden of establishing that the defendant who does so acts voluntarily, and that he understands both the scope of the right sacrificed and the restrictions and challenges that he will face." *United States v. Peppers*, 302 F.3d 120, 129 (3d Cir. 2002). Thus, to permit a defendant to waive the right to counsel and exercise the right to self-representation, a trial court must (i) ensure that the defendant understands the ramifications of this decision, and (ii) ensure compliance with necessary procedural safeguards. *See id.* at 138. Failure to establish a record of adequate waiver is *per se* reversible on appeal. *See id.*

Four requirements must exist before a court may permit a defendant to proceed *pro se*:

1. The defendant's assertion must be clear and unequivocal, *id.* at 132; *Buhl v. Cooksey*, 233 F.3d 783, 791 (3d Cir. 2000);

2. The court must inquire thoroughly to satisfy itself that the defendant understands the nature of the charges, the range of possible punishments, potential defenses, technical problems that the defendant may encounter, and any other facts important to a general understanding of the risks involved, *Peppers*, 302 F.3d at 132; *Gov't of the V.I. v. Charles*, 72 F.3d 401, 404 (3d Cir. 1995);

3. The court must assure itself that the defendant is competent to stand trial, *Peppers*, 302 F.3d at 132; and

4. The request must be timely and, in cases where the request to represent oneself is made on the eve of trial, or during trial, the court must ascertain the defendant's reasons for the dissatisfaction with counsel, *Peppers*, 302 F.3d at 132-33; *Buhl*, 233 F.3d at 798; *Gov't of the V.I. v. James*, 934 F.2d 468, 471 (3d Cir. 1991); *United States v. Welty*, 674 F.2d 185, 187 (3d Cir. 1982).

To be unequivocal, a defendant must explicitly choose between exercising the right to counsel and the right to self-representation, so that a court may be reasonably

certain that the defendant wishes to represent himself. *Buhl*, 233 F.3d at 792. Requiring the defendant to make an explicit choice protects against manipulation by the defendant of the mutually exclusive rights to counsel and self-representation, for example, by "making casual and ineffective requests to proceed *pro se*, and then attempting to upset adverse verdicts after trials at which they had been represented by counsel" or by "proceeding *pro se*, then challenging any subsequent conviction by alleging a denial of the right to counsel." *Id.* Thus, a defendant who vacillates between wishing to be represented by counsel and wishing to represent himself could place the trial court in a difficult position. If the court appoints counsel, the defendant could, on appeal, rely on his intermittent requests for self-representation in arguing that he had been denied the right to represent himself. If the court permits self-representation, the defendant could claim that he had been denied the right to counsel. The requirement of unequivocality resolves this dilemma by forcing the defendant to make an explicit choice. If he equivocates, he is presumed to have requested the assistance of counsel. *See, e.g.*, *Adams*, 875 F.2d at 1444; *Meeks*, 482 F.2d at 468.

Next, the court's inquiry must be designed to determine whether the defendant understands the risks, i.e., "the structural limitations or perils of representing himself." *Peppers*, 302 F.3d at 134; *see also Welty*, 674 F.2d at 188 (observing that "the district court should advise him in unequivocal terms both of the technical problems he may encounter in acting as his own attorney and of the risks he takes if his defense efforts are unsuccessful"). The goal of this inquiry is to determine whether the defendant's waiver of counsel is made knowingly. Notably, the inquiry is not an evaluation of whether the defendant is competent to represent himself in terms of his understanding of the substantive law or the procedural details. *Peppers*, 302 F.3d at 134. Rather, the focus should be on the defendant's understanding of the importance of counsel. *Id.*

Because the defendant usually gives up more than he gains when he elects self-representation, the court must be reasonably certain of the defendant's wishes to represent himself. *Brewer v. Williams*, 430 U.S. 387, 404 (1977). Therefore, if the defendant persists in his request to represent himself, a comprehensive *Faretta* inquiry of the defendant is appropriate.

The court should further ensure that the defendant is made aware of the possible penalties for the charges he is facing. *United States v. Moskovits*, 86 F.3d 1303, 1309 (3rd Cir. 1996).[2] Also, because the Sentencing Guidelines apply in this case, the court should ensure that the defendant is aware the Sentencing Guidelines will be used in an advisory fashion in the determination of any sentence. *Id.* at 1309.

---

[2]  It is preferable during a *Faretta* hearing for the Court, not the prosecutor, to conduct the waiver inquiry. *United States v. Moya-Gomez*, 860 F.2d 706, 735 (7th Cir. 1988). This, of course, includes informing the defendant of the possible penalties.

3

In addition, the court should also discuss with the defendant the dangers or perils of self-representation. That discussion may include:

1. The proverb that "he who represents himself has a fool for a client." *See James*, 934 F.2d at 472 n.5 (upholding defendant's waiver of counsel where trial judge warned that "a person who has himself for a lawyer is a fool").

2. That such a choice must be made with eyes wide open. *See United States v. Balough*, 820 F.2d 1485 (9th Cir. 1987).

3. The court's role does not change when the defendant proceeds *pro se*, and the defendant will not be excused from complying with rules of procedure and evidence. *See United States v. Trapnell*, 512 F.2d 10 (9th Cir. 1975).

4. That there are rules as to when a defendant can and cannot speak during a trial.

5. That lacking knowledge and facility with evidence rules can be a detriment to making objections at trial. *See Stubbs*, 281 F.3d at 118; *Charles*, 72 F.3d at 407-08.

6. That what a defendant says during trial is not evidence unless the defendant is on the witness stand testifying.

7. That sometimes attorneys know of or will see possible defenses that a defendant may not. *See Charles*, 72 F.3d at 406.

8. That sometimes attorneys can make arguments that defendants cannot.

9. That there are limited resources available to the defendant, including limited access to a law library and legal materials. *See United States v. Pina*, 844 F.2d 1 (1st Cir. 1988).

10. That attorneys have access to investigators that the defendant would not. *See Peppers*, 302 F.3d at 136.

11. The potential effect of shackles or other visible evidence of the defendant's incarceration appearing before the jury and its effect on the defendant's ability to represent himself. *See Davidson v. Riley*, 44 F.3d 1118 (2d Cir. 1995).

After conducting this inquiry to determine if the defendant is making a request to represent himself that is timely, not for purposes of delay, unequivocal, and knowing, voluntary, and intelligent (which of course includes making the defendant aware of the nature of the charges, the possible penalties, and the perils of self-representation), the court must determine whether to grant or to deny the defendant's

request. Notably and as indicated above, a defendant who is silent or equivocal during the waiver inquiry impliedly forfeits the right to self-representation. *See, e.g.*, *Cain v. Peters*, 972 F.2d 748, 750 (7th Cir. 1992) ("defendants forfeit self-representation by remaining silent at critical junctures before or during trial").

Finally, if the court were to determine that the defendant unequivocally asserted his right to proceed without counsel, that all other *Faretta* requirements have been met, and that the defendant is, therefore, competent to represent himself, the defendant should be specifically admonished and reminded that a self-represented defendant may not deviate from established court procedures. The right to self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." *Faretta*, 422 U.S. at 834 n.46.

Accordingly, the court may refuse to permit the defendant to represent himself when he is "not able and willing to abide by rules of procedure and courtroom protocol." *United States v. Lopez-Osuna*, 232 F.3d 657, 665 (9th Cir. 2000*); see also, e.g.*, *United States v. Williams*, 428 F. App'x 723, 724-25 (9th Cir. 2011) ("[T]hroughout the *Faretta* hearing, Williams interrupted the court and counsel, and was rude and disrespectful to the court. His behavior was so disruptive that the court threatened to bind and gag him, and he was finally subdued by the Marshals. The district court correctly found that Williams was not willing to abide by courtroom protocol and rules of procedure based on his behavior during the *Faretta* hearing."). As explained by the Third Circuit, "[t]he Sixth Amendment gives a criminal defendant the right to represent himself at trial, but only to the extent that he is "able and willing to abide by rules of procedure and courtroom protocol." *United States v. Schwartz*, 315 F. App'x 412, 416 (3d Cir. 2009) (quoting *Faretta*, 422 U.S. at 834; *McKaskle*, 465 U.S. at 173). Moreover, the Court may terminate the defendant's self-representation if the defendant "deliberately engages in serious and obstructionist misconduct." *Faretta*, 422 U.S. at 834 n.46. Standby counsel could then resume the defense. *See Davis v. Grant*, 532 F.3d 132, 143 (2d Cir. 2008) ("[A] judge *may* use willingness and ability to abide by courtroom protocol as prerequisites for accepting a defendant's waiver of his right to counsel, and *may* appoint standby counsel to represent a defendant who has forfeited his right to appear *pro se*."). Of course, a lack of legal knowledge and familiarity with the Rules of Evidence or criminal procedure, "without severely disruptive behavior, is not sufficient to override [a defendant's] right of self representation." *Lopez-Osuna*, 242 F.3d at 1200.

### B. The Court Should Appoint Standby Counsel

Should Parmar proceed *pro se*, the Government urges the Court to appoint standby counsel. In *Faretta*, the Supreme Court held that "a State may—*even over objection by the accused*—appoint a 'standby counsel' to aid the accused." 422 U.S. at 834 n.46 (emphasis added). And in *McKaskle v. Wiggins*, the Supreme Court addressed "what role standby counsel who is present at trial over the defendant's

5

objection may play consistent with the protection of the defendant's *Faretta* rights." 465 U.S. 168, 170 (1984).

Specifically, *Wiggins* teaches that standby counsel may be appointed over the defendant's objection so long as: (i) the defendant retains "actual control over the case he chooses to present to the jury," and (ii) standby counsel's participation does not "destroy the jury's perception that the defendant is representing himself." *Id.* at 178-79. Neither of these two circumstances exists here. Appointing standby counsel, therefore, would fulfill the important functions addressed by *Wiggins* without violating Parmar's Sixth Amendment rights. *See id.* at 184 ("A defendant's Sixth Amendment rights are not violated when a trial judge appoints standby counsel—*even over the defendant's objection*—to relieve the judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals.").

Moreover, appointing standby counsel would enable that counsel to take over Parmar's representation during trial should Parmar become unwilling or unable to represent himself. In *Faretta*, the Supreme Court explained that one of the permissible purposes of appointing standby counsel over a defendant's objection is to make counsel "available to represent the accused in the event that termination of the defendant's self-representation is necessary." 422 U.S. at 834 n.46. The Supreme Court further explained that a "trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist conduct." *Id.* at 835.

### C. Parmar Has No Right to Hybrid Representation

Should the Court choose to exercise its discretion and appoint standby counsel, the Government requests that the Court preclude Parmar from any future attempts at hybrid representation. "Pro se litigants have no right to 'hybrid representation' because '[a] defendant does not have a constitutional right to choreograph special appearances by counsel.'" *United States v. Turner*, 677 F.3d 570, 578 (3d Cir. 2012) (quoting *Wiggins*, 465 U.S. at 183); *see also United States v. Moro*, 505 F. App'x 113, 115 (3d Cir. 2012) ("A criminal defendant has no right to 'hybrid' representation.") (citation omitted); *U.S. v. D'Amario*, 268 F. App'x 179, 180 (3d Cir. 2008) ("The Constitution does not confer a right to proceed simultaneously by counsel and *pro se* . . . ."). Therefore, if Parmar elects to represent himself, standby counsel should not act in a representative manner. Standby counsel is not co-counsel, and the Court should only permit standby counsel to help Parmar prepare his case or else take over the representation completely should Parmar change his mind about proceeding *pro se*.

### D. Suggested Measures to Clarify the Record Concerning Waiver

Should Parmar elect to proceed *pro se*, the Government requests that the Court

6

adopt the procedure outlined below in its colloquy with Parmar during a *Faretta* inquiry. The Third Circuit in *Peppers* explicated the framework for courts to use in determining whether a defendant's decision to proceed *pro se* is knowing and voluntary. *See* 302 F.3d at 136-37 (deriving colloquy questions from Federal Judicial Center, *Benchbook for U.S. District Judges* 1.02 (4th ed. 2000)). Further, in *United States v. Jones*, the Third Circuit held that it "require[s] that all of the subjects covered in the model questions set forth in *Peppers* be fully explored in the inquiry, to the extent those subjects are relevant." 542 F.3d 223, 234 (3d. Cir. 2006) (emphasis added). "Even if the colloquy skips *just one* of the [relevant] factors, it fails to establish that the waiver is knowing, intelligent, and voluntary." *Id.* at 231-32 (emphasis added); *Peppers*, 302 F.3d at 135. The Third Circuit further instructs that, "if, during the course of the inquiry, it appears that the defendant needs further explanation, or it is evident that the defendant does not comprehend what the court is saying or asking, the court will need to probe further." *Peppers*, 302 F.3d at 137. In sum, in conducting its inquiry, the Court must engage in a "penetrating and comprehensive examination of all the circumstances." *Id.* at 131 (internal quotation marks omitted).

The Government thus respectfully requests that the Court employ the following colloquy, in the presence of the Government,[3] to determine whether the defendant is seeking to proceed *pro se* and has voluntarily, knowingly, and intelligently waived his right to counsel:

1. Have you ever studied law? If so, what was the nature and extent of those studies? Also, when and where did you study law?

2. Have you ever represented yourself in a criminal action?

3. Do you know that the Sixth Amendment gives you the absolute right to counsel?

4. Do you understand that you are charged with three crimes: conspiracy to commit securities fraud, in violation of Title 18, United States Code, Section 371 (Count One); securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Section 2 (Count Two); and wire fraud, in violation of Title 18, United States Code, Sections 1343 and 2 (Count Three)?

5. Do you understand that if you are found guilty of the crime charged in Count One (conspiracy to commit securities fraud), the Court could sentence you to at least five years in prison?

---

[3] The Third Circuit has found it "inadvisable" to conduct the colloquy in the Government's absence and stated that "the Assistant United States Attorney serves a useful function in assuring that a district court's colloquy is sufficient." *Jones*, 452 F.3d at 231.

6. Do you understand that if you are found guilty of the crime charged in Count Two (securities fraud), the Court could sentence you to at least twenty years in prison?

7. Do you understand that if you are found guilty of the crime charged in Count Three (wire fraud), the Court could sentence you to at least twenty years in prison?

8. Do you understand that the Court may also order you to pay fines and restitution as well as order forfeiture for each of these crimes?

9. Do you understand that if you are found guilty of more than one of these crimes, this Court can order that the sentences be served consecutively, that is, one after another?

10. Do you understand that the United States Sentencing Commission has issued advisory sentencing guidelines that will be consulted when determining your sentence if you are found guilty?

11. Do you understand that if you represent yourself, you are on your own? I cannot tell you—or even advise you—as to how you should try your case.

12. Do you know what defenses there might be to the offense with which you are charged?

13. Do you understand that an attorney may be aware of ways of defending against these charges that may not occur to you since you are not a lawyer?

14. Do you understand that I cannot give you any advice about these matters?

15. Do you know that there are many complex rules in court, and that most non-lawyers, including yourself, cannot know all of these rules?

16. Do you know that ignorance of these rules can hurt your case, even if you are confident about the facts?

17. Are you familiar with the Federal Rules of Evidence?

18. Do you understand that the Federal Rules of Evidence govern what evidence may or may not be introduced at trial and that, in representing yourself, you must abide by those rules?

19. Are you familiar with the Federal Rules of Criminal Procedure?

20. Do you understand that these rules govern the way a criminal action is tried in federal court? Do you understand that you must follow these rules?

21. Do you understand that you must proceed by calling witnesses and asking them questions, and that, except when and if you yourself testify, you will not be permitted to tell the jury matters that you wish them to consider as evidence?

22. Do you understand that it may be much easier for an attorney to contact potential witnesses, gather evidence, and question witnesses than it may be for you?

23. Do you know that the Court may appoint a standby counsel, even if you don't want one, who will help you prepare your case or take over your case if the Court determines you cannot competently represent yourself?

24. Do you understand that standby counsel is not co-counsel and that his or her role would be limited to what I have just stated?

25. I must advise you that in my opinion, a trained lawyer would defend you far better than you could defend yourself. You are not familiar with the law. You are not familiar with court procedure. You are not familiar with the rules of evidence. Do you know that the purpose of appointed counsel is to help you put forth your best possible case? I strongly urge you **not** to try to represent yourself.

26. Now, in light of the penalties that you might suffer if you are found guilty, and in light of all the difficulties of representing yourself, do you still desire to represent yourself and to give up your right to be represented by a lawyer?

27. Are you making this decision freely, and does it reflect your personal desire?

28. Do you have any questions, or do you want me to clarify or explain further anything that we have discussed here?

In the event that Parmar does not clearly and succinctly answer these questions or otherwise acknowledge that he understands them, the Court should inform him that a non-responsive answer will be treated as a "No." *See Cain*, 972 F.2d at 750 (right to self-representation is forfeited by remaining silent at critical junctures before or during trial); *Williams*, 428 F. App'x at 724-25 (where defendant interrupted and was rude during a *Faretta* hearing, court correctly found that he was not willing to abide by courtroom protocol and rules of procedure). In the event Parmar persists with non-responsive answers as to not permit the *Faretta* inquiry to move forward, standby counsel should be appointed as counsel of record and proceed with the defense of this case. *See Davis*, 532 F.3d at 143.

If the answers to the foregoing questions satisfy the Court that Parmar knowingly and voluntarily desires to proceed *pro se*, the Court should state the necessary conclusions on the record.

Should Parmar elect to proceed *pro se*, the Government respectfully requests that the Court (i) conduct a colloquy with Parmar regarding his decision to proceed *pro se*, (ii) appoint standby counsel, and (iii) preclude any attempt at hybrid representation.

Thank you for Your Honor's consideration.

Respectfully submitted,

PHILIP R. SELLINGER
United States Attorney

By: _____
OLTA BEJLERI
CAROLYN A. SILANE
Assistant U.S. Attorneys