## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

v.

PARMJIT PARMAR,
      a/k/a "Paul Parmar"

Hon. Madeline Cox Arleo

Criminal No. 18-735

## MOTION TO CONTINUE TRIAL

### INTRODUCTION

On at least eighteen separate occasions since Paul Parmar was indicted in 2018, the parties have agreed that it would be "unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within 70 days." (ECF Nos. 39, 53, 54, 118, 129, 136, 149, 168, 171, 174, 177, 187, 190, 200, 203, 205, 207, 210; *see also* ECF Nos. 219, 234, 252 (granting continuances to allow new counsel adequate time to prepare for trial).)

This is, in part, because the case is indisputably "complex" within the meaning of the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(B)(ii) (the "Speedy Trial Act"); it involves a complicated series of transactions from a decade ago that spanned more than two years of time; and the "discovery in this case is voluminous, consisting of, among other things, financial records, email communications, and other electronically stored information." (ECF Nos. 39, 53, 54, 118, 129, 136, 149, 168, 171, 174, 177, 187, 190, 200, 203, 205, 207, 210, 219, 234, 252; *see also* ECF No. 110 (Government explaining that it has "made voluminous discovery productions since the indictment was returned," which include "tens of thousands of records"); H'rg Tr. Oct. 3, 2024 (Court acknowledging that, to "become ready" for trial, new counsel would need to review "[a] few million" "pages of documents").)

Yet, a trial without the ability to adequately prepare is exactly the situation Mr. Parmar currently faces, with jury selection to begin in less than one hundred days from the filing of this motion and virtually no trial preparation, or pre-trial preparation, completed by his prior counsel. As set forth below, and as the history of speedy trial exclusions agreed to by the Government and ordered by the Court establishes, Mr. Parmar's newly-retained counsel, Cooley LLP ("Cooley"), cannot effectively prepare for trial in the short period of time between now and June 16, 2025.

As officers of the Court, we acknowledge the Court's understandable frustration with the circumstances and are committed to defending the case diligently and responsibly, but we also must advise the Court that conducting a trial on the record set forth herein would not meet the minimum constitutional standard for effective preparation:  The record in this case is both lengthy and labyrinthine; the fraud scheme alleged in the Indictment is complex; the amount of evidence related to those allegations is enormous, consisting of what appear to be terabytes of information; there remain significant holes in the discovery that has been produced by prior counsel and the Government to Cooley; and no meaningful or helpful work was done by prior counsel to prepare the case for trial.  Indeed, the circumstances here are worse than if we were working with a clean slate, as we must understand and account not only for the allegations in the Indictment, but also for the vast amount of water that has flowed under the bridge over the last seven years.

Before laying out the support for our request for a continuance, we wish to make clear that the current prosecution team, led by AUSAs Silane, Limbachia, Lyons, Barchini, and Bejleri, have been courteous, productive, and professional in every respect.  While we do and will have disagreements with them, it is not their conduct that forms the basis for our request for a continuance.  We also are not asking for an indefinite period for pre-trial preparation, or for a trial date in 2026, which many counsel facing the record here would surely beg for.  Rather, we have

carefully reviewed the record we have been able to assemble since our retention and are asking the Court for the *earliest* possible date by which we believe we can adequately prepare a defense: a trial starting on or after October 1, 2025. That date would provide us with approximately seven months from the time of our retention until trial—which, by this record and with this volume of discovery, is an exceptionally short period of time to prepare.

## FACTUAL BACKGROUND

A.    **The Investor Fraud Scheme Alleged in the Indictment Is Multi-Layered and Complicated, Involving Numerous Entities and Transactions Over a Two-Year Period of Time.**

This case involves a complex fraud scheme allegedly perpetrated by Mr. Parmar and others in connection with a go-private transaction that closed in 2017. Mr. Parmar was first charged by complaint on May 15, 2018, and later indicted on December 13, 2018. (ECF Nos. 1, 32.) Two of Mr. Parmar's three co-defendants do not reside in the United States and appear not to have been subject to extradition requests or proceedings: Mr. Zaharis is an Australian citizen who left the United States in early December 2017, and Mr. Chivukula is an Indian citizen who is believed to be in India.

The complaint alleges that Mr. Parmar participated in a conspiracy between May 2015 through September 2017 to defraud a victim-investor "out of hundreds of millions of dollars in connection with the funding of a 'going private' transaction." (ECF No. 1 at ¶ 2; *see also* ECF No. 32 at ¶¶ 2–3.) More specifically, the Government alleges that Mr. Parmar and others used "a variety of fraudulent methods designed to grossly inflate the value of Company A and trick the Private Investment Firm and others into believing that Company A was worth substantially more than its actual value." (ECF No. 1 at ¶ 2.) The Government claims that Mr. Parmar and others employed at least the following tactics: "(1) creating fictitious operating companies that Company A purportedly acquired in sham acquisitions that the co-conspirators simply made up; (2) falsifying

and, in some cases, wholly fabricating, bank records of subsidiary entities in order to generate a phony picture of Company A's revenue streams; (3) generating fake income streams and, in some cases, fabricating customers of Company A and its subsidiaries; (4) and making other material misrepresentations and omissions to representatives of the Private Investment Firm and others to value Company A at over $300 million for purposes of financing the Go-Private Transaction." (*Id.* at ¶ 4.)   In short, this case involves a series of complicated corporate transactions between sophisticated parties.

The transactions at issue in this case also are the subject of several other complex parallel proceedings that further complicate this matter, including a bankruptcy proceeding (*In re Orion Healthcorp, Inc., et al.*, No. 18-71748 (D.N.J. 2018)); a proceeding brought by the Securities and Exchange Commission (*SEC v. Parmar, et al.*, No. 18-9284 (D.N.J. 2018)); and a civil Racketeer Influenced and Corrupt Organizations case (*Alpha Cepheus, LLC et al. v. Chu, et al.*, No. 18-14322 (D.N.J. 2018)).   These proceedings have generated an enormous volume of material which, in addition to the criminal discovery, must be reviewed at least in part and understood by Cooley to prepare for trial in this case.

> **B.    This Case Did Not Move Forward from 2018 Through 2023 For Several Reasons, Including the Government's Delays in Producing Discovery, the COVID-19 Pandemic, and the Plea of a Co-Defendant.**

This case has an unusually long and complicated procedural history.   On September 10, 2019, the Court entered the first scheduling order in this matter, directing the Government to produce all discovery to the defendants by October 31, 2019, nearly seventeen months after the case was first charged.   (ECF No. 57.)   Despite the Court's order, by January 13, 2020, the Government had not yet completed its productions, prompting defendants to seek an extension of time to file their pre-trial motions, as well as an amendment to the scheduling order.   (ECF No. 76.)   On April 7, 2020, the Court granted the request and issued a new scheduling order, directing

the Government to complete its discovery productions by June 15, 2020, and setting a deadline of September 1, 2020 for the filing of pre-trial motions. (ECF No. 79.) In addition to delays with the Government's productions, the matter did not substantially progress towards a trial in 2020 due to the COVID-19 pandemic—beginning in March 2020, all criminal trials in this District were continued, ultimately through June 1, 2021, due to the pandemic.[1]

The Government reported that it completed its productions by April 2021, at which point the defendants filed pre-trial motions, which were briefed by June 2021.[2] In October 2021, the Government first requested a status conference "to discuss with the Court and counsel a potential schedule for future proceedings in this case," including a potential trial date in 2022. (ECF No. 122.) In November 2021, the Court set oral argument on the pending pre-trial motions for January

---

[1] In March 2020, Chief Judge Wolfson issued Standing Order 20-2, which continued all matters that were set to go to trial on or before April 30, 2020 due to the State of Emergency and Public Health Emergency caused by the COVID-19 pandemic. (ECF No. 77.) Then, in April 2020, Chief Judge Wolfson issued Standing Order 2020-09, continuing all matters set to go to trial on or before May 31, 2020, and ordering that there be no scheduling of jury trials before May 31, 2020. (ECF No. 82.) Next, in May 2020, Standing Order 2020-12 was issued, which superseded the prior Standing Orders and ordered all criminal jury trials to be continued to August 31, 2020. (ECF No. 83.) Standing Order 20-12 was extended in August, September, and December of 2020, continuing all jury trials first to September 30, 2020, then to January 4, 2021, and ultimately to March 12, 2021. (ECF Nos. 89, 92, 96.) In March 2021, Standing Order 2021-04 was issued, which again continued all criminal trials, this time to June 1, 2021. (ECF No. 104.)

[2] On September 30, 2020, the scheduling order in this matter was again amended, this time directing defendants to file pre-trial motions by February 2, 2021. (ECF No. 94.) Just a few days before the pre-trial motions were due, however, Mr. Parmar's then-defense counsel requested an additional continuance to file pre-trial motions due to "personal emergencies[]" he was having, to which the Government consented. (ECF No. 99.) On January 29, 2021, the Court granted the request and issued another amended scheduling order, this time resetting the deadline to file all pre-trial motions to March 4, 2021. (ECF No. 100.) Then, on February 23, 2021, the parties jointly requested another extension to file pre-trial motions until April 15, 2021, this time because the Government had notified defense counsel that it intended to make additional productions of documents. (ECF No. 102.) The Court granted the request on March 8, 2021. (ECF No. 103.) From April through June 2021, extensive pre-trial motions were filed. (*See, e.g.*, ECF No. 107 (motion to dismiss indictment); ECF No. 108 (motion to disqualify counsel for the Government); ECF No. 110 (the Government's omnibus opposition); ECF No. 117 (reply in support of motion to dismiss and motion to disqualify).)

13, 2022, and scheduled trial to begin on February 15, 2022, though the Court noted that the date would be "revisited at the oral argument hearing." (ECF No. 125.)

Primarily due to Mr. Parmar's health conditions but also because of a Government scheduling conflict, oral argument on the pre-trial motions did not occur until July 2022, at which point the motions were denied in their entirety.[3] Mr. Parmar then sought leave to file a motion to reconsider, which was denied in August 2022 (ECF Nos. 158, 167), after which the Court directed the parties to provide 2023 trial dates by an October 25, 2022 status conference.[4] (ECF No. 169.) That conference, scheduled also to include oral argument on the Government's motion to strike allegations in the indictment filed in October 2022, was eventually rescheduled to April 2023 and thereafter apparently canceled altogether. (*See* Oct. 25, 2022 Text Order; Jan. 13, 2023 Text Order; ECF No. 180 (Mr. Parmar's then-counsel requesting two week adjournment to prepare for hearing); Mar. 13, 2023 Text Order.)

In March 2023, Mr. Parmar's co-defendant Pavandeep Bakhshi pleaded guilty to a superseding indictment; he was sentenced in early August 2023. (ECF Nos. 183, 198–99.) Between March 2023 and August 2023, it appears that the Government did not advance its case with respect to Mr. Parmar. In fact, it was not until ***December 2023*** that the Government next requested a trial date from the Court. (ECF No. 206.) In response to this request, the Court

---

[3] *See* ECF No. 132 (parties consent to reschedule hearing due to Mr. Parmar contracting COVID-19); Feb. 8, 2022 Text Entry (resetting oral argument date "at counsel's request"); ECF Nos. 140–41, 143 (parties consent to reschedule hearing due to Mr. Parmar's "neurological issues" and "positive COVID and RSV" test results); ECF No. 147 (granting adjournment due to Mr. Parmar's medical conditions); ECF No. 148 (Government request for adjournment due to scheduling conflict); ECF No. 154 (Order denying pre-trial motions).

[4] In October 2022, the Government alerted the Court that all parties were available for an April 2023 trial but noted that Mr. Parmar did not think it was "realistic" to set a trial at that time due to his "medical condition," and instead asked that a "status conference setting the trial date should not occur until after the New Year." (ECF No. 172.)

scheduled a status conference for March 2024, which was thereafter apparently canceled.  (Jan. 18, 2024 Text Order.)

    **C.**    **Mr. Parmar's Prior Counsel Withdrew in April 2024, But Did Not Provide Relevant Discovery Until November 2024, Without Which Mr. Parmar Could Not Retain New Counsel or Prepare His Defense.**

Before any trial date could be set, on April 22, 2024, Mr. Parmar's counsel at Windels Marx ("Windels") filed a motion to withdraw.  (ECF No. 212.)  Attached to counsel's motion was a letter from Mr. Parmar in which Mr. Parmar alerted the Court that Windels had a conflict "not of [Mr. Parmar's] making," and that such conflict had existed since at least November 2022.  (ECF No. 211-1, Ex. A.)  Even at that time, in November 2022, Windels believed the conflict was "non-reconcilable," yet by January 2023, Mr. Parmar was informed by Windels that representation could continue pursuant to an "interim waiver agreement," which Mr. Parmar executed on March 1, 2023.  (*Id.*)  The waiver did not, however, resolve the conflict (because the conflict was not, in fact, waivable).[5]  Beginning in March 2024, Mr. Parmar repeatedly instructed Windels to withdraw its representation, and on April 1, 2024, Mr. Parmar officially revoked the so-called "interim waiver."  (ECF Nos. 211, 211-1.)  Then, on April 23, 2024, Mr. Parmar again wrote to the Court to express his concern that the "past two years have been marked by continuous conflicts" that were attempted to be resolved through an "interim waiver agreement" but which were, ultimately, not conflicts that could be waived.  (Apr. 23, 2024 Ltr., Not Docketed.)

A few days later, on April 26, 2024, a notice of change of plea was docketed with respect to Mr. Parmar.  (Apr. 25, 2024 Text Entry.)  Mr. Parmar's attorneys were not authorized to engage

---

[5]  As Mr. Parmar informed the Court on April 23, 2024, certain parties in the related bankruptcy proceeding (*In re Orion Healthcorp, Inc., et al.*, No. 18-71748 (D.N.J. 2018)) had potential claims against Windels that created a "non-reconcilable conflict" between Windels and Mr. Parmar, such that even requesting an "interim waiver agreement was an abandonment of the firm's duty of loyalty" to Mr. Parmar.  (Apr. 23, 2024 Ltr., Not Docketed.)

with the Government on his behalf in any way at this time, as Mr. Parmar already had revoked the so-called "interim waiver" on April 1, 2024.  On May 5, 2024, Tim Parlatore from Parlatore Law Group ("Parlatore"), who by this time had been working as "independent counsel" under Windels' purported "interim waiver" agreement, also moved to withdraw, agreeing that a "conflict has arisen between [Mr. Parmar] and co-counsel Windels unrelated to any actions taken by [Mr. Parmar]." (ECF No. 215-1 at ¶ 2.)

Thereafter, the Court scheduled a hearing on May 14, 2024 to decide counsels' motions to withdraw.  In advance of that hearing, Mr. Parmar again wrote to the Court, this time informing the Court that, among other issues, "Windels [l]ost" the Government's discovery, and had admitted to Mr. Parmar that they would need to "request new copies from the Government" in order to provide that discovery to Mr. Parmar.  (May 14, 2024 Ltr., Not Docketed.)  Mr. Parmar also explained to the Court that he had been "demanding access to [Government] Discovery without any success" for "over a year."  (*Id.*)

The Court ultimately granted counsels' motion to withdraw and ordered Mr. Parmar to appear at a July 2024 status conference, which was thereafter rescheduled to August 13, 2024.[6] (H'rg Tr. May 14, 2024; ECF No. 225.)  The Court then granted a limited continuance of the August 13, 2024 hearing until August 22, 2024 due to the fact that Mr. Parmar was still recovering from a heart procedure that occurred on July 16, 2024.  At this time, Mr. Parmar also alerted the Court that he had met with seven law firms and was making progress towards finding counsel. (*See* July 16, 2024 Ltr., Not Docketed.)

---

[6]  On July 16, 2024, Mr. Parmar emailed the Court seeking a continuation due to a medical procedure he was undergoing, but by the time Mr. Parmar made that request, the hearing already had been rescheduled to August 13, 2024.  (ECF No. 225.)

At the August 22, 2024 hearing, Mr. Parmar was ordered to find counsel by September 3, 2024, and a status conference was set for October 2024.[7]  (ECF Nos. 227–29.)  Ultimately, Mr. Parmar did not find counsel by September 3, 2024, in large part related to Mr. Parmar's issues receiving discovery from his prior counsel.  As he explained during the October 3, 2024 status conference, Mr. Parmar had three potential options for new counsel, but "[n]one of the firms are ready to commit to anything unless all the data is with them." (H'rg Tr. Oct. 3, 2024 at 5.)  Indeed, in total, Mr. Parmar met with at least ten lawyers in an effort to find counsel to replace Windels and Parlatore, and the majority of these lawyers expressed concern about the volume and state of discovery, particularly in light of a trial likely to occur in 2025.

Consistent with his previous May 2024 letter to the Court, Mr. Parmar further explained to the Court at the October 3, 2024 conference that he had been asking his prior counsel for the discovery since before they withdrew, but prior counsel did not provide Mr. Parmar with the requested discovery and instead told Mr. Parmar that the discovery had been lost.  (H'rg Tr. Oct. 3, 2024 at 7.)  The Government confirmed that Mr. Parmar's prior counsel "did ask for another copy of the discovery" prior to being "relieved" from this matter but stated that they had been "waiting for additional counsel" to come on and provide a hard drive so that they could finish downloading the set.  (*Id.* at 8.)  *The record is clear that Mr. Parmar had been asking his prior counsel for critical discovery since before April 2024, and it wasn't until the Court intervened six months later that Windels provided any discovery to Mr. Parmar (albeit, partial and corrupted data).*

---

[7]  Mr. Parmar engaged counsel for the limited purpose of handling the August 22, 2024 hearing. (ECF Nos. 228–29.)

On October 4, 2024, after hearing about these issues with discovery, the Court ordered prior counsel to provide Mr. Parmar with a copy of his "whole file," including the "Government's discovery and any other discovery," as well as to provide the Government with any returns on subpoenas that were issued.[8]  (H'rg Tr. Oct. 3, 2024 at at 15, 21; *see also* ECF No. 236.)  The Court similarly ordered the Government to provide to Mr. Parmar a "thumb drive" of discovery.  (*Id.* at 16.)  Assuming that Mr. Parmar would "get the documents literally by next week," the Court stated its intention to "set a trial date probably in March," which would give Mr. Parmar's counsel "time" to "become ready" and review the "few million" "pages of documents" in this case.  (*Id.* at 18–19, 24.)

Despite the Court's order, at the next status conference on October 15, 2024, Mr. Parmar alerted the Court that he had not yet received any documents from either of his prior attorneys at Windels or Parlatore, including because the hard drive sent by Windels was empty except for a handful of emails related to another of Windels' client's case, and not Mr. Parmar's.  (H'rg Tr. Oct. 15, 2024; Oct. 11, 2024 Email, Not Docketed; Oct. 15, 2024 Ltr., Not Docketed.)  During the October 15, 2024 conference, the Government represented that it had produced one of two hard drives of discovery, with the second to follow that week.  (*Id.* at 2–3.)  The Court ordered Mr. Parmar's prior counsel to appear at a status conference on October 29, 2024 to discuss the missing discovery, which took place on November 4, 2024.  (*Id.* at 5; *see also* ECF Nos. 237, 248.)

Indeed, it was not until the end of October 2024 that Mr. Parmar received any discovery from prior counsel, despite the Court's order.  On October 25, 2024, Windels provided Mr. Parmar with four hard drives containing over 1,000 gigabytes of data (*see* ECF No. 245), and on October

---

[8]  Cooley understands from the Government that prior counsel never provided the subpoena returns to the Government, despite being ordered to do so.

28, 2024, Parlatore provided Mr. Parmar with one hard drive containing 39 gigabytes of data (ECF No. 246). But the data that prior counsel provided on these dates was incomplete and corrupted. During the conference on November 4, 2024, Mr. Parmar indicated that he had finally received the hard drives that were sent to him, but his statements were based on representations that the Government and his prior counsel made in their communications to the Court that they had provided all relevant materials.[9] (H'rg Tr. Nov. 04, 2024; *see also* ECF Nos. 245–46.) However, as discussed *infra*, Mr. Parmar's prior counsel did not provide full discovery, contrary to their statements to the Court. Nor did Mr. Parmar know, at that time, that at least some of the discovery was in a non-reviewable format, including because portions of it were corrupted.

At the end of 2024 and early 2025, Mr. Parmar appeared before the Court on three other occasions to explain that he had provided potential counsel with the discovery received, and that he was close to obtaining counsel but needed short continuances to raise funds for his attorney and to work out the details of the retainer agreement, which the Court allowed Mr. Parmar to do. (*See* H'rg Tr. Nov. 26, 2024 at 4 (Mr. Parmar explaining that he "just gave [potential counsel] the discovery that [he] received" and that fees were being negotiated because Mr. Parmar needed "a fixed price and the attorneys want all the money upfront"); *see also* H'rg Tr. Dec. 10, 2024 at 8 (Mr. Parmar explaining he is "trying to raise cash"); H'rg Tr. Jan 15, 2025 at 6 (Mr. Parmar explaining that he was "almost there" with respect to retaining counsel, and that he had "met with

---

[9] The Government's reproductions appear to be missing documents produced originally on April 9, 2019 (ECJ-0000000134; GOO-0000000001 – GOO-0000312067) and June 25, 2019 (ECJ-0000000102 – ECJ 0000000133; RRBB00004536; BOA-V-0001; COL-0000000001 – COL-0000000089; COL-0000000101 – COL-0000000108; COL-0000000216 – COL-0000000223; GOO-0000000215 – GOO-0000307090). Cooley has made the Government aware of these deficiencies.

three different law firms in the last four weeks" and was just "waiting for the retainer agreement for one of them").

In the second week of February 2025, Mr. Parmar retained Cooley, and by February 13, 2025, Cooley had filed notices of appearance in this matter. (ECF Nos. 260–62.) Cooley appeared for the first time at the February 13, 2025 status conference, where the Court stated its intention to set trial in 2025. *See* H'rg Tr. Feb. 13, 2025 at 4.

**D.    The Government Never Did a Prudential Review for Statements of Mr. Parmar and Must Still Produce Significant Rule 16 Discovery.**

During the course of this investigation, Mr. Parmar met with the Government on multiple occasions. ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ We believe there may be records of relevant statements made by Mr. Parmar during this time period that have never been searched for by the Government, let alone provided to the defense. As set forth below, performing this kind of prudential review is required under Third Circuit law—and likely will take the Government significant time to carry out.

In addition, we have not received all FBI-302 materials, witness statements, or notes reflecting conversations between the Government and Mr. Parmar and Mr. Parmar's prior counsel. For example, we believe that Mr. Parmar's prior counsel gave two attorney proffers in connection with this matter, but we do not have any materials reflecting these conversations. We also have

only two FBI-302s summarizing interviews of Mr. Parmar, but we believe that Mr. Parmar was interviewed by the Government on more than two occasions. Records of Mr. Parmar's statements at these meetings must be produced immediately in accordance with Rule 16.

The Government also has not yet produced a complete copy of the contents of Mr. Parmar's mobile device, which was seized when he was arrested in 2018. This device is believed to contain many communications between Mr. Parmar and others regarding the transactions and events at issue in the Indictment. Incredibly, prior counsel appears to have never requested a full copy of the contents of this device from the Government, and no such copy appears to have ever been produced, notwithstanding that it is clearly discoverable under Rule 16 and, almost certainly, *Brady*. Following discussions with Cooley, the Government has agreed to produce a forensic copy of the mobile device, which we anticipate contains many gigabytes of information which has never been analyzed by the defense. We do not fault the current prosecution team for this, but this is crucial discovery that should have been requested by the defense and produced by the Government many years ago, and which likely will take many weeks of attorney time to review properly.

Cooley also has asked the Government to provide relevant data from devices that appear to have been seized by the Government from Mr. Parmar's co-defendant Pavandeep Bakhshi. An FBI-302 produced by the Government indicates that three devices were seized from Mr. Bakhshi; we would expect those devices to contain extensive information about the transactions at issue in this case, including many communications to and from Mr. Parmar, that constitute either Rule 16 or *Brady* material. Yet it does not appear from any of the discovery produced in this case that information from those devices was ever provided to the defense.

**E.    Cooley Has Been Working Around-the-Clock to Obtain and Access the Discovery and Prepare for Trial.**

After Cooley was retained, the parties appeared before the Court on February 25, 2025 to discuss setting a trial date. (ECF No. 264.)  At that hearing, counsel explained to the Court that it was working "full time" to get the matter ready to go to trial. (H'rg Tr. Feb. 25, 2025 at 7.)  But, as explained to the Court, counsel received over three terabytes of data from Mr. Parmar's prior counsel and the Government, some of which was corrupted and inaccessible, and which appeared incomplete from counsel's initial review of what had been transferred. (*Id.* at 5–6.)  Counsel also notified the Court that it was evaluating the need to file pre-trial motions on behalf of Mr. Parmar, and that the lead attorney had another three-week trial scheduled to begin at the end of April 2025. (*Id.* at 5, 7.)

For all of these reasons, counsel requested a trial date in November or December 2025, representing that Cooley did not believe it could be "fairly or effectively ready to go to trial by June [2025]." (H'rg Tr. Feb. 25, 2025 at 7.)  The Government asked the Court for a trial date in the summer. (*Id.* at 10.)  The Court indicated it would take the decision under advisement, asked the parties to confer on trial dates that would be available during the summer, and scheduled a status conference the following week. (*Id.* at 11.)  However, the next day, on February 26, 2025, the Court postponed the status conference and set trial for June 16, 2025, with jury selection to begin on June 10, 2025. (ECF No. 265.)

As of the date of this filing, significant issues still persist with respect to the discovery record and prior counsel's case file.  At bottom, Cooley cannot rely on the data transferred by Mr. Parmar's prior counsel to adequately defend Mr. Parmar in this matter.  The data transferred is a combination of unreliable, unreadable, and incomplete.  Most troublingly, there does not appear to be any accessible repository of discovery, or any work product analyzing or organizing the

discovery received from the Government or documents provided by third parties. Nor does there appear to be *any* preparation for trial done by prior counsel, even though prior counsel represented Mr. Parmar for almost the entirety of this action, from 2017 to 2024. Indeed, without providing specifics at this time, the undersigned can represent that there appears to have been conduct which, at the very least, has significantly hindered Mr. Parmar's ability to present a defense at a trial in three months. One prominent example concerns third-party subpoenas issued pursuant to Rule 17(c). While Cooley understands that the Court authorized prior defense counsel to serve five companies with third-party subpoenas (ECF Nos. 97–98), Cooley has had significant difficulties locating or accessing a majority of the documents produced pursuant to these third-party subpoenas, including to review the documents and determine whether there has been full, partial, or any compliance with the subpoenas, or to ensure that the Government has received subpoena returns.

Moreover, while Cooley has had productive conversations with the Government concerning these and other discovery issues, the reproductions the Government made to Mr. Parmar in October 2024 appear to be incomplete. On February 24 and February 27, 2025, counsel for Mr. Parmar alerted the Government to these deficiencies, including that the reproductions do not contain cover letters or indices explaining what the underlying productions contain. For example, there are at least two Government productions that appear to include documents that the Government did not include in its October 2024 reproductions;[10] and it is not clear from the

---

[10]  As noted *supra* note 9, the Government's reproductions appear to be missing documents produced originally on April 9, 2019 (ECJ-0000000134; GOO-0000000001 – GOO-0000312067) and June 25, 2019 (ECJ-0000000102 – ECJ 0000000133; RRBB00004536; BOA-V-0001; COL-0000000001 – COL-0000000089; COL-0000000101 – COL-0000000108; COL-0000000216 – COL-0000000223; GOO-0000000215 – GOO-0000307090).

Government's cover letters that the Government reproduced all FBI-302s.[11]  Counsel has twice requested a discovery index from the Government,[12] in order to help assess these and other identified deficiencies and ensure that all discovery has been provided.[13]



[11]  For example, we have located a number of FBI-302s in the Government's reproductions. However, there is no way for us to confirm that these are the complete set of FBI-302s for this case.  By way of example, we have located only one FBI-302 for witness Chinh Chu, and without an index, we cannot confirm that this is the total universe of FBI-302s for this key witness.

[12]  During a February 24, 2025 meet and confer, counsel requested that the Government provide a discovery index so that counsel could evaluate what discovery was missing, if any.  The Government stated that it did not have a discovery index to provide but indicated that each production contained in the October reproductions had an accompanying cover letter, which could serve as an index for that production.  Upon review of the discovery, however, several production cover letters are missing—and the Government has been made aware of this deficiency.  Cooley again requested a discovery index on February 27, 2025.

[13]  In addition to deficiencies in discovery, counsel also requested from the Government information concerning communications between the Government and prior counsel, including records of any plea negotiations.

The Government has acknowledged Cooley's requests and provided initial information in response, and the parties conferred again on March 6, 2025, to discuss progress on these discovery gaps. Notwithstanding these discussions, many issues remain open, and the parties have not been able to account for, resolve, or exchange all of the missing discovery. A prominent example of this is the contents of Mr. Parmar's mobile device, which undoubtedly contains essential evidence and once produced will take considerable time to properly review in advance of trial. Similarly, if we are correct that the Government possesses devices seized from Mr. Parmar's co-defendant Pavandeep Bakhshi, it will take substantial time for both the Government and the defense to upload and review those materials. These are steps—the review of electronic devices seized from defendants—that typically take months by themselves and that cannot reasonably be completed in advance of June.

### F.    Prior Counsel Did Not Prepare for Trial.

This critical point is simple and irreducible: Virtually no work was done by prior counsel to prepare this case for trial. As far as we can discern, none of the things necessary to prepare a complex white-collar case for trial have been done; no work product is evident in the information Cooley has received from prior counsel. Although much more can be said about the consequences to Mr. Parmar of this inattention, as a factual matter the status of trial preparation as of the date of Cooley's appearance can be captured in a single word: Nothing.

### ARGUMENT

Under the Speedy Trial Act, a district court may grant a continuance and toll the speedy trial clock by finding that the "ends of justice" served by granting a continuance "outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). In deciding whether to grant a continuance, the Court should consider several factors, including whether: (1) the failure to grant the continuance would "result in a miscarriage of justice"; (2) the

case is "so complex" that it is "unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself"; and (3) the failure to grant the continuance would "deny counsel for the defendant . . . the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." *Id.* § 3161(h)(7)(B)(i–ii, iv). All factors weigh strongly in favor of granting a limited continuance here.

*First*, new counsel requires additional time to prepare Mr. Parmar's defense and cannot adequately be prepared for a trial commencing in June 2025. For this reason alone, the Court should grant the requested continuance. As the Supreme Court has explained, "the speedy trial right was designed to protect" "the interests of defendants," including "the most serious" interest in "limit[ing] the possibility that the defense will be impaired," cautioning that "the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker v. Wingo*, 407 U.S. 514, 532 (1972). For this reason, continuances are routinely granted where counsel represents that additional time is required in order to adequately prepare a defense—and should be granted here. *See, e.g.*, *United States v. Stallings*, 701 F. App'x 164, 170 (3d Cir. 2017) (affirming the district court's continuance "to allow new counsel sufficient time to prepare [the] case"); *see also United States v. Lattany*, 982 F.2d 866, 878 (3d Cir. 1992) (affirming continuances as "necessary for [the defendant] to adequately prepare his defense, considering the . . . turnover among [defendant's] attorneys"); *United States v. Spring*, 80 F.3d 1450, 1457 (10th Cir. 1996) (affirming district court's order continuing trial scheduled in three months based on finding that "new counsel could not reasonably prepare" in that amount of time, and because "[a]dequate preparation time" is a "permissible reason[]" for granting a continuance"). Indeed, even the Government previously admitted that a continuance would be necessary "to allow Defendant to retain new counsel, for the new counsel to become familiar with the discovery in this matter and

adequately prepare for trial, and for the Court to conduct a jury trial in this case." (ECF No. 218 at 3.)

This is particularly so when, like here, the continuance is required due to the breakdown of the prior attorney-client relationship. *See, e.g.*, *United States v. King*, No. 21 Cr. 184 (W.D. Pa. Oct. 14, 2021), ECF No. 42 (granting continuance motion where the failure to do so would "be likely to result in a miscarriage of justice in light of the breakdown in the attorney client relationship" and will "deny counsel for Defendant the reasonable time necessary for effective preparation"), *aff'd*, 2024 WL 3887274, at *4 (3d Cir. Aug. 21, 2024) (explaining that "the District Court appropriately extended the trial date to allow for effective trial preparation"). As both Windels and Parlatore admitted, in this case there existed a conflict of interest (that could not be waived, although prior counsel purported to obtain an "interim waiver" from Mr. Parmar)—that was not Mr. Parmar's fault in any way—that necessitated their withdrawal. (ECF Nos. 212, 215.)

Indeed, the Third Circuit has expressed concern for protecting a criminal defendant's "Sixth Amendment right to counsel," noting that this "is a particularly weighty justification for a continuance" and "an especially compelling reason to delay trial." *United States v. Adams*, 36 F.4th 137, 147 n.8 (3d Cir. 2022). In *Adams*, for example, the defendant moved for new counsel and the court found that there had been an "attorney-client breakdown" and the defendant "could not mount a proper defense without new representation." *Id.* at 146. The district court advised the defendant that if he changed counsel, this would necessitate a "delay" in his trial, including because new counsel "would be involved in resolving outstanding discovery issues." *Id.* Ultimately, the district court concluded—and the Third Circuit agreed—that "delaying trial was warranted" because protecting a defendant's right to counsel justified a continuance when balanced against the interest in a speedy trial. *Id.* at 147.

Moreover, given Mr. Parmar's prior counsel's apparent failure to do any trial preparation in seven years of representation, Mr. Parmar "could not mount a proper defense without new representation." *Adams*, 36 F.4th at 146. The Court thus granted prior counsels' motions to withdraw, and protected Mr. Parmar's right to select new counsel—after the breakdown of the attorney-client relationship with Windels and Parlatore. The Court should not now force a speedy trial against Mr. Parmar's interest, which would undermine Mr. Parmar's new counsel's ability to effectively defend him. *Id.* at 147; *see also United States v. Williams*, 591 F. App'x 78, 85–86 (3d Cir. 2014) (defendant waived speedy trial rights when asking Court to appoint new counsel, because a "change in counsel would necessitate a continuance of the trial date"); *United States v. Santos*, 201 F.3d 953, 959 (7th Cir. 2000) (Posner, J.) (finding the district court abused its discretion in denying a continuance due to defense counsel's scheduling conflict because "[a]n express basis for excusable delay is that it is necessary . . . to enable the defendant's counsel to prepare adequately for trial," and noting that "[a]s for a defendant's right to a speedy trial, that is a right of the defendant"). Mr. Parmar has "the right not to just a speedy but also to a fair trial— including with constitutionally competent counsel" who is given sufficient time "to adequately investigate and prepare to effectively represent Mr. [Parmar] at trial." *United States v. Smith*, 660 F. Supp. 3d 210, 215 (S.D.N.Y. 2023). This is particularly so where new counsel's ability to adequately prepare for trial is significantly hindered by Mr. Parmar's prior counsel's failure to organize and transfer all of the discovery (which in turn hampered Mr. Parmar's ability to timely retain new counsel who expressed concerns about the volume and state of discovery in this matter).

**Second**, granting a continuance to enable new counsel to adequately prepare is especially warranted where, like here, the case has been repeatedly classified and recognized as complex by both the Court and the Government. *See, e.g.*, *United States v. Scarfo*, 41 F.4th 136, 176 (3d Cir.

2022) (stating that "[c]ase complexity is an acceptable reason for tolling Speedy Trial Act deadlines"). And for good reason—the Government alleges a conspiracy that involves multiple complex corporate transactions undertaken by sophisticated parties spanning several years. *See, e.g.*, *Smith*, 660 F. Supp. 3d at 216 (granting defense counsel's request to continue trial for five months over defendant's objection where case was "complex" in part because "the charged conduct spans three years and concerns alleged extortion against dozens of . . . companies"). Indeed, given some of the technical aspects of the allegations, expert testimony may be necessary in this matter and prior counsel seems to have taken no steps to evaluate the need for such testimony or to locate appropriate experts. *See, e.g.*, *id.* (continuing trial for five months over defendant's objection where case was "complex" in part because defense counsel "need[s] to locate and prepare qualified defense experts"). Moreover, the transactions at issue also are the subject of parallel litigation proceedings, which expand considerably the already complicated record in this matter.

In addition to these complexities, two of Mr. Parmar's co-defendants reside abroad, and the Government appears to have taken no significant steps to extradite them in this case. But as co-defendants and witnesses with alleged personal knowledge of the conduct at issue, their testimony could provide substantial proof of key facts and materially aid Mr. Parmar's defense. Yet Mr. Parmar faces a significant hurdle in obtaining their testimony at trial, and at this time is unable to evaluate whether obtaining their testimony prior to trial is necessary to his defense—an action that Mr. Parmar's prior counsel appears to have failed to consider in the seven years they represented him. The need to evaluate, and potentially procure, highly material testimony overseas adds additional complexity to this matter. *See, e.g.*, *United States v. Ahmed*, 2014 WL 7399298,

at *2 (E.D.N.Y. Dec. 30, 2014) (adjourning trial where government sought foreign depositions of "witnesses [] essential to the prosecution").

This case is also "complex" considering "the volume of discovery," which new counsel still has been unable to obtain or access in its entirety as of the date of this filing. *See, e.g.*, ECF No. 53 at 2 (Court's order determining that the case is complex in light of, *inter alia*, the volume of discovery, and explaining that it is "unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within 70 days"); *see also id.* (the Court finding that the "discovery in the case is voluminous, consisting of, among other things, financial records, email communications, and other electronically stored information").[14]   As an example of how voluminous the discovery in this matter is, just four months ago in October 2024, prior counsel represented to the Court that they turned over gigabytes of data to Mr. Parmar.  (*See* ECF Nos. 245, 246 (Windels representing to the Court that it provided Mr. Parmar with 1,000 gigabytes of data, and Parlatore representing to the Court that it provided 39 gigabytes of data.) Courts routinely grant continuances where, like here, the complex matter has voluminous discovery.  *See, e.g.*, *Smith*, 660 F. Supp. 3d at 216 (continuing trial for five months over defendant's objection where case was "complex" in part because "gigabytes of discovery have been turned over . . . which could obviously not be reviewed by any defendant or team of defense counsel without very significant investments of time"); *United States v. Shulick*, 18 F.4th 91, 100 (3d Cir. 2021) (finding "ample evidence to support that the case is complex" where prosecution stemmed from a "multi-year investigation involving millions of pages of documents" and explaining that "[t]he granting

---

[14]   *See also* ECF No. 54 (09/11/2019) (the Court finding the case is "complex" in part due to its "voluminous" discovery); ECF No. 118 (07/29/2021) (same); ECF No. 129 (12/03/2021) (same); ECF No. 136 (2/25/2022) (same); ECF No. 149 (06/21/2022) (same); ECF No. 168 (09/01/2022) (same); ECF No. 171 (10/03/2022) (same); ECF No. 210 (04/10/2024) (same).

of continuances in response to the various intricacies and knots in the case is nothing new"); *United States v. Gallo*, 2024 WL 5087717, at *3 (D.N.J. Dec. 12, 2024) (granting continuance when the discovery in the matter was expected to be "voluminous" and finding it "unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself"); *United States v. Noe*, 1989 WL 5574, at *2 (E.D. Pa. Jan. 19, 1989) (continuance granted where charges involved "a complex financial situation" relating to an "alleged scheme to purchase an insurance company using worthless securities and certificates of deposit," and where defendant had to locate "witnesses residing outside the United States, [] contact experts and [] review 'voluminous discovery'").

The volume of discovery is further compounded by the fact that it was transferred to counsel in a manner that is incomplete, unreliable, and in certain instances, corrupted—indeed, when Mr. Parmar asked his then-counsel for access to the discovery (prior to their withdrawal from this matter), then-counsel admitted they no longer had copies of the discovery and would need to request it from the Government, suggesting not only that they were unable to transfer a complete file, but also that they were not, while representing Mr. Parmar, reviewing the discovery themselves. Moreover, while the Government provided Mr. Parmar with reproductions in October 2024, those reproductions similarly appear to be missing data. *See supra* nn. 9, 10. At bottom, as of the date of this filing, counsel does not have access to all of the discovery in this matter, including the contents of Mr. Parmar's mobile device and information on devices seized from Mr. Bakhshi. And the discovery which new counsel does have access to is not organized in any way that would allow new counsel to identify what was produced and what discovery exists, such as a discovery index. As of the date of this filing, Cooley is having difficulties accessing and accounting for information that may (or may not) have been produced to Windels and Parlatore by third parties. █████████████████████████

████████████████████████████████████████████████████████

████████████████████████████    We do not know how long this process may take, and as a result we do not know whether the Government will have additional discovery to produce based on this review, or what its volume or relevance may be.

*Third*, a continuance is appropriate where, like here, counsel needs to evaluate whether to file pre-trial motions. *See, e.g.*, *Gallo*, 2024 WL 5087717, at *3 (granting continuance when pre-trial motions are expected); *United States v. Fields*, 39 F.3d 439, 444 (3d Cir. 1994) (continuance "may be granted to permit the preparation of pretrial motions").[15]

*Finally*, a continuance would allow the parties to prepare more efficient and streamlined presentations at trial, and potentially to engage in plea discussions in advance of trial. Given the current state of the record, Cooley cannot properly advise Mr. Parmar about a plea, or even assess whether it would be productive to engage in plea discussions, and we do not think we would be able to do so in advance of the June trial date given the amount of material to digest and the complexity of the allegations. As a result, the parties may have no choice but to head into a multi-week trial, whereas a continuance to October should permit the parties sufficient time to decide whether it could be advantageous to the parties, and to the Court, to engage in plea discussions. *See, e.g.*, *Fields*, 39 F.3d at 445 (Alito, J.) (affirming grant of continuance "so that plea negotiations could be pursued" and could "continue," reasoning that "[i]n current federal practice, plea negotiations play a vital role" serving the "ends of justice"); *United States v. Stradford*, 394 F. App'x 923, 927 (3d Cir. 2010) (affirming grant of continuance for defense counsel to "discuss plea

---

[15] The Speedy Trial Act excludes time automatically, from a "'delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion.'" *United States v. Tinklenberg*, 563 U.S. 647, 653 (2011) (quoting 18 U.S.C. § 3161(h)(1)(D)); *see also Williams*, 591 F. App'x at 85 (affirming the district court's exclusion of time resulting from the filing of pre-trial motions).

negotiations," among other things); *United States v. Cabera*, 2015 WL 260888, at *1 (D.N.J. Jan. 21, 2015) (Court entered four successive continuance orders "to allow the Government and [defendant] to engage in plea negotiations").

* * *

Granting the requested continuance serves the ends of justice. Indeed, not providing additional time to adequately and effectively prepare Mr. Parmar's defense—where his prior counsel failed to obtain, organize, or review the voluminous discovery in this case, apparently failed to do any trial preparation in seven years of representation, and still has not transferred Mr. Parmar's complete case file to new counsel—risks a serious miscarriage of justice. A modest continuance to October 1, 2025 or later is necessary to protect Mr. Parmar's constitutional rights.

## CONCLUSION

For these reasons, Mr. Parmar respectfully requests that the trial date be continued to October 1, 2025 or thereafter.

Dated: March 12, 2025

Respectfully submitted,

By: *s/ Andrew D. Goldstein*
    Andrew D. Goldstein
    Victoria R. Pasculli
    Alessandra V. Rafalson
    COOLEY LLP
    55 Hudson Yards
    New York, NY 10001-2157
    Telephone: (212) 479-6000
    Facsimile: (212) 479-6275
    agoldstein@cooley.com
    vpasculli@cooley.com
    arafalson@cooley.com

    John H. Hemann
    COOLEY LLP
    3 Embarcadero Center, 20th Floor
    San Francisco, CA 94111-4004
    Telephone: (415) 693-2000
    Facsimile: (415) 693-2222
    jhemann@cooley.com

Anuva V. Ganapathi
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 843-7400
aganapathi@cooley.com

*Counsel for Parmjit Parmar*