# Cooley

Andrew Goldstein
T: +1 202 842 7805
AGoldstein@cooley.com

John Hemann
T: 1 415 693 2038
JHemann@cooley.com

April 2, 2026

The Honorable Madeline Cox Arleo
United States District Judge for the District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

Re:    *United States v. Parmar* (18-cr-735)

Your Honor:

We write regarding the following items related to the April 7 sentencing hearing: (1) Mr. Parmar's response to the Government's March 24, 2026 request for a Preliminary Order of Forfeiture (ECF No. 338), and the Court's corresponding order; (2) the status of the federal bankruptcy proceeding on which the Government relies entirely in its loss argument; (3) evidentiary inquiry by the government; and (4) the unresolved status ███████████████████████████████████████████████

███

## 1.    Forfeiture

We received the Court's Preliminary Order of Forfeiture yesterday. We received the government's letter to the Court regarding forfeiture when it was filed last week and were in the midst of preparing Mr. Parmar's response when the Court issued its order. Counsel for Mr. Parmar were on vacation and travelling internationally last week, and not able to address the government's letter until this week.

This letter brief on behalf of Mr. Parmar responds to the government's letter brief and objects, in part, to the Preliminary Order of Forfeiture, as set forth below. We request that the Court vacate the Preliminary Order and consider Mr. Parmar's position on the merits as to two of the eight properties at issue.

Mr. Parmar consents to the entry of a Preliminary Order of Forfeiture for all but two of the properties identified by the Government. As counsel for Mr. Parmar has explained in its discussions with the

Cooley LLP  55 Hudson Yards  New York, NY  10001-2157
t: +1 212 479 6000  f: +1 212 479 6275  cooley.com



The Honorable Madeline Cox Arleo
Page Two

government, the contents of TD Bank account number -8861 and the contents of Bank of America account number -7218 (collectively, the "First Connect Accounts") are not traceable to the offense to which Mr. Parmar pled guilty and thus are not subject to forfeiture. Accordingly, we respectfully request that the Court schedule a hearing on the issue of forfeiture, only as to those two accounts, after Mr. Parmar's April 7, 2026 sentencing. Mr. Parmar consents to the entry of a Preliminary Order of Forfeiture as to the remaining properties identified by the government.

The government's Motion for Preliminary Order of Forfeiture (ECF No. 314) requests a Preliminary Order of Forfeiture as to the following properties:

i.   The real property known as 50 Riverside Boulevard, Unit 21b, New York, New York;

ii.  The real property known as 40 Broad Street, Unit 20FG, New York, New York;

iii. The contents of TD Bank account number -3616, held in the name of Sunshine Star LLC;

iv.  The contents of TD Bank account number -3418, held in the name of Aquila Alpha;

v.   The contents of Wells Fargo account number -7693, held in the name of Sequoia Training and Nutrition;

vi.  The contents of Wells Fargo account number -4994, held in the name of Aquila Alpha;

vii. The contents of TD Bank account number -8861, held in the name of First Connect Center Investors Fund LP; and

viii. The contents of Bank of America account number -7218, held in the name of First Connect Center Investors Fund LP.

The properties in dispute are the contents of TD Bank account number -8861 and the contents of Bank of America account number -7218 (i.e., the First Connect Accounts). The contents of these accounts total $4,990,871 and $100,000, respectively. The remaining properties are not in dispute.

In the government's Motion for a Preliminary Order of Forfeiture, the government noted that Mr. Parmar "reserved the right to contest the forfeitability of" the First Connect Accounts. *See* ECF No. 314 at

Cooley LLP  55 Hudson Yards  New York, NY  10001-2157
t: +1 212 479 6000  f: +1 212 479 6275  cooley.com



The Honorable Madeline Cox Arleo
Page Three

3.[1] Mr. Parmar will be able to establish that the funds in the First Connect accounts are property of Anil Sharma, a family friend, and that Mr. Sharma placed these funds in Mr. Parmar's custody prior to the January 31, 2017 Go-Private transaction through which Mr. Parmar pled guilty to conspiracy to commit securities fraud.

Accordingly, while we consent to the entry of a Preliminary Order of Forfeiture as to six of the eight properties identified by the government, we respectfully ask the Court to deny the government's request for a Preliminary Order of Forfeiture as to the First Connect Accounts, and schedule a hearing on the issue of forfeiture as to these accounts on a date convenient for the Court after Mr. Parmar's April 7, 2026 sentencing. Pursuant to Fed. R. Crim. P. 32.2, the Court may (and in this case should) resolve the forfeiture issue in the future, in part because of the ongoing and as yet unresolved bankruptcy proceedings described below.

### 2A.    Status of the Bankruptcy Proceedings

For its position on loss under the Sentencing Guidelines, the government seeks to avoid the legal burden of quantifying the loss proximately caused by Mr. Parmar at CHT closing, and instead relies entirely on the ongoing bankruptcy proceeding pending in the U.S. District Court for the Eastern District of New York. The government has submitted no evidence as to the valuation of CHT at the time of CC Capital's investment or the bank loans. Instead, the government is assuming the truth of the Trustee's / CC Capital's allegations and ignoring completely (1) the opposing evidence submitted by Mr. Parmar in the bankruptcy proceeding and (2) that the Bankruptcy Court has yet to rule. The government has cherry-picked from the bankruptcy record and asks this Court to do the same while the bankruptcy proceedings are still in progress. The government ignores evidence as to CHT's financial conduct in the four months immediately preceding the January 30, 2017 transaction, including the cash contribution at close; the fully funded acquisition offer made by a sophisticated third-party buyer in January 2018, three months before the bankruptcy filing; and the absence of any evidence as to the value of the company on the date of the closing. As to the last item, the

---

[1] Mr. Parmar notes that the government's Motion for a Preliminary Order of Forfeiture was signed by Deputy Attorney General Todd Blanche and then-Acting United States Special Attorney Alina Habba on October 6, 2025, following the expiration of Attorney Habba's term as Interim United States Attorney for the District of New Jersey.

Cooley LLP  55 Hudson Yards  New York, NY  10001-2157
t: +1 212 479 6000  f: +1 212 479 6275  cooley.com

# Cooley

The Honorable Madeline Cox Arleo
Page Four

company was run by CC Capital from the date of the January 2017 closing until the company shut its doors in mid-2018. Mr. Parmar had no control during that period of time. The government must prove that the losses sustained by the victims were caused by Mr. Parmar and not by management decisions made by CC Capital after acquiring control, which is an issue that is currently being litigated in the bankruptcy court.

In December 2025, there was a two-day trial before Judge Trust and following extensive post-trial briefing, the bankruptcy court has scheduled the post-trial ruling conference for April 22, 2026. Judge Trust has not yet issued a ruling on the detailed and extensive record before him. If Your Honor concludes that the government was required to present evidence of CHT's value at the time of the fraud alleged in the indictment – which the law requires and the government has not done – then the bankruptcy proceedings are irrelevant. If, however, the Court relies on evidence from the bankruptcy proceeding, the Court should take into account the evidence we submitted regarding the offers made to purchase the business prior to bankruptcy, and also should wait and consider the upcoming findings and conclusions of the bankruptcy court.

## 2B.    The Record in the Bankruptcy Proceedings Remains Unsettled

If the Court relies on the information proffered by the government from the bankruptcy proceedings – which makes up its entire evidentiary submission – we believe that the record must be clear. At this juncture, the record remains contested and unsettled.

On March 27, 2026, Mr. Parmar's bankruptcy counsel, Timothy Neumann, filed a motion in the bankruptcy court that identifies, through comparison with the court's own ECRO audio recordings, that the certified transcript contains twenty errors in passages bearing directly on the loss arguments this Court received from both sides. *See Ehrenberg v. Parmar*, Adv. Pro. No. 18-08053 (Bankr. E.D.N.Y.), ECF Nos. 727, 727-1.

As the motion filed by Mr. Neumann explains, the bankruptcy hearing record establishes that in the four months before the January 2017 closing, CHT deployed more than $55 million of its own existing resources – retiring its $45 million loan early and absorbing significant prepayment penalties and lender option buybacks, repurchasing its own equity options, and completing four operating company acquisitions without raising a dollar of new outside capital. The government's own produced documents show CHT contributed

Cooley LLP  55 Hudson Yards  New York, NY  10001-2157
t: +1 212 479 6000  f: +1 212 479 6275  cooley.com

# Cooley

The Honorable Madeline Cox Arleo
Page Five

$14,519,935.90 of its own cash to the closing itself, reflected under "Total CHT Sources" in CCC00073980, CCC00069767, and related materials. A company without any value could not contribute over $14.5 million at the time of its own acquisition. These facts are corroborated by the Trustee's own authenticated trial exhibit, Plaintiffs' Exhibit D EX 54a, page 22: *"This loan agreement was repaid in full in July 2016. The blanket lien on all assets was removed and all assets became unencumbered."* The same exhibit confirms that Bank of America received two Department of Justice warnings before closing, that the transaction "was setting alarms off," Exhibit 9. The government has never addressed any of this in any filing before this Court.

The bankruptcy proceeding is not yet complete, and the motion to correct the transcript has not yet been heard. The presiding judge stated on the record at the hearing that the post-bankruptcy auction "did not determine the value of any of those entities' assets at the time of the go private transaction." Ex. 17 at 84:15-18. At closing arguments, Judge Trust rejected the rescissory $212 million theory from the bench and articulated the correct measure: *"It's a pretty simple equation. What was I supposed to receive minus what did I receive, that should equal my damages."* Dec. 3 Tr. at 34. That is precisely the formula the government has never applied and the evidence it has never supplied to this Court. Given the centrality of the bankruptcy proceedings to the government's case, if this Court is going to consider the government's evidence (which it should not), it should wait for the bankruptcy court to issue its decision.

3. **The Government's March 30, 2026 Inquiry Regarding the Conduct of the April 7 Hearing**

The defense does not believe an evidentiary hearing on loss should be necessary because, as a matter of law, the PSR and the government have not presented any competent evidence of CHT's value at the time of the alleged offense (January 2017). Absent such evidence, there is no legally supportable basis for a loss determination under the Sentencing Guidelines.

To the extent the Court is inclined to rely on the PSR and the government's submissions, however, an evidentiary hearing would be required. The materials cited by the government consist primarily of statements and positions advanced in the bankruptcy proceedings by the trustee and CC Capital, all of which have been actively disputed by Mr. Parmar. These are not adjudicated findings, nor do they establish loss at the relevant time period required by the Guidelines.

# Cooley

The Honorable Madeline Cox Arleo
Page Six

Moreover, the government's presentation omits critical evidence, including a fully funded and committed pre-bankruptcy offer to acquire CHT, which bears directly on valuation and causation and must be considered if the Court were to evaluate loss at any point other than the January 2017 transaction. The existence, credibility, and implications of that evidence cannot be fairly assessed without testimony subject to cross-examination.

The government asks this Court to find that a company worth nothing on January 30, 2017 somehow funded its own $14.5 million closing contribution that same day; attracted a $240 million acquisition offer fourteen months later; operated for over a year after the closing, controlled by CC Capital; filed for Chapter 11 reorganization rather than liquidation; and then produced $70 million in asset sales through a bankruptcy fire sale. There is no analytical or legal support for the government's only position on loss, which is that the loss equals the entire sales price.

Accordingly, if the Court intends to consider the PSR and government's asserted loss evidence, the defense respectfully requests an evidentiary hearing at which the following witnesses should testify: Chinh Chu, Richard DiBlasi, Frank Lazzara, and Howard Ehrenberg. Mr. Parmar may identify additional witnesses depending on the scope of the government's presentation. Testimony from these witnesses would be necessary for the Court to evaluate the disputed evidence and determine whether any loss has been established under the applicable legal standard.

In addition, the Presentence Report and victim declarations cannot substitute for admissible valuation evidence at the time of the offense and therefore cannot support a loss finding without testimony subject to cross-examination.

4. ████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

██████████

Cooley LLP  55 Hudson Yards  New York, NY  10001-2157
t: +1 212 479 6000  f: +1 212 479 6275  cooley.com



The Honorable Madeline Cox Arleo
Page Seven

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████████

Respectfully Submitted,

*/s/ Andrew Goldstein*
Andrew Goldstein

*/s/ John Hemann*
John Hemann

Cooley LLP  55 Hudson Yards  New York, NY  10001-2157
t: +1 212 479 6000  f: +1 212 479 6275  cooley.com