**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

No. 26-2218

**UNITED STATES OF AMERICA,**
Appellee,

v.

**PARMJIT PARMAR,
a/k/a "Paul Parmar,"**
Appellant.

On Appeal from the United States District Court
for the District of New Jersey
Criminal No. 2:18-cr-00735-MCA-1
(Hon. Madeline Cox Arleo, U.S.D.J.)

**EMERGENCY MOTION TO SET AUGUST 3, 2026
AS THE VOLUNTARY SURRENDER DATE AND FOR
TEMPORARY STAY PENDING REVIEW**

Timothy P. Neumann, Esq.
Broege, Neumann, Fischer & Shaver, LLC
25 Abe Voorhees Drive
Manasquan, New Jersey 08736
Telephone: (732) 223-8484; Cell: (732) 581-7142
Email: timothy.neumann25@gmail.com
*Co-Counsel for Appellant Parmjit Parmar*

1

## INTRODUCTION

Appellant Parmjit Parmar pled guilty in the United States District Court for the District of New Jersey ("District Court") to one count of conspiracy to commit securities fraud and by judgment entered on May 6, 2026, was sentenced to a sixty-month prison term. On May 19, he was notified that he was to surrender to the Bureau of Prisons ("BOP") on June 4, 2026. This emergency motion asks the Court to stay the Appellant's June 11, 2026 surrender date and set August 3, 2026 as Appellant's voluntary surrender date under unchanged conditions of release.

On May 22, 2026, Appellant filed a motion to extend the date of surrender by sixty days, until August 3, 2026 (the "DC Motion"). The DC Motion was supported by a detailed declaration which enumerated the reasons why an extension was warranted. The Senior Courtroom Deputy for the Hon. Madeline Cox Arleo U.S.D.J. sent an email to the Government inquiring whether the Government opposed the DC Motion. In a reply email, the Government stated that it objected. The email was devoid of any argument or any challenge of the facts set forth in the Motion. The Government did not say it intended to file opposing papers and in fact no opposing submissions were filed. Pretrial Services took no position. For all practical purposes, the motion was unopposed save for the nominal objection in the Government's email to chambers.

2

Given the absence of opposition, the District Court held no hearing. It entered an order which states that "good cause appearing, …the Motion is granted." (the "Surrender Extension Order"). The Surrender Extension Order, however, despite there being no legal or factual opposition to the DC Motion, granted only a one-week extension, not the sixty days requested in the DC Motion.

The District Court granted the DC Motion and expressly found good cause. The DC Motion below did not request an extension of merely a few days. It requested a specified surrender date of August 3, supported by a sworn declaration, a documented medical procedure/evaluation schedule, a detailed pre-surrender schedule of necessary tasks, and Appellant's express commitment that he will surrender on August 3 whether or not every remaining task is complete. No written opposition and no evidentiary response were filed in opposition to the DC Motion. Pretrial Services took no position and identified no supervision concern. The Government's informal email opposition stated only that it opposed the request; it provided no reasons and no factual rebuttal.

The Surrender Extension Order sets June 11, only seven days beyond the original surrender date, without stating why that period is sufficient to accomplish the tasks that justified granting the DC Motion. An extension of seven days does not realistically allow Appellant sufficient time to get done what he needs to get done. The order, while purporting to grant the DC Motion, is therefore tantamount to a

3

denial as it affords no meaningful relief. It preserves the form of the grant without preserving its substance. The motion record contains absolutely no evidence that the enumerated tasks can be completed in seven days; it contains no refutation of the statements made by Appellant in his declaration.

Appellant is not asking this Court to interpret the Surrender Extension Order or characterize the June 11 date as a clerical or computational error. June 11 is the operative surrender date. Appellant asks only that this Court set the date that is the only date that is consistent with District Court's finding of good cause and the evidence in the motion record: August 3, 2026. The relief requested changes only the date of surrender. It does not alter the judgment, sentence, restitution, forfeiture, residence restrictions, electronic monitoring, Pretrial Services supervision, or any other release condition.

## I. JURISDICTION AND PROCEDURAL BASIS

This Court has jurisdiction under 28 U.S.C. § 1291. Appellant timely filed a notice of appeal on May 18, 2026 [D.N.J. ECF No. 352], placing the judgment of conviction and sentence before this Court. This motion is brought under Fed. R. App. P. 8(a)(2), 9(b), and 27. This motion is also filed pursuant to 3d Cir. L.A.R. 8.1, 9.1(b), and 27.7  (2011) because it seeks emergency stay relief and expedited review of a post-judgment surrender order. Further district-court motion practice would not

adequately protect the requested relief because the District Court has already entered the order under review and the operative surrender date is imminent.

This is not a motion for release pending appeal under 18 U.S.C. § 3143(b), reconsideration of the sentence, or modification of any condition of release. This motion seeks only an extension of the voluntary surrender date under the extant supervision regimen so that this Court can review an order that granted the DC Motion, finding good cause, but affording no meaningful relief. Appellant commits that he will not seek another surrender-date extension based on a need to get his affairs in order. Medical scheduling and follow-up, personal and family-care arrangements, estate-planning documents, records preservation, residence transition, and pre-surrender coordination will be completed by August 3, 2026, or have to be dealt with, to the extent possible, while Appellant is incarcerated. Nothing in this motion waives, limits, or seeks adjudication of any legally distinct application for release pending appeal under 18 U.S.C. § 3143(b) or Federal Rule of Appellate Procedure 9.

### CHRONOLOGY

| | |
|---|---|
| **May 5, 2026** | District Court sentencing Mr. Parmar. |
| **May 6, 2026** | Judgment entered. CE-1.[1] |
| **May 18, 2026** | Notice of appeal filed. CE-2. |

---

[1] "CE-_" refers to exhibits appended to the Certification of Timothy P. Neumann filed in support of this motion

| May 19, 2026 | Pretrial Services Officer emails Mr. Parmar advising that BOP has designated Fort Dix SCP for voluntary surrender on June 4, 2026; Mr. Parmar promptly forwards to counsel. CE-3. |
|---|---|
| May 22, 2026 | Defendant's motion to extend surrender date to August 3, 2026 (DC Motion), filed in District Court. CE-4. |
| May 26, 2026 | District Court enters order granting DC Motion and finding good cause. CE-7. |
| May 29, 2026 | Counsel receives the official Probation Office letter dated May 18, 2026, transmitting the BOP designation; CE-3. |
| June 4, 2026 | Original Bureau of Prisons voluntary surrender date. CE-3. |
| June 11, 2026 | Operative surrender date set in entered order, with notation "No further adjournments." |
| August 3, 2026 | Date sworn to by Appellant as the operational endpoint. CE-5 ¶ 20. |

## EMERGENCY MOTION SUMMARY

| BOP Original Surrender Date: | June 4, 2026. |
|---|---|
| Motion Filed Below Sought: | Surrender date of August 3, 2026, under unchanged conditions of release. |
| Opposition Below: | No written opposition or evidentiary response filed to DC Motion; no hearing held; no transcript. Pretrial Services took no position. The Government's single-sentence email to the courtroom deputy stated only that it opposed; it gave no reasons and no factual rebuttal. |

6

| | |
|---|---|
| **Record Supporting August 3:** | Sworn declaration, documented medical schedule, detailed workstream, and express finality commitment. Unrebutted. |
| **District Court Order:** | Granted the motion. Found "good cause" appearing. Operative surrender date entered as June 11, 2026. |
| **All Existing Conditions:** | Electronic monitoring, residence restrictions, and Pretrial Services supervision remain in place. |
| **Relief Requested Here:** | (1) Immediate stay of the June 11 date; (2) set August 3, 2026 as the surrender date; or (3) maintain the stay pending supplemental briefing or a limited remand. |

The requested stay is without risk. It simply preserves the status quo. Appellant is kept under the same electronic monitoring, residence restrictions, and Pretrial Services supervision that governed him up until now and that he has complied with. Appellant does not contend that he cannot surrender; he seeks only a fixed period to complete identified tasks already underway and has sworn that August 3 he will not seek any additional extensions if those tasks are not completed.

## II. RELIEF REQUESTED

Appellant respectfully requests that this Court grant the following relief:

1.  Temporarily stay the June 11, 2026 voluntary surrender date pending disposition of this motion, with every existing condition of release remaining in full force and effect;

2.  Expedite consideration of this motion;

7

3.  Set August 3, 2026 as the voluntary surrender date under all existing conditions of release;

4.  Alternatively, maintain the stay and remand to the District Court with instructions to provide a statement of reasons addressing why the surrender date extension was so short, with the stay continuing until those reasons are reviewed by this Court and the merits of this motion adjudicated; and

5.  Grant such other and further relief as the Court deems just and appropriate.

### III. BACKGROUND

**A.    Sentencing, Notice of Appeal, and BOP Surrender Date.**

On May 5, 2026, the District Court sentenced Appellant following his guilty plea to one count of conspiracy to commit securities fraud under 18 U.S.C. § 371. Judgment was entered on May 6, 2026. CE-1. Appellant timely filed a notice of appeal on May 18, 2026. CE-2. The Bureau of Prisons directed Appellant to surrender on June 4, 2026. CE-3.

**B.    The District Court Motion.**

On May 22, 2026, Appellant filed the DC Motion in the District Court seeking an extension of his voluntary surrender date from June 4, 2026 to August 3, 2026. CE-4. The motion record is set forth in the Certification of Timothy P. Neumann, Esq. (the "Neumann Certification"), to which all record citations in this motion

refer.. The motion was deliberately narrow. It did not seek release pending appeal under 18 U.S.C. § 3143(b), reconsideration of the sentence or judgment, or modification of any condition of release. It sought only a clearly specified extension, with every existing condition of release remaining in place.

Appellant's supporting declaration declared that sixty days is sufficient to complete the principal pre-surrender tasks in a disciplined and expeditious manner, that he will surrender on August 3, 2026 whether or not every task is completed. CE-5 ¶ 20. August 3 is backed by an express waiver of any further extension based on his need to complete the tasks enumerated.

The DC Motion was served on the Government. Pretrial Services took no position and identified no supervision concern, violation, or risk-based objection. The Government filed no written opposition and submitted no evidentiary response. Its only response was a single-sentence email to the Court's courtroom deputy, copying defense counsel, stating that it opposed the request; the email supplied no reasons and offered no factual rebuttal to the medical timeline, the estate and family-care needs, the records-preservation tasks, or the sworn finality commitment. No hearing was held, and no party created a factual dispute contesting the veracity of the statements in Appellant's declaration. The District Court therefore ruled on a record in which the requested extension to the August 3 date was supported by

undisputed sworn declaration and documentation, and unrebutted by any filed opposition or evidence. CE-6.

## C.    The Supporting Medical and Personal Record.

Appellant's declaration identified a current medical workstream advised by treating  physicians: ███████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████ CE-5 ¶¶ 6-13; CE-10.

Appellant did not claim that the BOP cannot provide medical care. Appellant sought to facilitate, not evade, BOP intake procedures by allowing current medical records and physician recommendations to be organized before surrender.

Appellant's declaration also identified concrete non-medical tasks: finalizing a revised will, durable financial power of attorney, healthcare power of attorney, and advance directive; arranging care for an elderly father; arranging long-term care for household animals; closing and transitioning residences; preserving legal, medical, financial, and tax records; and coordinating with counsel regarding appellate and related civil matters. CE-5 ¶ 20.

Nothing in Appellant's declaration was disputed.

## D.    The District Court's Order.

On May 26, 2026, the District Court entered the Surrender Extension Order which was entitled "Order Granting Defendant's Motion to Extend Voluntary Surrender Date". CE-7. The Surrender Extension Order states that the Court considered the motion, supporting declaration, and any response, that "good cause" appeared, and that the motion is "GRANTED."

The proposed order had requested an extension to August 3, 2026. The Surrender Extension Order contains handwritten edits setting the operative surrender date as June 11, 2026 and adding the notation "No further adjournments." It does not identify any concrete reason, supervision concern, flight-risk concern, danger concern, or prejudice that would justify limiting the extension to seven days beyond the original BOP date. CE-7.

## IV. STANDARD OF REVIEW

The reviewable issue is whether this Court should preserve the status quo and set August 3, 2026 as the surrender date, where the District Court granted the extension motion on a finding of good cause and the factual record supporting August 3 was unrebutted by any filed opposition or evidence. Rule 8(a)(2) permits this Court to enter interim relief preserving the status quo pending appellate review. The traditional stay factors apply: (1) likelihood of success on the merits; (2) irreparable harm absent a stay; (3) the balance of equities; and (4) the public interest.

11

*Nken v. Holder*, 556 U.S. 418, 433-34 (2009). All four factors support a temporary stay here. To the extent the Court reviews the District Court's reason-giving, Rule 9(a)(1), incorporated by Rule 9(b), requires reasons sufficient to permit meaningful review.

Rule 9(a)(1), incorporated by Rule 9(b), requires the district court to state reasons for orders regarding release or detention in criminal cases. The closest procedural analogue is this Court's opinion in *United States v. Roeder*, No. 20-1682, 2020 WL 1545872, at *2-4 (3d Cir. Apr. 1, 2020) (copy attached hereto), where the Third Circuit reversed an unexplained denial of a motion to postpone self-surrender and explained that the absence of reasons hampered appellate review under Rule 9.

In reviewing release and detention matters, this Court independently assesses the record, while giving respectful consideration to the district court's reasons. *United States v. Delker*, 757 F.2d 1390, 1399-1400 (3d Cir. 1985); see also *United States v. Smith*, 793 F.2d 85, 87 (3d Cir. 1986) (applying *Delker's* independent-review standard in the bail-pending-appeal context). Thus the reviewing court is not limited to assessing whether there was an abuse of discretion.

12

## V. ARGUMENT

### A.     Immediate Relief Is Necessary to Preserve This Court's Ability to Grant Effective Review.

Unless this Court enters a temporary stay, Appellant will report to BOP custody before this Court can determine whether the entered extension gives effect to the District Court's good-cause finding. Once he reports, the pre-surrender relief sought here will be functionally lost; post-surrender remedies cannot recreate the pre-surrender opportunity the extension was meant to preserve. A stay is necessary because, without it, review may come too late to preserve the very relief the District Court granted. See *Nken v. Holder*, 556 U.S. 418, 421 (2009).

The Supreme Court has long recognized the foundational basis for this relief. As the Court explained in *Nken v. Holder*, 556 U.S. 418, 421 (2009):

> It takes time to decide a case on appeal. Sometimes a little; sometimes a lot. No court can make time stand still while it considers an appeal, and if a court takes the time it needs, the court's decision may in some cases come too late for the party seeking review. That is why it has always been held, as part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal. A stay does not make time stand still, but does hold a ruling in abeyance to allow an appellate court the time necessary to review it. (internal quotations and citations omitted).

This Court has applied the same principles to stay voluntary-surrender orders pending appellate review. See *United States v. Roeder*, 2020 WL 1545872, at *2 (3d Cir. Apr. 1, 2020) (copy annexed, granting stay of surrender date to preserve meaningful appellate review).

13

The Government remains in materially the same legal and practical position during a finite extension under unchanged conditions: the judgment remains entered, the sentence remains imposed, the notice of appeal remains pending, supervision remains intact, and Appellant remains subject to every existing condition. The Government receives every protection it has today, plus a fixed final surrender date supported by a sworn commitment.

## B.    The Order Preserved the Form of the Grant Without the Substance of the Good-Cause Relief Requested.

The motion below requested August 3, 2026 and supported that date with a sworn declaration, a documented medical schedule, a detailed pre-surrender workstream, and an express commitment to surrender on that date whether or not every task is complete. CE-4; CE-5 ¶¶ 6-13, 20; CE-10. The Government's email stated only that it opposed the request. CE-6. Neither the Government nor Pretrial Services filed any written response or evidentiary submission, and no hearing was held. Neumann Cert. ¶¶ 11-14. No filed submission identified flight risk, danger, noncompliance, prejudice, administrative burden, or any other record-based reason to deny the requested August 3 date.

On that record, June 11 is inconsistent with the finding of good-cause. The District Court granted relief in form, but the operative date does not give practical effect to the relief requested and supported below. The record identified a structured

medical and transition workstream extending into July, together with an August 3 finality commitment. A seven-day effective extension does not accommodate that showing, and no contrary evidence was filed. On this record, the order, while styled as a grant, was not a denial in form but was tantamount to a denial of the relief requested: it preserves the form of the grant without preserving its substance.

## C.    It Is Undisputed That The Tasks To Be Performed Cannot Be Completed Before June 11.

The unrebutted showing below identified a finite but structured pre-surrender workstream that cannot be completed by June 11. The categories are summarized in the table below.

| Category | Pre-Surrender Task | Why Completion Requires Time Through Early August | Record Support |
|---|---|---|---|
| Medical | ████████████████ ████████████████ ████████████████ ████████████████ ████████████████ ████████████████ | ████████████████ ████████████████ ████████████ Pre-incarceration completion permits transmission of current records to BOP at intake. | CE-5 ¶¶ 6-13; CE-10. |
| Personal and Legal | Revised will; durable financial POA; healthcare POA; advance directive. | Each requires review, execution, notarization, and coordination with counsel and family. | CE-5 ¶ 20. |

15

| Category | Pre-Surrender Task | Why Completion Requires Time Through Early August | Record Support |
|---|---|---|---|
| Family | Care planning for elderly father; long-term care for household animals. | Arrangements require caregiver identification, authorizations, and transition planning. | CE-5 ¶ 20. |
| Records and Counsel | Preservation and transfer of medical, legal, financial, and tax records; appellate coordination. | Tasks require organized review, secure preservation, and continued access by counsel and family during incarceration. | CE-5 ¶ 20. |

## D.    August 3 Is the Only Fixed, Sworn, and Record-Supported Endpoint Before the Court.

August 3 is not a new appellate construct. It is the date presented to the District Court in the original motion, supported by sworn testimony and accompanying documentation, and never rejected on the basis that the underlying grounds were insufficient. The District Court instead found good cause and granted the motion. Four features distinguish August 3 from any other date that might be set:

### 1. It Was the Date Sought Below.

August 3 was the date identified in the motion below and presented to the District Court before its ruling. CE-4. It is not a date invented for this Court. This Court is not being asked to accept a new hardship theory or a new target date

16

invented on appeal; August 3 is the record-supported date requested in the motion the District Court granted.

### 2. It Was Supported by Sworn Declaration and Documentation.

August 3 is the date Appellant identified in his sworn declaration after consultation with treating physicians, estate-planning counsel, and family. CE-5 ¶ 20. The medical appointment schedule reflects appointments and follow-up extending through July 2026. CE-10. Each medical step depends on completion of the prior step. The non-medical tasks similarly require weeks rather than days. The date is evidentiary, not rhetorical.

### 3. It Is Fixed, Sworn, and Final.

Appellant has sworn under penalty of perjury that he will surrender on August 3, 2026 whether or not every task is complete, and he has expressly waived any further administrative extension on the same grounds. CE-5 ¶ 20. The waiver is not rhetorical; it is a sworn limitation that converts the request from open-ended to definitively final.

### 4. It Preserves Unchanged Supervision.

Extending surrender to August 3 changes only the date of surrender, not the level of supervision. Appellant would remain under the same residence restrictions, electronic monitoring, reporting obligations, and Pretrial Services supervision that govern him now. The relief does not alter the judgment, the sentence, or any condition of release. That low-risk assessment is reinforced by the existing

supervision record: Pretrial Services previously recommended, and the District Court granted over the Government's objection, a modification to stand-alone location monitoring; those conditions continued after sentencing, and Pretrial Services has identified no current concern. CE-8; CE-9.

### E.    August 3 Is the Moderate and Institutionally Safer Choice.

August 3 is more moderate in institutional terms because it is fixed, final, supervised, and non-open-ended. It resolves the extension request in one step, under unchanged conditions, and avoids serial emergency proceedings over interim dates that are not themselves grounded in the record. The Government receives every protection it has today, plus a definite surrender date and a sworn undertaking that Appellant will not seek another administrative surrender-date extension based on the same medical, personal, family-care, estate-planning, records-preservation, residence-transition, or pre-surrender preparation grounds advanced here. August 3 therefore gives practical effect to the District Court's good-cause finding while eliminating uncertainty.

### F.    A Materially Shorter Date Would Require Record-Based Reasons to Preserve the Substance of the Grant.

No intermediate date between June 11 and August 3 was requested below, sworn to by Appellant, supported by the documented workstream, or tied to any reasoning the District Court supplied. The supporting declaration identified August 3 as the operational endpoint, and the finality commitment is tied specifically to that

18

date. CE-4; CE-5 ¶ 20. A materially shorter date that is not tied to the record risks preserving the form of the grant without preserving its substance. If the Court is inclined to select a date earlier than August 3, Appellant respectfully submits that the date should be tied to the record, and the purpose of preserving meaningful pre-surrender relief.

**G.      If August 3 Is Not Set Immediately, the Stay Should Be Maintained Pending Prompt Supplemental Briefing, or a Limited Remand With the Stay Preserved.**

The cleanest course is for this Court to set August 3 directly. Because the record supporting August 3 was unrebutted by any filed opposition or evidence, and because the operative date was confirmed as intentional rather than inadvertent, the question is properly before this Court and remand for clarification is unnecessary. Setting August 3 gives practical effect to the District Court's grant in one step, on the date the unrebutted record identifies, under unchanged supervision.

If this Court is not prepared to set August 3 immediately, the stay should be maintained while the Court orders prompt supplemental briefing or remands for a statement of reasons. Any remand should preserve the stay until this Court evaluates the reasons provided by the District Court; without a continuing stay, June 11 would arrive before any clarification could be obtained and the pre-surrender relief the District Court found warranted would be lost in the interim.

## **CONCLUSION**

The District Court granted the extension motion and found good cause. But the June 11 date does not give substance to the good-cause showing the Court accepted; it preserves the form of the grant without the relief necessary to make that grant meaningful. August 3, 2026 is the only date in the present record that is requested, sworn, documented, and final. Appellant respectfully asks this Court to stay the June 11 surrender date and to set August 3, 2026 as the voluntary surrender date under all existing conditions of release. In the alternative, the Court should maintain the stay and order prompt supplemental briefing, or maintain the stay and remand for a statement of reasons.

Dated: May 29, 2026

Respectfully submitted,

/s/ Timothy P. Neumann
Timothy P. Neumann, Esq.
NJ Bar No. 005081973
Broege, Neumann, Fischer & Shaver, LLC
25 Abe Voorhees Drive
Manasquan, New Jersey 08736
Telephone: (732) 223-8484;
Cell: (732) 581-7142
Email: timothy.neumann25@gmail.com

*Co-Counsel of Record for Appellant*
*Parmjit Parmar*

20

## CERTIFICATE OF COMPLIANCE

1.      This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) because, excluding the parts of the motion exempted by Rule 32(f), it contains 4642 words.

2.      This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

3.      This motion complies with the electronic filing requirements of Third Circuit Local Appellate Rule 31.1(c) because the text of the electronic copy is identical to the text of the paper copy, and a virus check was performed using Avast Business Security, program  version 26.1.2883a (build 26.1.10738.977) current as of May 29, 2026.

/s/ Timothy P. Neumann
Timothy P. Neumann, Esq.

21

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 29, 2026, I electronically filed the foregoing Emergency Motion with the Clerk of the United States Court of Appeals for the Third Circuit through the Court's CM/ECF system, which will serve all registered counsel of record by electronic notification. Because this motion seeks emergency relief, a courtesy copy has also been served by email upon counsel for the United States:

Mark E. Coyne, Esq., Assistant United States Attorney
mark.coyne@usdoj.gov

with a courtesy copy by email to:

Kelly M. Lyons, Assistant United States Attorney (D.N.J.)
Kelly.Lyons@usdoj.gov

/s/ Timothy P. Neumann
Timothy P. Neumann, Esq.

22

## INDEX OF EXHIBITS

| | |
|---|---|
| CE-1 | Judgment in a Criminal Case, D.N.J. ECF No. 349 |
| CE-2 | Notice of Appeal, D.N.J. ECF No. 352 |
| CE-3 | Email from United States Pretrial Services Officer Lura Jenkins to Appellant dated May 19, 2026 transmitting the Bureau of Prisons designation, together with the official May 18, 2026 letter of the United States Probation Office, District of New Jersey, received at counsel's office on May 29, 2026 |
| CE-4 | Appellant's Motion to Extend Voluntary Surrender Date, D.N.J. ECF No. 357, filed May 22, 2026 |
| CE-5 | Declaration of Paul Parmar, D.N.J. ECF No. 355-1, filed May 22, 2026 |
| CE-6 | email correspondence dated May 22, 2026 reflecting the Government's single-sentence opposition and counsel's communications with chambers |
| CE-7 | Order Granting Defendant's Motion to Extend Voluntary Surrender Date, D.N.J. ECF No. 358, entered May 26, 2026 |

| CE-8 | Letter Motion to Modify Conditions of Release, D.N.J. ECF No. 324, filed January 6, 2026 |
|------|------|
| CE-9 | Order Modifying Conditions of Release, D.N.J. ECF No. 326, entered January 13, 2026 |
| CE-10 | Updated Medical Appointment Schedule. Medical-record materials are submitted under seal as a discrete portion of the certification, the subject of the concurrent Motion to Seal. |

The following proposed orders are submitted with this motion:

[Proposed] Temporary Stay Interim Order

[Proposed] Final Order Setting Voluntary Surrender Date of August 3, 2026

[Proposed Alternative] Order Maintaining Stay and Remanding for Statement of Reasons

UNITED STATES OF AMERICA v. CALVIN ROEDER, Appellant

No. 20-1682

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

April 1, 2020

NOT PRECEDENTIAL

GCO-001-E

Appeal from the United States District Court for the Eastern District of Pennsylvania

District Court No. 2-18-cr-00259-001

District Judge: The Honorable Wendy Beetlestone

Before: SMITH, *Chief Judge*, AMBRO and CHAGARES, *Circuit Judges*

---

# OPINION**2 2

PER CURIAM.

Calvin Roeder filed an emergency appeal seeking review of the District Court's denial of his motion to postpone his self-surrender date in light of the COVID-19 pandemic. We reversed the District Court's denial on March 29, 2020. We now provide the reasons for our order.

## I.

Roeder pleaded guilty to charges of possession and distribution of child pornography under 18 U.S.C. § 2252(a). On February 18, 2020, the District Court entered a judgment sentencing him to 78 months' imprisonment and ordered him to self-surrender to the Bureau of Prisons, at a prison in Pennsylvania, on March 30, 2020.

After Roeder's sentencing but before his surrender date, Pennsylvania, along with the rest of the United States, began experiencing the effects of the COVID-19 pandemic. "COVID-19 is the infectious disease caused by the novel coronavirus."1 The virus was unknown until an outbreak began in December 2019 in Wuhan, China. The most common symptoms of the illness are fever, tiredness, and a dry cough, which may progress and cause difficulty breathing and respiratory distress.2 The elderly and those with pre-existing medical conditions are at increased risk of*3 3severe illness and death

from the virus.3 On March 11, 2020, the World Health Organization declared COVID-19 a global pandemic.4

In response to COVID-19, the Commonwealth of Pennsylvania has suspended schools indefinitely. In addition, on March 19, 2020, Pennsylvania Governor Thomas Wolf entered an order prohibiting the operation of businesses that are not life sustaining.5 On March 23, 2020, residents in several northeastern Pennsylvania counties were ordered to stay home.6

On March 25, 2020, Roeder filed a motion in the District Court to delay the execution of his sentence due to the COVID-19 pandemic. He argued that his surrender should be delayed until May 4, 2020,7 or until the COVID-19 crisis subsides, "[i]n the interest of the health and safety of Mr. Roeder and every member of the staff of the Federal Prison at Allentown, in addition to their families, and other inmates." Motion at 3. Roeder cited no law in support of his request, contending that the "ends of justice" would be served because a delay*4 4would promote public safety. *Id.* at 4. Later that day, the Government responded that it did not object to Roeder's request.

The next day, March 26, 2020, the District Court summarily denied, without reasoning, Roeder's unopposed motion and directed him to surrender as scheduled on March 30, 2020.

Roeder promptly filed this emergency appeal seeking review of the District Court's order and a postponement of 90 days.

## II.

We have jurisdiction to review the District Court's order pursuant to 18 U.S.C. § 3145(c) and 28 U.S.C. § 1291. *See also* Fed. R. App. P. 9(b) ("A party entitled to do so may obtain review of a district-court order regarding release after a judgment of conviction by filing a notice of appeal from that order in the district court."). To facilitate our review, Rule 9(a)(1) requires the District Court to contemporaneously "state in writing, or orally on the record, the reasons for an order regarding the release or detention of a defendant in a criminal case." Fed. R. App. P. 9(a)(1).8 If there has been a finding by clear and convincing evidence that "the person is not likely to flee or pose a danger to the safety of any other person or*5 5the community if released," *see* 18 U.S.C. § 3143(a), we may grant relief "if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c).

## III.

According to Pennsylvania's Department of Health, a primary strategy for minimizing the spread of COVID-19 is "social distancing."9 This means avoiding large gatherings of people and keeping at least six feet away from other individuals.10 It goes without saying that prisons generally are crowded spaces and therefore are less than conducive to the practice of social distancing. During this rapidly evolving public health emergency, there are many valid concerns about the possibility of contagion in prisons.

The Federal Bureau of Prisons (BOP), which is responsible for the custody and care of more than 175,000 federal inmates,11 has significantly modified its operations in light of the COVID-19 pandemic.12 It has suspended all social visits, limits inmate movement, screens inmates for symptoms and temperature elevations, and, if present, isolates symptomatic inmates.13 Due to continuously*6 6changing circumstances surrounding the COVID-19 pandemic, it is unclear to what extent these measures have been or will be effective in mitigating spread of the disease. The BOP, like the rest of the country, is still learning how best to deal with this public health threat.

## IV.

Section 3143(a) provides that an individual who has been convicted and sentenced must be detained unless there is a finding "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(a)(1).

As Roeder observed in his motion before the District Court,14 the District Court previously extended the execution of his sentence due to his mother's illness and subsequent death. *See* Motion at 3. In addition, after a very brief imprisonment, the District Court again determined that it was appropriate to re-release him to home detention. *Id*. Most recently, the Government filed a non-opposition to his motion before the District Court, an implicit concession that it continues to be the case that Roeder is unlikely to flee or pose a danger to anyone in the community if his surrender date is delayed. *See* 18 U.S.C. § 3143(a).*7 7

Because the District Court previously concluded that there was clear and convincing evidence that Roeder poses neither a flight risk nor a danger to the community, and because the Government implicitly agreed with this determination,15 the District Court should have explained why it denied Roeder's request for an extension of his self-surrender date in light of the COVID-19 pandemic. Unfortunately, the District Court provided no reason whatsoever for its ruling. Instead, it summarily denied Roeder's unopposed motion without further discussion.

## V.

We are tasked with reviewing the District Court's decision to deny an unopposed motion. Although we must independently determine whether relief is appropriate, we give careful consideration to the reasons offered by the District Court. *See, e.g., United States v. Smith*, 793 F.2d 85, 87 (3d Cir. 1986) (reviewing a district court order regarding bail pending appeal); *United States v. Delker*, 757 F.2d 1390, 1400 (3d Cir. 1985) (reviewing a district court order of detention pending trial). Our task is hampered in this case by the District Court's lack of substantive reasoning. We simply cannot say whether it adequately considered*8 8Roeder's motion and applied the requirements of 18 U.S.C. § 3143, as it was required to do.

Under ordinary circumstances, it would be our preference to vacate the District Court's order and permit it to provide substantive conclusions concerning the merits of Roeder's

motion. These are not, however, ordinary times. In light of the exigent circumstances surrounding the COVID-19 pandemic and the timing of our ruling (less than 24 hours before Roeder's scheduled surrender date), we were compelled to grant relief and reverse the District Court's order—even though the existence of a widespread health risk is not, without more, a sufficient reason for every individual subject to a properly imposed federal sentence of imprisonment to avoid or substantially delay reporting for that sentence.16

While the COVID-19 pandemic has given rise to exceptional and exigent circumstances that require the prompt attention of the courts, it is imperative that they continue to carefully and impartially apply the proper legal standards that govern each individual's particular request for relief. If, in the future, Roeder seeks an additional modification of his self-surrender date, we expect that the District Court will provide an adequately reasoned decision so that, if an appeal follows, we may engage in a thorough appellate review.

---

*. This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

1. https://www.bop.gov/coronavirus/ (Mar. 30, 2020).

2. https://www.who.int/news-room/q-a-detail/q-a-coronaviruses (Mar. 30, 2020).

3. *Id.*

4. https://www.who.int/emergencies/diseases/novel-coronavirus-2019/events-as-they-happen. (Mar. 30, 2020).

5. https://www.governor.pa.gov/wp-content/uploads/2020/03/20200319-TWW-COVID-19-business-closure-order.pdf (Mar. 30, 2020).

6. https://www.governor.pa.gov/wp-content/uploads/2020/03/03.23.20-TWW-COVID-19-Stay-at-Home-Order.pdf (Mar. 30, 2020).

7. The motion requests a 30-day postponement (which would fall on April 22, 2020), *see* Motion at 3, and also requests a report date of May 4, 2020, *see id.* at 4. For present purposes, we will assume Roeder intended the later date.

8. Rule 9(b) of the Federal Rules of Appellate Procedure directs that, where a party seeks review of a District Court order regarding release after a judgment of conviction, the District Court's order is subject to the requirements of Rule 9(a). *See* Fed. R. App. P. 9(b).

9. https://www.health.pa.gov/topics/disease/coronavirus/Pages/Stop-the-Spread.aspx (Mar. 30, 2020)

10. *Id.*

11. https://www.bop.gov/about/agency/ (Mar. 30, 2020).

12. https://www.bop.gov/coronavirus/covid19_status.jsp (Mar. 30, 2020).

13. *Id.*

14. On appeal, Roeder provided a notably more substantial motion than he did in the District Court. In issuing our order, however, we explicitly refused to take cognizance of arguments proffered for the first time in his submission to our Court.

15. Although the Government now argues to us that the District Court's order was within its authority, the Government has not indicated that it has changed its apparent view that Roeder does not pose a flight risk or a danger to the community.

16. Similarly, the existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit.