UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br>v.<br><br>PARMJIT PARMAR, a/k/a "Paul Parmar,"<br><br>*Defendant.* | Case No. 2:18-cr-00735-MCA-1<br><br>Hon. Madeline Cox Arleo<br><br>*Oral Argument Requested* |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR RELEASE PENDING APPEAL**
{*corrected to fix clerical errata*}

BROEGE, NEUMANN, FISCHER & SHAVER, LLC
Timothy P. Neumann, Esq. [NJ Bar ID # 005081973]
25 Abe Voorhees Drive
Manasquan, NJ 08736
Cell: (732) 581-7142
Email: timothy.neumann25@gmail.com

*Counsel for Defendant Parmjit Parmar*

i

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................1

PROCEDURAL BACKGROUND.....................................................................4

PRESERVATION OF APPELLATE RIGHTS UNDER THE PLEA
AGREEMENT ...................................................................................................7

LEGAL STANDARD.........................................................................................8

ARGUMENT .......................................................................................................9

   I.  NO FLIGHT RISK BY CLEAR AND CONVINCING EVIDENCE.............9

   II.  NOT A DANGER TO THE COMMUNITY.................................................12

   III.  THE APPEAL IS NOT FOR DELAY .......................................................12

   IV.  THE APPEAL RAISES SUBSTANTIAL QUESTIONS...........................13

   V.  A FAVORABLE RULING IS LIKELY TO PRODUCE A QUALIFYING
RESULT ........................................................................................................25

   VI.  PROPOSED CONDITIONS OF RELEASE ............................................34

   VII.  ALTERNATIVE RELIEF: TEMPORARY STAY OF SURRENDER....36

CONCLUSION...................................................................................................36

## TABLE OF AUTHORITIES

**Cases**

*Gall v. United States,* 552 U.S. 38 (2007) .................................................................25

*Gov't of V.I. v. Davis,* 43 F.3d 41 (3d Cir. 1994) .....................................................23

*Kousisis v. United States,* 145 S. Ct. 1382 (2025)....................................................19

*Molina-Martinez v. United States,* 578 U.S. 189 (2016)..........................................23

*Pepper v. United States,* 562 U.S. 476 (2011)..........................................................34

*Peugh v. United States,* 569 U.S. 530 (2013) ...........................................................25

*United States v. Antico,* 123 F. Supp. 2d 285 (E.D. Pa. 2000) ................................33

*United States v. Banks,* 55 F.4th 246 (3d Cir. 2022) ................................................15

*United States v. Dickler,* 64 F.3d 818 (3d Cir. 1995) ..............................................19

*United States v. Electrodyne Sys. Corp.,* 147 F.3d 250 (3d Cir. 1998) ...................14

*United States v. Fallon,* 470 F.3d 542 (3d Cir. 2006) ..............................................23

*United States v. Fattah,* 224 F. Supp. 3d 443 (E.D. Pa. 2016)................................33

*United States v. Georgiou,* 777 F.3d 125 (3d Cir. 2015).........................................20

*United States v. Kirschner,* 995 F.3d 327 (3d Cir. 2021) ........................................15

*United States v. Kopp,* 951 F.2d 521 (3d Cir. 1991), as amended (Feb. 18, 1992).19

*United States v. Kousisis,* 66 F.4th 406 (3d Cir. 2023) ............................................23

*United States v. Langford,* 516 F.3d 205 (3d Cir. 2008) ..........................................26

*United States v. Messerlian,* 793 F.2d 94 (3d Cir. 1986) .....................................1, 9

*United States v. Miller,* 753 F.2d 19 (3d Cir. 1985).........................................passim

*United States v. Nagle,* 803 F.3d 167 (3d Cir. 2015)...............................................18

*United States v. Nathan,* 188 F.3d 190 (3d Cir. 1999) ............................................18

*United States v. Quillen,* 335 F.3d 219 (3d Cir. 2003) ............................................23

*United States v. Raia,* 993 F.3d 185 (3d Cir. 2021)..................................................26

*United States v. Scarfo,* 41 F.4th 136 (3d Cir. 2022)...............................................20

*United States v. Smalley,* 517 F.3d 208 (3d Cir. 2008) ............................................27

*United States v. Smith,* 793 F.2d 85 (3d Cir. 1986).............................................passim

*United States v. Syme,* 276 F.3d 131 (3d Cir. 2002)..............................................23

*United States v. Tomko,* 562 F.3d 558 (3d Cir. 2009) (en banc) ............................25

*United States v. Wright,* 642 F.3d 148 (3d Cir. 2011) ............................................27

*United States v. Yeaman,* 194 F.3d 442 (3d Cir. 1999) ..........................................19

## Statutes

18 U.S.C. § 371 ............................................................................................................5

18 U.S.C. § 3142 ........................................................................................................34

18 U.S.C. § 3143(b) ............................................................................................passim

18 U.S.C. § 3553(a) ....................................................................................................6

18 U.S.C. § 3663A ....................................................................................................23

## Rules

Fed. R. App. P. 9(b) ....................................................................................................4

Fed. R. Crim. P. 32(i)(3)(B)........................................................................................1

Fed. R. Crim. P. 38(b)(1) ............................................................................................8

Fed. R. Crim. P. 46(c) ................................................................................................1

## Sentencing Guidelines

U.S.S.G. § 2B1.1 ................................................................................................passim

U.S.S.G. § 2B1.1 cmt. n.3(E)(i)................................................................................15

U.S.S.G. § 3B1.1(a) ....................................................................................................6

U.S.S.G. § 3E1.1 ........................................................................................................6

U.S.S.G. § 6A1.3........................................................................................................passim

## Exhibit List

| B | Transcript 2025-05-07 MCA USA V PARMAR PLEA |
|---|---------------------------------------------|
| C | Sentencing Transcript (May 5, 2026) |

| | |
|---|---|
| D | Final Presentence Report, cited excerpts |
| N | Letter Brief Requesting Evidentiary Hearing (Apr. 2, 2026) — ECF No. 341 |
| O | Government Letter re Loss Dispute (Apr. 27, 2026) — ECF No. 344 |
| Q | Judgment in a Criminal Case (May 6, 2026) — ECF No. 349 |
| Q-1 | Statement of Reasons (May 6, 2026) — ECF No. 349-1 (sealed) |
| T | Order Continuing Release / Extending Surrender Date (May 26, 2026) \| |
| U | Supervision Chronology and Pretrial Services Contact Record |
| V | Sentencing-Outcome Scenario Analysis |
| Y | Valuation Evidence Roadmap |
| Z | Preservation Record Catalogue |
| AA | Risk-to-Condition Mapping and Tier 2 Conditions |

## PRELIMINARY STATEMENT

This Motion does not ask the Court to revisit its sentence. It asks only the statutory question Congress assigns to the district court in the first instance: whether continued release, under conditions stricter than those that have governed Mr. Parmar, for nearly eight years and more readily verifiable by Pretrial Services, is appropriate under 18 U.S.C. § 3143(b) and Federal Rule of Criminal Procedure 46(c) while the Third Circuit reviews preserved sentencing issues. A sentencing judge may remain confident in her judgment and still conclude that an issue is fairly debatable for appellate purposes; the two inquiries are distinct. See, *United States v. Messerlian*, 793 F.2d 94, 97 (3d Cir. 1986) (finding the appeal presented issues "sufficiently substantial" for release pending appeal while "expressly intimat[ing] no views with respect to the merits").

The appeal accepts the guilty plea and the conviction. It challenges only unstipulated sentencing determinations. Two questions lead the appeal: whether actual loss under U.S.S.G. § 2B1.1 could be calculated from the gross transaction amount without a determination of the value received by the victims on the date of the merger, and whether the disputed issues of valuation, causation, and reliance on the results of bankruptcy proceedings required findings under Federal Rule of Criminal Procedure 32(i)(3)(B) and/or an evidentiary hearing under U.S.S.G. § 6A1.3. Related restitution-causation, harmless-error, and alternative-enhancement issues reinforce those two questions; they do not expand this Motion into a generalized request to reconsider the sentence.

Those two questions are substantial because they are preserved, legal or procedural in character, fact-sensitive, and consequential. The Government itself characterized the loss dispute as "a legal dispute, not a factual one," and argued

1

that valuation evidence was "completely irrelevant."[1] The appeal will present whether that legal premise can be reconciled with the Third Circuit precedent. Loss determination is fact-sensitive. The absence of a securities-fraud decision resolving this precise issue confirms that the question is, at the least, fairly debatable. Granting the relief sought does not require, and Defendant is not asking, that the Court revisit its sentencing order.

The Government will argue that even if the court conducted a valuation hearing and determined that the loss was zero, there would be no effect on the sentence. The record does not support that conclusion. The 26-level loss enhancement was the dominant driver of the adopted 324-to-405-month advisory range, capped at 60 months. The Court did not announce that it would impose the same sentence regardless of any Guidelines error. To the contrary, the transcript shows that the Guidelines were the basis for the sentence: the Court recognized that Defendant was not receiving a sentence near the calculated range because of the statutory maximum, and it selected the highest available sentence within that capped framework. A favorable ruling on the principal loss issue would therefore likely require resentencing under a materially different Guidelines framework, which is what § 3143(b)(1)(B) requires.

The release record in this case is extraordinary by any practical measure. For nearly eight years, Defendant has remained under continuous Court supervision, including lengthy periods of GPS monitoring, strict home detention, and highly restrictive confinement, together with ongoing oversight by Pretrial Services. Throughout that entire period, he has complied with every court appearance, has never failed to surrender when directed, has never been the subject of a revocation application, and has never attempted unauthorized international travel.

---

[1] Letter from the United States, ECF No. 344, at 3-4 (Apr. 27, 2026) (Ex. O).

2

This history is particularly significant because it spans every stage of the case, including periods when Defendant faced substantially greater sentencing exposure than he faces today. Yet at no point did he flee, abscond, violate release conditions in a manner suggesting nonappearance, or otherwise demonstrate that court supervision was ineffective. To the contrary, the record reflects years of successful compliance under increasingly restrictive conditions.

Most importantly, this is not a predictive assessment based on assumptions about future conduct. It is a conclusion informed by nearly eight years of actual experience. The Court has repeatedly entrusted Defendant to supervised release, Pretrial Services has monitored that release extensively, and the resulting record demonstrates that structured supervision has been both workable and effective. Few defendants seeking relief under § 3143(b) can point to such a lengthy, tested, and successful history of compliance under Court supervision.[2] He did not flee while facing exposure far greater than the sentence he now faces. In early 2018, before any release condition existed, he disclosed his location to the Government from abroad and returned to the United States on schedule. The Court continued bail at sentencing on May 5, 2026, and on May 26, 2026 extended the surrender date to June 11, 2026, while ordering that all other conditions of release remain in full force and effect. Defendant has separately sought review of that surrender-date order in the United States Court of Appeals for the Third Circuit, and that matter remains pending; he does not, through the present Motion, ask this Court to revisit the surrender-date order.[3] Those facts do not decide this Motion, but they are practical evidence that supervised release has remained workable.

---

[2]The supervision metrics in this Motion are drawn from the compliance chronology, and Pretrial Services contact record collected in Exhibit U.

[3]Minutes of Proceedings, ECF No. 348, at 1 (May 6, 2026) ("Ordered defendant continued bail."); Order Granting Defendant's Motion to Extend Voluntary

The proposed conditions are stricter than before: continuous monitoring, home confinement, travel-document restrictions, a third-party custodian, full financial disclosure, no investor solicitation, no fundraising, no securities-related business, no new entities, no victim or witness contact, immediate surrender upon any adverse release ruling, and an eighteen-month status review if the appeal remains pending. If the Court denies release, Defendant respectfully requests a brief stay of surrender sufficient to permit orderly review under Federal Rule of Appellate Procedure 9(b).

## PROCEDURAL BACKGROUND

### A. The Indictment, Release, and Approximately Eight-Year Compliance Record

This case concerns the January 30, 2017 going-private transaction involving Constellation Healthcare Technologies, Inc. ("CHT"). Defendant was arrested on May 16, 2018, and released on conditions that included GPS monitoring, surrender of his passport, residence and travel restrictions, and regular reporting to Pretrial Services. Over the roughly eight years that followed, he appeared as required at every stage of the proceedings. The record reflects no failure to appear, no revocation motion, and no unauthorized international travel attempts.

### B. Bail and Supervision History

Defendant's conditions were calibrated over time as circumstances warranted, including periods of strict home detention and extended near-total confinement. On limited occasions, the Court authorized temporary removal of his monitoring device for medically necessary examinations, after which he returned

---

Surrender Date, ECF No. 358 (May 26, 2026) (extending the surrender date to June 11, 2026 and ordering that "all other conditions of release previously imposed shall remain in full force and effect") (Ex. T).

for reinstallation. Exhibit U sets out the supervision chronology and Pretrial Services contact record in detail.

### C. The May 7, 2025 Plea

On May 7, 2025, Defendant pleaded guilty to Count One of the Indictment, conspiracy to commit securities fraud in violation of 18 U.S.C. § 371. The statutory maximum on Count One is 60 months. The Plea Agreement (ECF No. 298) stipulated to the elements of Count One only; it did not stipulate to any total offense level, sentencing range, loss amount, valuation methodology, restitution figure, or any other sentencing fact or conclusion. The Court dismissed Counts Two and Three on the Government's motion.

### D. Preservation of the Sentencing Issues

The loss, valuation, causation, and procedural issues that Defendant will raise on appeal were litigated and preserved before judgment. The defense and Government PSR objections, the Government's sentencing memorandum, Defendant's January 26, 2026 sentencing submission (ECF No. 328) the Government's February 4, 2026 response (ECF No. 332), Defendant's February 11, 2026 reply (ECF No. 334), his April 2, 2026 letter brief and sealed attachment (ECF No. 341) requesting an evidentiary hearing and identifying witnesses, the Government's April 27, 2026 letter (ECF No. 344), and Defendant's May 4, 2026 letter (ECF No. 347) together frame the disputed questions.[4] Exhibit Z catalogues the preservation record.

The Government's April 27, 2026 letter is central to the appeal. The Government there characterized the loss dispute as "a legal dispute, not a factual one, which does not require any sort of factual findings," and described valuation

---

[4]ECF Nos. 328, 332, 334, 341, 344, 347; Sentencing Tr. (May 5, 2026) (Ex. C). Exhibit Z collects the preservation record.

evidence, including any "valuation of CHT at the time of the acquisition" and offers to purchase the business, as "completely irrelevant" to the loss amount under § 2B1.1.[5]

### E. The Sentencing Hearing and Judgment

Sentencing took place on May 5, 2026. Probation calculated a total offense level of 41, Criminal History Category I, and an advisory range of 324 to 405 months, capped by the 60-month statutory maximum. The Guidelines arithmetic rested on a base offense level of 6 under U.S.S.G. § 2B1.1(a)(2); a 26-level loss enhancement under § 2B1.1(b)(1)(N); 2 levels for sophisticated means under § 2B1.1(b)(10); 2 levels for financial-institution gross receipts under § 2B1.1(b)(17)(A); 4 levels for the officer or director securities-law enhancement under § 2B1.1(b)(20)(A); 4 levels for an organizer or leader role under § 3B1.1(a); and a 3-level reduction for acceptance of responsibility under § 3E1.1.

The Court imposed 60 months of imprisonment, three years of supervised release, restitution of $125,049,681.76 with interest waived, no fine, and a $100 special assessment. The Court recommended designation to FCI Otisville or FCI Fairton and directed surrender to the institution designated by the Bureau of Prisons. Judgment was entered May 6, 2026 (ECF No. 349), and the Court ordered Defendant continued on bail at the conclusion of the hearing.[6]

### F. The Notice of Appeal, Surrender-Extension Order, and Present Motion

Defendant filed a timely Notice of Appeal (ECF No. 352). The appeal challenges the sentencing methodology, the sentencing procedure, the MVRA restitution order, and the related § 3553(a) analysis. It does not challenge the conviction. On May 26, 2026, the Court granted Defendant's motion to extend his

---

[5]Letter from the United States, ECF No. 344, at 3-4 (Apr. 27, 2026) (Ex. O).

[6]ECF No. 348, at 1; Judgment, ECF No. 349 (May 6, 2026) (Ex. Q). The June 11, 2026 surrender date was fixed by the Court's later order, ECF No. 358.

voluntary surrender date, setting surrender for June 11, 2026, while expressly ordering that all other release conditions remain in full force and effect. That motion sought an extension to permit medical preparation, attention to family affairs, and orderly development of the appellate record; it did not seek reconsideration of the sentence.[7] Defendant now respectfully moves for release pending appeal.

## PRESERVATION OF APPELLATE RIGHTS UNDER THE PLEA AGREEMENT

The appellate-waiver provision of the Plea Agreement does not reach the issues Defendant will raise. The Schedule A waiver is conditional and narrow: it operates only if the sentencing court accepts the parties' factual stipulations, in which case both parties waive the right to appeal or collaterally attack the court's acceptance of those stipulations. "Otherwise, both parties reserve the right to file, oppose, or take any position in any appeal, collateral attack, or proceeding involving post-sentencing motions or writs." The appeal does not challenge Schedule A, the plea, or the conviction; it challenges unstipulated sentencing determinations, which the Agreement expressly preserved.

The Plea Agreement's reservation clause confirms the point: "to the extent that the parties do not stipulate to a particular fact or legal conclusion in this agreement, each reserves the right to argue how that fact or conclusion should affect the sentence." The plea colloquy reflects the same understanding. Defense counsel asked the Court to clarify that the parties had not reached any "agreements or stipulations with regard to the sentencing guidelines or the sentence," and the

---

[7]ECF No. 358 (Ex. T). The Court extended the surrender date to June 11, 2026 and ordered that all other conditions of release remain in full force and effect; Mr. Parmar has separately sought review of that order in the Third Circuit. The present Motion is distinct in kind: it seeks the statutory release determination under § 3143(b), not a further administrative adjournment.

Court responded, "So noted."[8] The Final Presentence Report likewise records that "[t]here is no agreed upon total guidelines offense level, an agreed upon sentencing range or stipulation, or any other agreed upon facts."[9]

Because the conditional Schedule A waiver does not reach the unstipulated sentencing issues raised in this appeal, and because the Agreement reserved all unstipulated sentencing positions, the appeal is properly before the Third Circuit.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 46(c) directs the Court to 18 U.S.C. § 3143 for release pending appeal. Under § 3143(b)(1), a sentenced defendant must show, by clear and convincing evidence, that he is not likely to flee or to pose a danger to the safety of any other person or the community; that the appeal is not for the purpose of delay; that the appeal raises a substantial question of law or fact; and that the substantial question, if resolved in his favor, is likely to result in reversal, a new trial, a sentence that does not include imprisonment, or a reduced sentence to a term less than the total of the time already served plus the expected duration of the appeal. If release is granted, Rule 38(b)(1) stays the sentence of imprisonment.

A "substantial question" is one that is "novel, which has not been decided by controlling precedent, or which is fairly doubtful," and which is "fairly debatable." *United States v. Smith,* 793 F.2d 85, 89 (3d Cir. 1986); see *United States v. Miller,* 753 F.2d 19, 23 (3d Cir. 1985) (courts deciding release pending appeal are "not to be put in the position of 'bookmakers' who trade on the probability of ultimate outcome"). The defendant need not demonstrate the likelihood of reversal or show that the district court's ruling was wrong. *Smith,* 793 F.2d at 89-90. A district court

---

[8]Plea Hr'g Tr. 13:17-21 (May 7, 2025) (Ex. B).
[9]Final PSR ¶ 61 (Ex. D).

8

may adhere to its ruling and still conclude that the question is substantial for appellate purposes; the two inquiries are distinct. Procedural and evidentiary issues may supply a substantial question. *United States v. Messerlian,* 793 F.2d 94, 96-98 (3d Cir. 1986).

The likely-result inquiry is not a prediction of appellate success. It asks whether, assuming the substantial question is decided in the defendant's favor, the result would likely be reversal, a new trial, a sentence that does not include imprisonment, or a reduced sentence less than the time already served plus the expected duration of the appeal. *See Miller,* 753 F.2d at 23-24. In conducting that inquiry, the court assumes the question will be resolved favorably and asks only about the consequence. The Third Circuit has emphasized the limited nature of the determination, explaining that it "expressly intimate[d] no views with respect to the merits" and decided "no more than" that the issues to be raised on appeal were "sufficiently substantial" under the statute as construed by *Miller* and *Smith. Messerlian, supra,* 793 F.2d at 97. The two lead issues here are legal and procedural in character, and such issues are particularly suited to appellate review.

## **ARGUMENT**

### I.    DEFENDANT HAS DEMONSTRATED BY CLEAR AND CONVINCING EVIDENCE THAT HE IS NOT LIKELY TO FLEE

#### A. The Documented No-Flight Record and the Court's Continued-Release Orders

The release record in this case is unusually compelling. For approximately eight years, Defendant has lived under conditions of Court supervision that have included extensive GPS monitoring, prolonged home detention, highly restrictive confinement, and ongoing oversight by Pretrial Services. During that entire period, he has appeared whenever required, has never failed to comply with a court

appearance, has never been the subject of a revocation motion, and has never attempted unauthorized international travel. Most importantly, the Court has had the opportunity to observe this compliance record firsthand over many years. The practical result is a lengthy and well-documented history demonstrating that supervised release has remained workable, enforceable, and effective in assuring Defendant's continued appearance before the Court.

Two facts deserve emphasis. First, before his plea, Defendant faced exposure far exceeding the 60-month statutory maximum he now faces, and he did not flee. The Government may suggest that the sentence alters his incentives, but the more probative evidence is his conduct under the heavier exposure that preceded the plea, when the incentive to flee was greatest and he remained. Second, the Court twice left supervised release in place: at sentencing, and again when it extended the surrender date to June 11, 2026 while ordering that every other condition remain in full force and effect. Those orders are not legal findings on this Motion, but they are practical evidence that the supervision regime has remained workable.

### B. The Voluntary 2018 International Return

One episode is especially probative. In early 2018, before his arrest and before any GPS device, passport surrender, or release condition existed, Defendant traveled internationally to the United Arab Emirates, India, and Thailand. Suspecting that he was under investigation, he wrote to the Government before traveling, provided his itinerary, stated that he was not fleeing, asked whether he could travel, and asked whether he would be arrested upon his return. He followed the itinerary and returned to the United States on schedule. He was arrested approximately two weeks later. Before GPS, before passport surrender, and before any release condition, while physically abroad and suspecting an investigation, he

10

disclosed his location to the Government and returned on schedule. That conduct is powerful practical evidence that Defendant is not likely to flee.

### C. Court-Authorized Device Removals and Equipment Malfunctions

On limited occasions the Court authorized temporary removal of Defendant's monitoring device for medically necessary examinations, and he returned each time for reinstallation. On occasion the older device malfunctioned, and Pretrial Services was aware of the gaps. Defendant did not flee during any authorized removal or any known monitoring gap. The chronology appears in Exhibit U. These facts answer any suggestion that his compliance depended solely on the device.

### D. The 2024 Monitoring Incidents in Context

Defendant does not minimize the Court's concerns regarding the 2024 monitoring incidents. Those incidents may justify tighter and more readily verifiable supervision, which he accepts. They do not establish likely flight when weighed against approximately eight years of supervision, no failure to appear, no revocation motion, no unauthorized international travel attempts, the voluntary 2018 return, and the stricter conditions proposed here. The proposed conditions remove any ambiguity going forward by prohibiting airport, seaport, or border presence absent prior approval and by requiring immediate surrender upon any adverse release ruling.

### E. Family, Community, and Residence Ties

Defendant's ties run to this District and the surrounding metropolitan area, not abroad. He maintains a residence in New Jersey and close family in the New York and New Jersey area, including an elderly father to whom he is devoted, and he participates in religious and community life. He proposes his brother-in-law, Salil Sharma, as third-party custodian, subject to the approval of the Court and

11

Pretrial Services. These ties reinforce, rather than undermine, the clear and convincing showing that he will appear.

## II.    DEFENDANT HAS DEMONSTRATED BY CLEAR AND CONVINCING EVIDENCE THAT HE IS NOT A DANGER TO THE SAFETY OF ANY OTHER PERSON OR THE COMMUNITY

Defendant's offense of conviction is a nonviolent conspiracy under 18 U.S.C. § 371. The record reflects no violence, no threats, no weapons, and no prohibited contact with any victim or witness across approximately eight years of supervision. The record identifies no new charge and no revocation motion alleging financial misconduct during supervision. The seriousness of the offense is reflected in the sentence; the present inquiry is whether conditions can reasonably assure appearance and safety during appellate review. The only danger meaningfully implicated by the offense conduct is economic, and the proposed conditions answer that risk directly.

Under court-supervised conditions, those restrictions disable the practical mechanisms of the offense: no investors, no fundraising, no securities-related business, no new entities, no signatory authority, no large transfers without approval, and full financial verification. Exhibit AA maps each category of risk to the specific condition that addresses it.

## III.    THE APPEAL IS NOT FOR THE PURPOSE OF DELAY

The appeal raises issues that were litigated and preserved before judgment, not assembled afterward to manufacture delay. Defendant filed a timely Notice of Appeal and brings this Motion promptly. The issues are catalogued in Exhibit Z, and the appeal seeks concrete relief: vacatur of the sentence and remand for resentencing under a corrected Guidelines framework, together with reconsideration of the restitution order. To remove any doubt about purpose, Defendant will accept expedited briefing and will seek no extension absent a true

12

medical emergency or an order of the Court of Appeals. The proposed order permits the Court to require advance notice of any extension request and provides for an eighteen-month status review if the appeal remains pending. The May 2026 surrender-extension motion was administrative in nature and does not bear on the purpose of the appeal.

## IV.    THE APPEAL RAISES SUBSTANTIAL QUESTIONS OF LAW AND FACT UNDER MILLER AND SMITH

The appeal raises substantial questions under the Third Circuit's governing release-pending-appeal framework. The question at this stage is not whether this Court should reconsider its sentencing ruling or whether it believes reversal is probable. Under *Miller,* the Court asks whether the appeal presents a significant question that is novel, not controlled by binding precedent, or fairly doubtful; under *Smith,* the question must be fairly debatable and meaningful. That standard permits the sentencing judge to remain confident in the sentence imposed while also concluding that a preserved sentencing question is substantial for purposes of temporary release pending appellate review. The appeal is narrow: it accepts the guilty plea, the conviction, and the judgment for present purposes, and it challenges only preserved, unstipulated sentencing determinations that are legal and procedural in character, record-based, and consequential to the sentencing framework.

The Court need not reconsider, retreat from, or qualify any sentencing ruling to conclude that the appeal presents a substantial question under 18 U.S.C. § 3143(b). The inquiry at this stage is distinct. It asks only whether the preserved issues are significant, fairly debatable, and consequential for appellate purposes, not whether the Court now believes it erred. Because these questions were fully litigated before judgment and remain genuinely contestable on the present record, the Court may maintain its sentencing view and still find them substantial.

The fact that these issues were fully litigated and ruled upon does not weaken substantiality; it strengthens it. These are preserved, fully developed appellate questions, not post-judgment inventions offered for delay. The record reflects repeated objections before judgment, a developed hearing request, a Government response framing the dispute as legal, and oral argument at sentencing. That is precisely the posture in which a district court may conclude that the questions are sufficiently debatable for appellate purposes while continuing to believe its own ruling was correct.

The appeal rises or falls on two preserved questions, both narrow and concrete: first, whether a positive actual-loss enhancement required transaction-date findings on value received; second, whether the sharply disputed valuation record required Rule 32 findings or a hearing before that enhancement was adopted. The remaining issues, addressed in Sections IV.G and V, reinforce consequence and remand materiality rather than standing as separate substantial questions. Each lead question carries the three markers the substantial-question inquiry rewards: each was preserved repeatedly, each is fact-sensitive and record-dependent, and each is consequential because it drove the Guidelines framework that anchored the sentence. The principal loss issue is legal, reviewed de novo; the Rule 32 and § 6A1.3 issue is procedural, with Rule 32 strictly enforced under *Electrodyne.* Both are appellate-type questions, not ordinary disagreement with the discretionary weight assigned to sentencing facts. This is not a broad substantive-reasonableness disagreement; it is a preserved challenge to the legal and procedural validity of the Guidelines framework that drove the sentence.

## A. The Actual-Loss Issue Is Preserved, Legal in Character, Fact-Sensitive, and Consequential

The first lead question is whether actual loss under U.S.S.G. § 2B1.1 could be calculated from the gross transaction amount without findings on the

transaction-date value the investors and lender received. That question is substantial because it carries each marker the substantial-question inquiry rewards. It was preserved repeatedly, it is legal in character, it is fact-sensitive on this record, and it is consequential because it produced the single largest enhancement in the calculation.

**Preserved.** The value-received question was litigated before judgment at every stage, in the defense and Government PSR objections, the Government's sentencing memorandum, Defendant's January 26, 2026 sentencing submission and the Government's February 4, 2026 response, Defendant's February 11, 2026 reply, his April 2, 2026 letter brief and sealed attachment requesting an evidentiary hearing and identifying witnesses, the Government's April 27, 2026 letter, and Defendant's May 4, 2026 letter, and it was argued at the May 5, 2026 sentencing. The issue is fully preserved for appellate review.

**Legal in character.** The Government bears the burden of proving loss by a preponderance of the evidence, and the defendant is not required to prove a negative. *See United States v. Kirschner,* 995 F.3d 327, 336-37 (3d Cir. 2021). For Guidelines purposes, loss means actual loss, and the calculation of actual loss requires a comparison of value given and value received under Application Note 3(E)(i). *See United States v. Banks,* 55 F.4th 246, 257-58 (3d Cir. 2022) ("Rather, we must decide whether, in the context of a sentence enhancement for basic economic offenses, the ordinary meaning of the word "loss" is the loss the victim actually suffered. We conclude it is.").

The appeal will present whether the Government established a positive Guidelines actual-loss figure under that framework when it advanced a theory under which transaction-date value-received evidence was treated as unnecessary. That is a methodological question of law, reviewed de novo, not a quarrel with the Court's weighing of facts. The appeal therefore presents more than a challenge to a

15

number; it presents a challenge to the rule used to derive that number from the record.

**Fact-sensitive.** The question is also record-dependent in a way well suited to appellate review. The methodology applies to a negotiated going-private acquisition of an operating company, on a record that includes recognized value and substantial recoveries. The interaction between that record and the value-received requirement is precisely the kind of fact-sensitive, fairly debatable question that *Miller* and *Smith* contemplate.

**Consequential.** The disputed loss figure produced the 26-level enhancement under U.S.S.G. § 2B1.1(b)(1)(N), the single largest driver of the advisory range. A favorable ruling on the value-received question would not be academic. It would reach the enhancement that dominated the calculation and, as shown in Argument V, would likely require resentencing under a materially different framework.

## B. The Government's April 27 Position Confirms That the Appeal Presents a Legal Methodology Question

The Government's own position is the clearest confirmation that the appeal presents a legal question rather than a routine factual quarrel. The Government relied on the gross transaction amount of $212,502,160.25, less amounts later recovered, and its April 27, 2026 letter characterized the loss dispute as "a legal dispute, not a factual one, which does not require any sort of factual findings," and described valuation evidence, including any "valuation of CHT at the time of the acquisition" and offers to purchase the business, as "completely irrelevant" to the loss amount under § 2B1.1.[10]

That characterization is powerful proof that the issue is appellate in character. The appeal does not merely challenge a fact estimate; it presents a preserved legal dispute about whether transaction-date findings on value received

---

[10]Letter from the United States, ECF No. 344, at 3-4 (Apr. 27, 2026) (Ex. O).

were legally necessary before any positive loss tier could be imposed. The Government treated transaction-date value as legally irrelevant, while the defense reads the Third Circuit's value-received line to require such findings before a gross transaction price can become actual loss. Whether the Government's legal premise can be reconciled with the Third Circuit's actual-loss cases is a question of law for the Court of Appeals. Legal-methodology disputes of this kind are especially suited for appellate review and more readily qualify as fairly debatable than routine disagreements with fact estimates. The Government's framing of the dispute as purely legal is precisely why the issue is substantial under *Miller* and *Smith.*

### C. The Sentencing Transcript Confirms That the Issue Is Fairly Debatable Without Requiring the Court to Concede Error

The certified transcript itself confirms why the issue is substantial, and it does so in terms that permit the Court to find the question debatable without revisiting its ruling. Three observations are particularly probative.

First, the Court recognized that the loss inquiry is fact-sensitive, asking defense counsel to "agree with me that loss amount is fact sensitive" and noting that "that's what all the cases make clear."[11] Second, the Court observed that the precise sequence presented here has no directly controlling securities-fraud precedent, explaining that there are "no cases that deal with this kind of securities fraud" where a company entered restructuring within months of the fraud being detected, never emerged, and the investors lost much or all of their assets.[12] Third, the Court acknowledged, while resolving the issue on the basis it found adequate, that the specific transaction-date valuation evidence defense counsel described was

---

[11]Sentencing Tr. 9:5-6 (Ex. C).
[12]Sentencing Tr. 13:13-17 (Ex. C).

not in the record, observing that "Revenue is one way to value a company" while recognizing the limits of the record on precise valuation.[13]

Those observations are not admissions of error, and Defendant does not characterize them as error. They reflect a fact-sensitive record without a directly controlling precedent. Both attributes are quintessential markers of a fairly debatable question under *Miller* and *Smith.* The point is reinforced by the way the Court engaged the governing authority. The Court addressed *Nathan* and *Nagle* directly and distinguished them as fraudulently induced government-contract cases, while recognizing that Application Note 3(E)(i) directs a credit for the fair market value of what was provided.[14] That the Court engaged and distinguished the value-received line of cases, rather than treating it as plainly inapplicable, confirms that the question is genuinely contested rather than frivolous. The sentencing record also recognized substantial value and recoveries: the Court noted that investors received bankruptcy distributions that reduced the restitution figure from approximately $212 million to approximately $124 million, while carefully distinguishing restitution from Guidelines loss.[15] If value and recoveries existed for restitution purposes, reasonable jurists could debate whether the Guidelines loss calculation could mechanically equate the entire purchase price with actual loss without findings on value received.

---

[13]Sentencing Tr. 14:3-5 (Ex. C).

[14]Sentencing Tr. 25:6-23 (Ex. C).

[15]Sentencing Tr. 12:14-23 (Ex. C). The defense does not contend that the restitution calculation establishes the correct Guidelines loss; the point is narrower, that the record itself recognized value and recoveries, so reasonable jurists could debate whether the Guidelines loss could equate the entire purchase price with actual loss without evidence of value received.

18

**D. Third Circuit Actual-Loss Law Supports, or at Minimum Fairly Debatably Requires, a Value-Received Inquiry**

The legal premise underlying the appeal is grounded in a settled line of Third Circuit authority that requires an offset for value received. As the Court explained in *United States v. Yeaman,* there is a "causation requirement when determining actual loss" meaning the loss must be caused by the defendant and not third parties or intervening circumstances, and "[w]hen a defendant gives something of value in exchange for what was fraudulently taken, the victim's loss is the difference between the value of what he or she gave up and the value received in exchange." 194 F.3d 442, 457 (3d Cir. 1999). *United States v. Nathan* applied the same principle, holding that "[t]he principles enunciated in *Dickler* and *Kopp* require us to offset the contract price by the actual value of the components provided." 188 F.3d 190, 209-10 (3d Cir. 1999).

> We have repeatedly emphasized that the amount of loss in a fraud case, unlike that in a theft case, often depends on the actual value received by the defrauded victim. *See United States v. Dickler,* 64 F.3d 818, 825 (3d Cir.1995). Thus, when a defendant obtains a secured loan by means of fraudulent representations, the amount of loss is the difference between what the victim paid and the value of the security, because only that amount was actually lost. *See United States v. Kopp,* 951 F.2d 521, 528–31 (3d Cir.1991). In a fraudulent procurement case, the principles enunciated in *Dickler* and *Kopp* require us to offset the contract price by the actual value of the components provided in order to determine the amount                                    of                                    loss

> *Nathan*, at 210.

*See, United States v. Dickler,* 64 F.3d 818, 825-26 (3d Cir. 1995); *United States v. Kopp,* 951 F.2d 521, 528-31, 536 (3d Cir. 1991), as amended (Feb. 18, 1992).

In *United States v. Nagle,* 803 F.3d 167 (3d Cir. 2015*)* the Court held that the sentencing court must credit the fair market value of what was actually provided, and that a loss-calculation error is not rendered harmless unless it is clear

19

that the error did not affect the court's selection of the sentence imposed, a standard not met there even though the court had offered an alternative ten-level departure. 803 F.3d 167, 179-84 (3d Cir. 2015). The Third Circuit reaffirmed the offset framework in *United States v. Kousisis,* 66 F.4th 406, 424-25, 436-37 (3d Cir. 2023), aff'd on other grounds, 145 S. Ct. 1382 (2025), explaining that loss is calculated by taking the full face value of the contract and deducting the fair market value of the services rendered. The loss-methodology question is thus grounded in cited Third Circuit authority, reviewed de novo, and concerns the operative concept that drove the 26-level enhancement. The appeal will present whether that line required findings on transaction-date value received before the full purchase price could be treated as actual loss.

The valuation issue was concrete, not abstract. The defense identified record sources bearing on transaction-date value, including buyer-side diligence and approval materials, Trustee-retained adviser materials, the Chapter 11 over Chapter 7 reorganization election made by the buyer after fraud disclosure, the bankruptcy-estate recoveries supervised by the Trustee, CHT's operating subsidiaries, employees, offices, customers, and revenue, and the post-disclosure GSS Infotech committed offer.[16] The Motion does not ask the Court to accept that evidence now. It identifies the evidence only to show that the value-received issue was real, record-based, and at least fairly debatable under *Miller* and *Smith.*

### E. Georgiou, Kirschner, and Scarfo Do Not Foreclose the Question

The authorities on which the Government relied do not foreclose the appellate question. *United States v. Georgiou,* 777 F.3d 125, 130-32, 146-47 (3d Cir. 2015), arose from market-manipulation conduct, not the negotiated going-

---

[16]The valuation record is consolidated in the Valuation Evidence Roadmap, Exhibit Y. It is identified here only to show that the value-received issue was concrete, record-based, and fairly debatable, not to relitigate it on this Motion.

private acquisition of an operating company, and it did not address the transaction-date value-received offset at issue here. *United States v. Kirschner* does not eliminate the Government's burden; while the burden of production may shift after the Government presents prima facie evidence of a loss figure, the Government always bears the ultimate burden of proving by a preponderance of the evidence the facts that support a sentencing enhancement, and the defendant is not required to prove a negative to avoid it. *See* 995 F.3d at 336-37. Whether the Government's submission of price paid satisfied the prima-facie threshold for the operative concept of actual loss, which includes a value-received variable, is itself fairly debatable appellate question.

*United States v. Scarfo,* 41 F.4th 136, 156-57, 212-14 (3d Cir. 2022), likewise does not control. It is distinguishable on at least four grounds. First, *Scarfo* involved the unlawful takeover and looting of an operating company, not the negotiated going-private acquisition of an operating healthcare-services business. Second, the valuation theory the defense advanced there relied on the very fraudulent filings at issue, while Defendant's preserved value-received framework relies on independent, buyer-side and Trustee-side record evidence, the GSS Infotech proposal, the Chapter 11 election, and estate recoveries. Third, the diminution-in-value methodology used there is consistent with actual-loss analysis rather than contrary to it. Fourth, *Scarfo* did not hold that transaction-date value-received findings are unnecessary where the record contains independent evidence of going-concern value. Whether *Georgiou, Scarfo,* or the value-received line governs this record is precisely the kind of fairly debatable question that *Miller* and *Smith* contemplate.

21

**F. The Rule 32 and Section 6A1.3 Hearing Issue Is Independently Substantial**

The second lead question is procedural, and it stands on its own. Federal Rule of Criminal Procedure 32(i)(3)(B) requires the sentencing court, for any disputed portion of the presentence report or other controverted matter, to "rule on the dispute or determine that a ruling is unnecessary." U.S.S.G. § 6A1.3(a) provides that "[w]hen any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor." The Third Circuit enforces Rule 32 strictly: the rule is "strictly enforced and failure to comply with it is grounds for vacating the sentence." *United States v. Electrodyne Sys. Corp.,* 147 F.3d 250, 255 (3d Cir. 1998); *see United States v. Grier,* 475 F.3d 556, 568-70 (3d Cir. 2007) (en banc). Procedural and evidentiary issues of this kind may supply a substantial question warranting release pending appeal. *United States v. Messerlian,* 793 F.2d 94, 96-98 (3d Cir. 1986).

Defendant did not seek to retry guilt. The requested hearing was limited to sentencing variables, not guilt, liability, or admitted offense conduct. He sought a limited hearing on transaction-date value received and on whether later bankruptcy events could substitute for that finding, and he identified specific witnesses bearing on valuation, causation, and value received, including Mr. Chu and Mr. DiBlasi on the buyer and diligence side, together with the additional witnesses and categories of evidence identified in his sealed submission.[17] The Government opposed any hearing, taking the position that the dispute required no factual findings at all. Under § 6A1.3, a fact-sensitive dispute about a sentencing factor of central importance is the kind of issue that ordinarily warrants an opportunity to present

---

[17]Letter Brief, ECF No. 341 (Apr. 2, 2026) (Ex. N). The defense identifies the hearing request only to frame the preserved appellate issue, not to reargue it here.

information, and whether the denial of a hearing on such a record fell within the abuse-of-discretion standard is itself fairly debatable.

This procedural question is independently substantial. Even if the Court remains persuaded that the Government's loss position was ultimately correct, a separate appellate question remains: whether a sentencing factor of dispositive importance, disputed on identified valuation evidence and identified witness testimony, could be resolved without additional findings or a hearing. That question stands on its own, regardless of the answer to the loss methodology, and reasonable jurists could debate it. It does not require the Court to reconsider the bottom-line loss ruling today; it asks only whether the process by which the central sentencing factor was resolved presents a fairly debatable appellate issue.

### G. MVRA Causation, Harmless Error, and the Alternative-Loss Observations Reinforce Materiality

**MVRA proximate causation.** Restitution under the MVRA must be limited to losses directly and proximately caused by the offense. *See* 18 U.S.C. § 3663A(a)(2); *United States v. Fallon,* 470 F.3d 542, 548-50 (3d Cir. 2006) (restitution should not be ordered for a loss that "would have occurred regardless of the defendant's conduct"; "limitless but for causation is not" enough where the conduct is "too far removed, either factually or temporally, from the loss"). *See United States v. Fallon*, 470 F.3d 542, 548-50 (3d Cir. 2006); see also *United States v. Quillen*, 335 F.3d 219, 222 (3d Cir. 2003); *Gov't of V.I. v. Davis*, 43 F.3d 41, 45 (3d Cir. 1994). The bankruptcy here occurred more than a year after the merger and involved intervening events, including the post-closing management period, bankruptcy administration, Trustee asset-disposition decisions, and the GSS Infotech proposal. The appeal will present whether the restitution order rested on proximate causation or on but-for causation alone.

23

**Statutory-cap harmless error.** The 60-month statutory maximum does not automatically cure a Guidelines error. The Guidelines remain "not only the starting point for most federal sentencing proceedings but also the lodestar," and "in most cases a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome." *Molina-Martinez v. United States,* 578 U.S. 189, 198-201 (2016); *see United States v. Syme,* 276 F.3d 131, 158-59 (3d Cir. 2002); *Nagle,* 803 F.3d at 183-84. The harmless-error question is developed in Argument V, because it bears most directly on the likely-result prong.

**The alternative loss observations rest on the same methodology.** At sentencing the Court offered alternative observations: that an enhancement of "at least 10" would yield an offense level of 25, and that crediting bankruptcy recoveries would still yield a level 24.[18] Each alternative assumes a positive actual-loss figure that the appeal contends required transaction-date findings after the value-received offset. They therefore reinforce, rather than resolve, the substantial question. Argument V.C addresses the alternatives in full and explains why they do not independently defeat § 3143(b)(1)(B).

For these reasons, the appeal raises substantial questions of law and fact within the meaning of § 3143(b), *Miller,* and *Smith.* The Court can make that finding without retreating from the sentence imposed. It need only conclude that the preserved Guidelines and Rule 32 issues are significant, fairly debatable, and consequential enough to warrant appellate review before Defendant is required to surrender.

---

[18]Sentencing Tr. 26:8-16, 26:17-21 (Ex. C).

## V.    A FAVORABLE RULING ON THE PRINCIPAL LOSS ISSUE IS LIKELY TO PRODUCE A QUALIFYING RESULT UNDER § 3143(b)(1)(B)

The "likely to result" inquiry under 18 U.S.C. § 3143(b)(1)(B) is a materiality inquiry, not a prediction that Defendant will prevail on appeal. Once the Court identifies a substantial question, the question becomes whether a favorable appellate ruling would likely produce one of the qualifying statutory consequences, including a sentence that does not include imprisonment or a reduced sentence to a term less than the total of the time already served plus the expected duration of the appeal process. As *Miller* explains, the statute cannot reasonably be construed to require the district court to predict the probability of reversal; it asks whether the substantial issue is sufficiently important to the ultimate disposition. *Miller,* 753 F.2d at 23-24.

### A. The Court's Sentencing Posture Anchors Materiality

The sentencing record supplies a concrete materiality anchor. The 26-level loss enhancement drove the calculation, producing a Total Offense Level of 41 and an advisory range of 324 to 405 months, capped at 60, and the Court stated that it imposed sentence "at the highest end of the range as possible" consistent with the statutory cap.[19] Where the sentence was anchored at the top of an advisory range driven by the contested loss enhancement, *Molina-Martinez's* recognition that the Guidelines are the "lodestar" applies with particular force. 578 U.S. at 198-201.

The transcript confirms that the Guidelines anchored the sentencing decision. The Court observed that Defendant was "not getting a sentence anywhere near the guideline range which, of course, because there's a statutory maximum," recognizing on the record that the statutory maximum constrained, rather than

---

[19]Sentencing Tr. 77:18-19 (Ex. C).

replaced, the adopted Guidelines framework.[20] The 60-month statutory maximum is the Government's strongest response, but it is not dispositive, because it answers the wrong question. The question is not whether the Court had authority to impose 60 months, which it plainly did. The question is whether the present record shows that the Court would still have chosen that same sentence after beginning from a materially lower, lawfully calculated advisory range and completing the full sentencing process from that corrected benchmark. The Third Circuit's harmless-error cases confirm why the statutory maximum does not end the inquiry: in the Guidelines context, an erroneous calculation is harmless only where the record demonstrates a high probability that the sentencing judge would have imposed the same sentence under a correct Guidelines range, meaning that the Guidelines range did not affect the sentence actually imposed.[21] That is the rare case, and the proponent of preserving the sentence bears the burden of establishing it.

---

[20]Sentencing Tr. 22:5-7 (Ex. C); see *Peugh v. United States*, 569 U.S. 530, 541-42, 549 (2013) (the Guidelines "anchor" sentencing, remain "the framework for sentencing," and "anchor both the district court's discretion and the appellate review process"); *Gall v. United States*, 552 U.S. 38, 49-51 (2007); *United States v. Tomko*, 562 F.3d 558, 567-68 (3d Cir. 2009) (en banc).

[21]*United States v. Raia*, 993 F.3d 185, 195-96 (3d Cir. 2021) (quoting *United States v. Langford*, 516 F.3d 205, 216, 219 (3d Cir. 2008)) (a Guidelines error is harmless only where the record shows a "high probability" that the same sentence would have been imposed under a correct range, and describing this as the "rare case"); (overlap between the incorrect and correct ranges does not by itself render an error harmless; the record must show that the range "did not affect the sentence actually imposed"). *Langford's* reference to harmless cases in which a sentence was "dictated… by a statutory minimum or maximum" describes a different category. *Id*. at 216. In that category, an independent statutory provision or another correctly calculated Guideline fixed the sentence regardless of the erroneous calculation. This record is different: the statutory maximum capped an allegedly inflated 324-to-405-month range, and if the challenged loss enhancement falls, the corrected range would no longer be capped at 60 months, so the statutory maximum would no longer dictate the sentencing framework.

See, *United States v. Raia*, 993 F.3d 185, 195-96 (3d Cir. 2021) (quoting *United States v. Langford*, 516 F.3d 205, 216, 219 (3d Cir. 2008)) (a Guidelines error is harmless only where the record shows a "high probability" that the same sentence would have been imposed under a correct range, and describing this as the "rare case"); (overlap between the incorrect and correct ranges does not by itself render an error harmless; the record must show that the range "did not affect the sentence actually imposed"). *Langford's* reference to harmless cases in which a sentence was "dictated… by a statutory minimum or maximum" describes a different category. *Id*. at 216. In that category, an independent statutory provision or another correctly calculated Guideline fixed the sentence regardless of the erroneous calculation.

The record *sub judice* is different: the statutory maximum capped an allegedly inflated 324-to-405-month range, and if the challenged loss enhancement falls, the corrected range would no longer be capped at 60 months, so the statutory maximum would no longer dictate the sentencing framework. On this record, the 60-month sentence was framework-driven, not independently selected, and a corrected framework is therefore likely to matter.

## B. This Is Not an Independent Same-Sentence Case

What is absent from the sentencing record is as important as what is present. The Court did not announce that it would impose the same 60-month sentence regardless of any Guidelines error. It did not pronounce an alternative variance sentence untethered to the adopted range. And it did not say that any loss-calculation error would be immaterial to the sentencing outcome. Instead, the Court used the adopted range as the benchmark, recognized that the statutory maximum constrained the available sentence, and selected the highest sentence available within that constrained framework. This is therefore not an independent same-sentence case. The significance of that absence is heightened by Third

27

Circuit law: even an express statement that the same sentence would be imposed under a different range does not render a Guidelines error harmless unless the alternative sentence is itself the product of the full three-step sentencing process, with a correctly determined alternative range and a stated justification for any departure or variance from it. See *United States v. Smalley*, 517 F.3d 208, 214-16 (3d Cir. 2008) (a statement that the same sentence would be imposed does not render a Guidelines error harmless unless the alternative sentence is itself procedurally valid, with a correctly determined alternative range and an explanation for any departure or variance); *United States v. Wright*, 642 F.3d 148, 153-54 & n.6 (3d Cir. 2011) (vacating despite the district court's express statement that it would have imposed the same sentence, because the alternative was not the product of the three-step process). Accord *Raia*, 993 F.3d at 196. Here the record contains no such alternative analysis, and indeed no same-sentence statement at all.

The Government will point to the Court's observation that, on its view of the evidence, the estimated actual loss was "significant enough to have no impact on defendant's sentence." That observation does not convert this into an independent same-sentence case. It was made as part of the loss-tier analysis on pages 25 and 26 of the transcript, and it rested on the same disputed premise: that a positive actual-loss figure could be selected without transaction-date findings on value received. The Court did not pronounce a separate variance under 18 U.S.C. § 3553(a) that would stand independent of the Guidelines calculation; it explained why, on its loss analysis, the calculation reached the cap. If the premise of that loss analysis is set aside on appeal, the observation that loss had "no impact" rests on the very methodology under review and does not independently insulate the sentence.

The sentencing record confirms that the sentence was imposed within a capped Guidelines framework, not as an independently selected variance

untethered to the Guidelines. The Court adopted the offense level that produced a 324-to-405-month pre-cap range, recognized that the statutory maximum prevented a sentence anywhere near that range, and imposed the 60-month statutory maximum. The Statement of Reasons accompanying the Judgment is consistent with that reading: the Court adopted the presentence report's Guidelines calculation, identified the sentence as a within-Guidelines sentence after application of the statutory cap, and recorded no independent ground under 18 U.S.C. § 3553(a) for imposing the same term apart from that framework.[22] The record contains no statement that the same sentence would have been imposed under a materially lower Guidelines range. If the Guidelines framework changes materially, the sentencing analysis changes materially.

### C. The Alternative +10 and +24 Observations Do Not Independently Defeat Section 3143(b)(1)(B)

The principal anticipated objection is that the Court's alternative loss observations independently sustain the 60-month sentence. They do not defeat release under § 3143(b)(1)(B), for three reasons.

First, the alternative +10 observation still depends on a positive actual-loss amount. It was conditional in form, expressed as the enhancement that "would need to be" at least ten levels to reach the stated range, and it did not answer the antecedent legal question whether transaction-date value received had to be determined before any positive loss tier could be selected.[23] If the Third Circuit agrees that the Government did not prove positive actual loss after the required offset, the +10 tier cannot stand as an independent methodology.

---

[22]Statement of Reasons, ECF No. 349-1 (May 6, 2026) (filed under seal) (Ex. Q-1). Filed under seal. Relied on only to confirm that the sentence was imposed within the Guidelines framework.

[23]Sentencing Tr. 26:8-16 (Ex. C).

Second, the +24 bankruptcy-recovery alternative rests on the same disputed premise. It uses later bankruptcy distributions or recoveries as a proxy for actual loss, while the appeal contends that actual loss required transaction-date value-received findings and proximate-causation analysis.[24] If that premise is rejected on appeal, the bankruptcy-recovery alternative must be reconsidered as well.

Third, neither alternative was accompanied by an independent same-sentence ruling stating that 60 months would be imposed regardless of any loss-calculation error. Under *Nagle* and *Molina-Martinez,* an alternative rationale does not automatically render a Guidelines error harmless where the disputed loss figure likely affected the sentence actually imposed. 803 F.3d at 183-84; 578 U.S. at 198-201. The parallel is close: in *Nagle,* an alternative ten-level departure did not make the loss miscalculation harmless, because the record did not make clear that the error had no effect on the sentence the court selected. So too here. The alternative observations are one methodological dispute expressed in more than one form, not independent paths to the cap. Because the Court adopted a range above the statutory cap and selected the highest available sentence under that framework, a favorable appellate ruling on loss would likely matter.

### D. Exhibit V Shows Clean Qualifying Paths and Sensitivity Paths

Exhibit V sets out the detailed scenario analysis, which shows that a favorable ruling would likely produce qualifying relief through at least three concrete routes. First, on the best legal outcome, if the Government failed to prove a positive actual-loss amount, or if value received equaled or exceeded the price paid, the loss enhancement falls out, the Total Offense Level drops to 15, and the advisory range becomes 18 to 24 months, materially different from the adopted 324-to-405-month range, capped at 60. Second, on a procedural outcome, a remand

---

[24]Sentencing Tr. 26:17-21 (Ex. C).

for Rule 32 findings or a hearing would reopen the calculation. Third, on an intermediate outcome, a lower positive loss tier after proper methodology would still reduce the range. Each route is custody-relevant because the Court never announced an identical sentence independent of the Guidelines, and on the clean qualifying paths the corrected range would likely satisfy § 3143(b)(1)(B)(iv), particularly with expedited briefing and an eighteen-month status review.

| Scenario | Offense Level / Range | § 3143(b)(1)(B) Significance |
|---|---|---|
| Adopted +26 loss (baseline) | 41 / 324-405 mos., capped at 60 | Sentence as imposed |
| Value received equals or exceeds price paid | 15 / 18-24 mos. | Clean qualifying path |
| Government failed to prove positive actual loss | 15 / 18-24 mos. | Clean qualifying path |
| No proven positive-loss tier | 15 / 18-24 mos. | Clean qualifying path |
| Remand for Rule 32 findings or hearing | Reopened | Procedural qualifying path |
| Lower positive loss tier after proper offset | As recalculated | Sensitivity path; materiality only |
| Court's +10 alternative | 25 / 57-71 mos., capped at 60 | Not independent of challenged methodology |
| Court's +24 bankruptcy-recovery alternative | 24 / 262-373 mos., capped at 60 | Depends on the same disputed premise |

The intermediate scenarios are sensitivity analysis, included to show that the loss methodology affects the framework across multiple outcomes; the clean qualifying paths do not depend on them.

### E.  A Remand Would Not Be Ministerial

A remand here would not be technical, clerical, or ministerial. The challenged enhancement was the dominant driver of the adopted advisory

framework, and the related Rule 32 and hearing issue concerns the process by which that enhancement was imposed. A favorable ruling would require the Court to begin again from a materially different advisory range, to resolve any factual disputes the Court of Appeals deems relevant, and to reassess the appropriate sentence under § 3553(a) from that corrected benchmark. That is enough under § 3143(b)(1)(B), where the challenged issue materially shaped the sentence actually imposed. The statute does not require certainty about the exact sentence on remand; it requires only a realistic showing that a favorable ruling would likely produce resentencing under a materially different framework and a qualifying custody consequence.

## F. The Statutory Benchmark, Expedited Appeal, and Eighteen-Month Status Review Make the Relief Bounded

Section 3143(b)(1)(B)(iv) measures the corrected sentence against the time already served plus the expected duration of the appeal. Rather than ask the Court to rely on a precise appellate-duration estimate, Defendant accepts expedited briefing, will seek no extension absent a true medical emergency or an order of the Court of Appeals, and proposes an eighteen-month status review if the appeal remains pending. That structure prevents open-ended release: at the review point, or earlier if circumstances warrant, the Court may require a status report, hold a release-status conference, modify conditions, or set a surrender date. On the clean qualifying scenarios in Exhibit V, a corrected range of 18 to 24 months would likely satisfy § 3143(b)(1)(B)(iv), particularly given Defendant's commitment to expedited briefing and the proposed eighteen-month status-review mechanism. If the appeal remains pending at that point, the Court retains full authority to reassess whether continued release remains appropriate.

### G. The Court's Post-Sentencing Release Decisions Support Preserving the Status Quo

The Court's own post-sentencing supervision decisions provide practical support for preserving stricter, court-controlled release. The Court continued release at sentencing and later extended the surrender date to June 11, 2026 while leaving every other condition in full force and effect. Those decisions do not decide the statutory question, and Defendant recognizes that § 3143(b) requires independent findings. They are, however, practical evidence that supervised release has remained workable in this Court's own administration of the case, and that preserving that supervised status quo during appellate review is a measured course where the preserved issues could materially alter the custody framework.

### H. Third Circuit and District-Court Authority Confirms That a Sentence-Altering Loss Issue Can Support Release Pending Appeal

This is not a novel use of § 3143(b). The Third Circuit's own fraud-loss jurisprudence supplies the closest analogue. In *United States v. Kopp*, 951 F.2d 521, 525-26, 536 (3d Cir. 1991), as amended (Feb. 18, 1992)*,* the challenged loss ruling treated the full amount fraudulently obtained as the loss and drove the advisory range from 2-to-8 months to 30-to-37 months; the district court, sitting in this District, found the appeal substantial and granted bail pending appeal, and the Third Circuit likewise granted bail pending its decision before vacating the sentence and remanding for resentencing on the loss calculation.

The parallel is direct: a preserved, fairly debatable loss-methodology issue that materially altered the Guidelines framework supported release while the Court of Appeals reviewed it. In *United States v. Antico, 123 F. Supp. 2d 285, 289-90 (E.D. Pa. 2000),* the court granted release pending appeal where a contested fraud-loss issue could materially reduce the applicable range, explaining that the court need not predict the sentence on remand, only determine that a favorable appellate ruling could produce a qualifying sentencing result. These persuasive district-court

33

decisions confirm only that a preserved, fairly debatable loss-calculation issue may satisfy § 3143(b) when it materially alters the Guidelines framework; neither controls the result here or predicts the merits.

These authorities do not predict the merits here and do not control the result. They confirm the point that matters at this juncture: when a preserved loss issue materially alters the Guidelines framework, a favorable ruling can satisfy § 3143(b)(1)(B) even though the court does not predict the exact sentence on remand. *United States v. Fattah,* 224 F. Supp. 3d 443, 447-49 (E.D. Pa. 2016), is distinguishable because it involved multiple counts and a materially different likely-result posture; here, Defendant stands convicted on a single count and the challenged loss enhancement drove the Guidelines framework for that count.

Finally, if a remand occurs, the resentencing court may consider Defendant's post-sentencing conduct, including his continued compliance during the appeal. *See Pepper v. United States,* 562 U.S. 476, 490-93 (2011). The compliance record set out in Argument I would be available to inform a corrected sentence. For purposes of § 3143(b)(1)(B), the materiality showing is strong: a favorable ruling on the principal loss issue would likely require resentencing under a materially lower Guidelines framework and, on the clean qualifying paths, a reduced sentence less than time served plus the expected duration of the appeal. The Court may therefore grant release pending appeal while maintaining full control through stricter, verifiable conditions and a defined status-review mechanism.

## VI.    PROPOSED CONDITIONS OF RELEASE

The inquiry under § 3143(b)(1)(A) turns on whether the record and the available conditions can reasonably assure appearance and the safety of the community. *Cf.* 18 U.S.C. § 3142(b), (c). Defendant proposes the following Tier 1 conditions, which are stricter than those that have governed him to date and more

34

readily verifiable by Pretrial Services. Supplementary Tier 2 conditions appear in Exhibit AA, and proposed forms of order appear in Exhibit X.

1. Continuous GPS monitoring.

2. Home confinement at an approved residence.

3. Travel limited to the District of New Jersey, visits with counsel, and medical appointments pre-approved by Pretrial Services.

4. Surrender of his passport and all travel documents.

5. A representation that he holds no other travel documents and will not apply for any new travel document, including an Overseas Citizen of India card.

6. A third-party custodian, Salil Sharma, subject to the approval of the Court and Pretrial Services.

7. Monthly financial disclosure to Pretrial Services.

8. No transfer exceeding $5,000 without prior written approval.

9. No investor solicitation, fundraising, lending, or securities-related business activity.

10. No formation of any new business entity.

11. No role as officer, director, manager, member, partner, controlling person, or signatory of any new entity.

12. No contact with victims, witnesses, lenders, CC Capital representatives, bankruptcy-estate representatives, or co-defendants, except through counsel or as otherwise authorized by the Court.

13. No airport, seaport, or border presence absent prior approval.

14. Self-surrender within twenty-four hours of any Third Circuit order denying release.

15. Immediate surrender upon any District Court order terminating release.

16. An eighteen-month status review if the appeal remains pending.

Taken together, these conditions disable the mechanisms of the offense and remove any practical avenue for economic harm. Exhibit AA maps each category of

risk, flight, economic danger, concealment, witness or victim contact, and open-ended release, to the specific condition that addresses it.

## VII.    ALTERNATIVE RELIEF: TEMPORARY STAY OF SURRENDER

If the Court is not prepared to grant release, Defendant respectfully requests, in descending order: first, a temporary stay of surrender pending the Court's decision on this Motion; and second, if release is denied, a fourteen-day stay of surrender sufficient to permit an orderly application to the Third Circuit under Federal Rule of Appellate Procedure 9(b). *See* Fed. R. App. P. 9(b); Fed. R. Crim. P. 38(b)(1). A short stay is procedural and modest; it preserves orderly Rule 9(b) review and requires no ruling on the merits.

## CONCLUSION

For these reasons, Defendant respectfully requests release pending appeal under 18 U.S.C. § 3143(b) and Federal Rule of Criminal Procedure 46(c), subject to the Tier 1 conditions set out above and any additional conditions from Exhibit AA the Court deems appropriate. The Motion accepts the judgment and sentence as entered for present purposes and asks only for the statutory release determination while the Third Circuit reviews preserved sentencing issues. The Court may maintain its sentencing view and still conclude that these preserved questions are fairly debatable for appellate purposes.

If the Court denies release, Defendant respectfully requests a brief stay of surrender sufficient to permit orderly review under Federal Rule of Appellate Procedure 9(b). The requested relief is stricter, verifiable, bounded, and court-controlled. Proposed forms of order are submitted as Exhibit X.

Respectfully submitted,


/s/ *Timothy P. Neumann, Esq.*
Timothy P. Neumann, Esq.
[NJ Bar ID # 005081973]
Broege, Neumann, Fischer & Shaver, LLC
25 Abe Voorhees Drive
Manasquan, NJ 08736
Email: Timothy.neumann25@gmail.com
Cell: (732) 581-7142
*Counsel for Defendant Parmjit Parmar*

37