# BROEGE, NEUMANN, FISCHER & SHAVER, LLC
## ATTORNEYS AT LAW

TIMOTHY P. NEUMANN
PETER J. BROEGE
FRANK J. FISCHER
DAVID E. SHAVER
GEOFFREY P. NEUMANN
…………………
CARL BROEGE
  *of counsel*

25 ABE VOORHEES DRIVE
MANASQUAN, NEW JERSEY 08736
PHONE: (732) 223-8484
FAX: (732) 223-2416
EMAIL: TIMOTHY.NEUMANN25@GMAIL.COM

June 2, 2026

**BY ECF**

The Honorable Madeline Cox Arleo
United States District Judge
Martin Luther King, Jr. Federal Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

> **Re: United States v. Parmar, Crim. No. 18-735 (MCA)**
> **Defendant's Response to the Government's June 2, 2026 Letter (ECF No. 363)**

Dear Judge Arleo:

On behalf of Mr. Parmar, I write in response to the Government's June 2, 2026 letter (ECF No. 363), which asks the Court to supplement its May 26, 2026 Order (the "May 26 Order," ECF No. 358) with a statement of reasons under Third Circuit L.A.R. 3.1. Mr. Parmar does not question the Court's broad discretion over voluntary surrender dates. His concern is narrower: the Government's submission is a post-order and worse, post-appeal filing unless stricken injects into the record on appeal facts and argument, drawn substantially from events occurring in 2022 through 2024, that had not been presented to the Court when the May 26 Order issued. Had the Government simply requested the issuance of a statement of reasons, I would have voiced no concerns. The procedure for the Court issuing reasons does not invite or countenance input from counsel. It is for the Court alone to articulate the reasons for its decision based upon the record and arguments submitted by the parties prior to its decision.

Because the Government is now conspicuously attempting to supplement the record after the fact, I am constrained to respond. The Government mischaracterizes the Defendant's position as complaining. "And because Parmar complains that the Government cited no reasons for opposing his request, . . ." (ECF No. 363). The Defendant was not complaining; he was stating a fact. Now the Government is trying to do what it could have done previously but should not be doing now; adding facts and argument to the record which should not at this juncture be considered by either Your Honor or the Third Circuit. The Defendant therefore objects to everything in the Government's letter other than the simple request that the Court issue a statement of reasons.

A notice of appeal generally divests the district court of control over the matters involved in the appeal, leaving only limited residual authority to act in aid of appellate review. *See Venen v. Sweet*, 758 F.2d 117, 121, fn. 2 (3d Cir. 1985). L.A.R. 3.1 fits within that limited authority

1

because it permits the trial judge to amplify a prior ruling; it does not permit a party to build a new factual record after the order and after the appeal. *See United States v. Scarfo*, 263 F.3d 80, 88-90 (3d Cir. 2001). The record on appeal may be corrected to reflect what occurred below, but it may not be enlarged with material that was not before the District Court when the challenged decision was made. *See Fassett v. Delta Kappa Epsilon (N.Y.)*, 807 F.2d 1150, 1165 (3d Cir. 1986) ("The only proper function of a court of appeals is to review the decision below on the basis of the record that was before the district court.").

Four points argue against the Governments tactics. First, the May 26 Order issued on a record that contained no filed factual opposition. Second, that record included this Court's own recent trust and supervision decisions, including the January 2026 modification from home incarceration to stand-alone electronic monitoring on Pretrial Services' recommendation and the May 26 Order's continuation of all existing release conditions. Third, the Government's letter identifies no current violation, no current Pretrial Services objection, no current flight or danger concern, and no concrete prejudice from a further short extension under the same conditions. It merely dredges up past events which are of diminishing relevance with each passing day of continued exemplary reliance by the Defendant.   Fourth, any amplification under L.A.R. 3.1 should reflect the Court's own contemporaneous reasoning on the record before it when it ruled, not the Government's after-the-fact reconstruction of reasons it did not present while the motion was pending.

## I.  The May 26 Order Issued on a Record That Contained No Filed Factual Opposition.

On May 21, 2026, counsel sought the Government's consent to a sixty-day extension of the June 4 surrender date, identifying the medical-intake, estate, dependent-care, record-transition, and appellate-preparation tasks underlying the request.) On May 22, 2026, Mr. Parmar moved to extend the surrender date with every existing condition of release left in full force (ECF No. 355). The motion did not seek to revisit the sentence, stay the judgment, modify any condition of release, or obtain release pending appeal under 18 U.S.C. § 3143(b).

Apart from one sentence sent via email stating the Government opposed the Extension Motion, Government did not file any opposition to or before the Court ruled. No factual opposition was on file when the Court entered the May 26 Order. The Court granted the motion, found "good cause," preserved all other conditions of release, and set surrender for June 11, 2026. (ECF No. 358).

That sequence matters. ECF No. 363 may now appear on the docket, but a filing submitted after the Order and after the appeal was not part of the record on which the Court ruled on May 26. The four-page factual account in that letter is, in substance, the opposition the Government did not file while the motion was pending, presented only after Mr. Parmar appealed and sought emergency relief in the Third Circuit.

The Government's request therefore should not be treated as a quotidian request for housekeeping clarification. It asks the Court to adopt a factual narrative the Government assembled after the fact, and to have that narrative serve as the reason for an order already under appellate review. That is the precise distinction the Third Circuit's post-appeal and appellate-record cases guard against.

## II.  L.A.R. 3.1 Permits Amplification of the Court's Own Prior Reasoning, Not Post-Appeal Creation of a New Factual Basis by a Party.

L.A.R. 3.1 provides that, within thirty days after docketing of a notice of appeal, "the trial judge may file and transmit to the parties a written opinion or a written amplification of a prior written or oral recorded ruling or opinion." The rule identifies both the actor and the object. The actor is the trial judge. The object is a prior ruling by the judge. The rule permits the Court to make explicit the reasoning that already underlay its decision; it does not authorize a party to supply that reasoning after the fact, and it does not convert a party's post-appeal letter into part of the record on which the Court ruled.

That limitation follows from the ordinary Third Circuit framework governing post-appeal proceedings. In *Venen*, *supra*, at 120-121. the Third Circuit explained that the filing of a notice of appeal is an event of jurisdictional significance: it confers jurisdiction on the court of appeals and divests the district court of control over the aspects of the case involved in the appeal, subject only to limited exceptions. The rule guards against the inefficiency of two courts exercising control over the same matter at the same time. L.A.R. 3.1 operates within that limited residual authority because amplification aids appellate review; it does not reopen the district court's decisional record.

*Scarfo, supra,* applies that principle in the L.A.R. 3.1 setting itself. There, the Third Circuit addressed the propriety of treating post-appeal district court materials as bearing on the reasons for an earlier order, recognizing that L.A.R. 3.1 permits a district court to provide a written opinion or amplification of a prior ruling, while treating the use of such materials as turning on their nature and on whether their use would prejudice the appealing party. That analysis confirms the boundary relevant here: L.A.R. 3.1 is a mechanism for the Court's own explanation of its prior ruling; it is not a mechanism for one party to create, after the appeal, the factual opposition it did not file before the ruling issued.

*Fassett, supra,* draws the same line in the appellate-record context. There, the Third Circuit held that Federal Rule of Appellate Procedure 10(e) allows correction of the record to reflect what occurred in the district court, but does not allow the record to be enlarged with material that was not before the district court when its decision was rendered. The principle applies with equal force here. The Third Circuit should review the May 26 surrender-date decision on the basis of the record before the Court when it ruled, not on the basis of a Government narrative assembled after the appeal.

The distinction is not technical. It goes to the integrity of appellate review. Amplification preserves that integrity when it explains the decision the district court actually made, on the record the district court actually had. A post-order filing that instead supplies a new, one-sided factual narrative asks the reviewing court to assess a rationale assembled for appeal rather than the basis for the ruling under review. That is advocacy, not amplification, however it is captioned.

The Government's letter illustrates the problem. It asks the Court to amplify the May 26 Order while simultaneously offering to furnish the reasons, "draw[n] upon prior submissions and transcripts," so that the Third Circuit "has the benefit of this Court's reasoning." *See* ECF No. 363 at 1. A request that the Court adopt reasons a party drafted is not a request to amplify the Court's reasoning. The Court may, of course, explain the basis on which it ruled. But any explanation

3

should remain an amplification of the Court's ruling, not the adoption of a factual opposition filed only after the ruling and after the appeal.

### III.  The 2024 Matters Were Already Addressed and Were Superseded by an Intervening Compliance Record.

Mr. Parmar does not deny that the Court expressed serious concerns at the August 22, 2024 bail hearing regarding adjournment requests, health representations, and certain location data. Those concerns were real, and the Court addressed them at the time through highly restrictive home-incarceration conditions. Mr. Parmar remained subject to those restrictions from August 2024 until January 2026.

What followed was a materially different record. In December 2025, Pretrial Services recommended modifying Mr. Parmar's conditions from home incarceration to stand-alone monitoring, expressly stating that "Mr. Parmar has remained compliant while on home incarceration, entered a plea and is pending sentencing." (See Ex. A, ECF No. 324-2). The Government opposed that modification on the strength of the same general history it recites again today. The Court adopted Pretrial Services' recommendation over that opposition (Order  entered January 13, 2026, ECF No. 326). The May 26 Order then again preserved all the release conditions approved by Your Honor earlier this year.

Thus, the operative record is not simply the 2024 record the Government now emphasizes. It included an intervening compliance assessment from Pretrial Services and this Court's considered decision to continue Mr. Parmar on supervised conditions despite the Government's earlier objection. The Government already asked the Court to weigh the 2024 history against Mr. Parmar in January 2026, and the Court did not find it sufficient to reject Pretrial Services' recommendation. Nothing has changed since then other than the accretion of additional compliance on the part of Mr. Parmar.

The current record also confirms that the supervision structure works. After sentencing, for example, Mr. Parmar sought Pretrial Services' permission to travel to the airport to receive elderly family members arriving from abroad, disclosed his itinerary in advance, confined the movement to the approved purpose, and reported his prompt return. Pretrial's Location Monitoring Unit responded "Approved as requested." *See* Ex. G. That is not evasion. It is supervised movement, disclosed in advance, approved by Pretrial Services, and completed without incident.

The issue is not whether the Court remembers the 2024 record. It plainly does. The issue is whether an already-addressed 2024 record can supply, after appeal, the missing reasons for a May 26, 2026 Order entered on a materially different record: an intervening compliance assessment by Pretrial Services, conditions continued by this Court, no stated current compliance problem, and no identified prejudice. Under *Venen*, *Scarfo*, and *Fassett*, that kind of post-appeal record-building should not become the basis for the order under review.

### IV.  The Government Identifies No Current Violation, No Current Pretrial Objection, and No Concrete Prejudice.

ECF No. 363 does not assert that Mr. Parmar is presently a flight risk or a danger. It does not assert that he has violated any condition since the January 2026 modification. It does not assert that Pretrial Services objects to the extension. It does not identify any concrete prejudice to the Government from maintaining the same release conditions for a further defined period. Instead,

the Government asks the Court to infer, from older events, that the Order must have rested on a present credibility judgment about medical necessity. And characterizing the Defendant's recitation of the fact that the Government did not timely makes the arguments it now makes as "complaining" is a gross distortion.

The Government introduces that inference with the words "the Government understood." *See* ECF No. 363 at 2. That phrasing is significant. It describes what the Government surmises the Court meant; it is not a finding the Court made on the face of its Order. A post-order submission should not convert the Government's characterization of the Court's reasoning into the Court's own contemporaneous rationale.

To the extent the Government's references to pre-August 2024 travel are offered as violations, that characterization is disputed. As preserved in Mr. Parmar's objections to the Presentence Report, from December 2019 until August 21, 2024 his conditions did not require advance permission for travel within New Jersey and New York. *See* Ex. H. These contested matters should not be treated as an uncontested factual record on a post-order submission.

## V.  The Government Never Explains Why June 11 Is Safe Under These Conditions but a Further Short Extension Under the Identical Conditions Is Not.

The May 26 Order found good cause to extend surrender from June 4 to June 11 while preserving every other condition of release. That finding necessarily reflects the Court's judgment that continued supervised release under the existing conditions was adequate through that period. The surrender-extension motion did not seek any additional liberty. It sought additional time under the same restrictions.

The Government's June 2 letter never explains why that same supervised structure becomes inadequate after June 11. It identifies no fact that arises on June 12. It identifies no Pretrial Services concern tied to the additional period requested, no current noncompliance, no specific flight risk, no danger finding, and no prejudice that would result from maintaining the identical conditions for a further defined period.

If the conditions the Court already found sufficient to support the extension it granted were adequate through June 11, the Government should be required to identify some current, concrete reason why those same conditions become insufficient the day after. ECF No. 363 supplies none. What it supplies instead is a recitation of 2022 through 2024 events, which speaks to the past and not to any present risk under the supervision this Court has approved.

That is also why the appellate-record principle in *Fassett* matters here. The question for review is not whether the Government can now assemble reasons it believes would have supported a different or more detailed order. The question is what record supported the Court's May 26 ruling when it was made. A later filing cannot become the basis for a contemporaneous risk finding the Order itself did not make. The Court gets to explain its reasoning; the Government does not.

## VI.  The Extension Request Was Documented, Finite, and Administrative, and Should Not Be Collapsed Into the Separate § 3143(b) Standard.

Mr. Parmar did not claim an inability to surrender. He did not ask the Court to find that the Bureau of Prisons cannot provide care. He did not seek a medical-release ruling. He sought a defined period to complete already-scheduled, documented evaluations so that an organized

continuity-of-care record could accompany him to intake, and to complete practical transition tasks before surrender.

The supporting record included counsel's certification and medical materials filed or lodged under seal, including the May 21, 2026 exercise nuclear stress-test order and related evaluation and appointment documentation. *See* Ex. I. The Government's letter does not dispute that the evaluations were scheduled. It does not challenge the authenticity of the sealed medical materials. It does not identify any Bureau of Prisons or Government prejudice from allowing those records to be completed before intake. The request rested on orderly preparation, not impossibility.

Nor was the May 22 motion an application for release pending appeal. Release pending appeal is governed by the separate standards of 18 U.S.C. § 3143(b), including the absence of flight risk or danger by clear and convincing evidence, an appeal not taken for delay, and a substantial question likely to result in reversal, a new trial, a non-custodial sentence, or a reduced sentence. Those issues will be addressed in the separately pending motion. The narrow question of surrender timing should be evaluated on its own terms and not recast, after the fact, as though it were already a fully litigated § 3143(b) application.

**Requested Relief.**

For these reasons, Mr. Parmar respectfully requests that the Court decline to adopt the Government's June 2 post-order narrative as the basis for supplementing the May 26 Order and affirmatively rules that, apart from the request for issuance of a statement of reasons, it is stricken from the record.

If the Court is inclined to amplify its ruling under L.A.R. 3.1, Mr. Parmar respectfully requests that any amplification be limited to the Court's contemporaneous reasoning and the record before the Court when the Order issued, including the submissions of Defendant, Pretrial Services' intervening compliance assessment, the continuation of release conditions, the absence of any Pretrial Services objection, and the absence of any current violation or concrete prejudice.

Alternatively, if the Court is considering reliance on disputed factual assertions in ECF No. 363, Mr. Parmar respectfully objects, but would then request an opportunity to respond before those assertions are incorporated into any statement of reasons. To the extent the Court reaches the question, Mr. Parmar further respectfully requests reconsideration of the surrender date, or a stay of surrender sufficient to permit the pending release-pending-appeal motion to be heard and decided.

I thank the Court for its consideration.

Respectfully submitted,

/s/ *Timothy P. Neumann*
Timothy P. Neumann, Esq.
Broege, Neumann, Fischer & Shaver, LLC
*Counsel for Defendant Paul Parmar*

cc (by ECF):  Kelly M. Lyons, AUSA
John Hemann, Esq.; Andrew Goldstein, Esq. (Cooley LLP)