UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

v.

PARMJIT PARMAR,

Defendant.

**Crim. No. 18-735 (MCA)**

**SUPPLEMENTAL DECLARATION OF PARMJIT PARMAR IN SUPPORT OF
MOTION FOR RELEASE PENDING APPEAL**

I, Parmjit Parmar, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

**Introduction**

1. I submit this supplemental declaration in support of my motion for release pending appeal and related request to stay or extend my surrender date.

2. I make this declaration based on my personal knowledge, records available to me, and information reflected in the attached exhibits. Where a statement depends on a record, I identify the supporting exhibit.

3. This declaration addresses events discussed in the Pretrial Services petition, my communications with Pretrial Services, my medical condition, the period during which I was not represented by Cooley LLP, the July 2024 court appearance in the Eastern District of New York, the brief stop at JFK Airport by a vehicle in which I was a passenger, other GPS-recorded stops referenced in the petition, court-authorized removal of my GPS device for medical testing, and later modifications to my conditions of release.

**Background Regarding My Communications With Pretrial Services**

4. During the period when the Pretrial Services issues described in the petition arose, I was not represented by Cooley LLP.

5. I was attempting to manage criminal, civil, medical, and supervision matters at the same time.

6. I did not always communicate clearly with Pretrial Services. I did not always document matters properly. I did not always follow up in writing. I should have done so.

7. I should have made sure the correct Pretrial Services officer had complete information. I should have provided medical records faster. I should not have assumed that a voicemail, a telephone call, or an informal explanation was sufficient.

8. Medical and mental-health materials were submitted as part of my sentencing filings, including the report of Dr. Jason Krellman. (See Ex. 1.)

9. At the May 5, 2026 sentencing hearing, my counsel addressed my mental-health issues and their effect on my communications, judgment, self-management, and presentation, and also addressed my conduct after Cooley appeared. (See Ex. 3, Sentencing Transcript excerpts at 50-51, 57.)

10. I do not intend to disclose, and I do not waive, any attorney-client privilege or attorney work-product protection. I state only that after Cooley appeared, I stopped attempting to address these issues on my own.

**Clarification Regarding ▮▮▮▮ Diagnosis**

11. To the best of my knowledge, I have never submitted a doctor note, doctor letter, or medical record to the Court or to Pretrial Services stating that I was diagnosed with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12. The medical materials I submitted or relied on concerned ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮

13. I understand that at sentencing the Court referred to medical letters as suggesting, but not saying, that I had a ▮▮▮▮▮▮. I do not understand any medical record submitted by me to have stated that I had a diagnosis of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

14. I should have communicated my medical concerns, symptoms, testing, and uncertainty more precisely. I accept responsibility for not being clearer.

**January 2024 Residence Communication and Seaside Heights**

15. In or around January 2024, I stayed at my sister's residence in Seaside Heights, New Jersey after issues arose at the Colts Neck property.

16. Before or around that time, I had attempted to communicate with Pretrial Services about the issues at the Colts Neck property and my stay at Seaside Heights. (See Ex. 5A, January 2024 Pretrial call recording; Ex. 5B, transcript.)

17. I have attached the actual January 2024 call recording and my Microsoft Word transcript of the recording. I reviewed the transcript. To the best of my knowledge, it is a true and accurate transcript of the recording. If there is any difference between the recording and the transcript, the recording controls. (See Ex. 5A, audio recording; Ex. 5B, transcript.)

*United States v. Parmar, Crim. No. 18-735 (MCA) — Supplemental Declaration*

18. I should have confirmed the residence issue in writing with the correct Pretrial Services officer and obtained written confirmation. I did not do that, and I accept responsibility for that failure.

## Court-Authorized GPS Device Removal for Medical Testing

19. On April 19, 2022, the Court entered an order regarding removal of my electronic monitoring device for an ▮▮▮▮▮▮▮▮ scheduled for April 20, 2022 and for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (See Ex. 6.)

20. That order stated that Pretrial Services would remove the electronic monitoring device sufficiently in advance of the ▮▮▮▮▮▮▮, that after the appointment I would travel directly to Pretrial Services, and that a Pretrial Services officer would reattach the device. (See Ex. 6.)

21. That order also required me to notify Pretrial Services, obtain any paperwork or confirmation required by Pretrial Services, and obtain approval from Pretrial Services for any additional removal required for testing or treatment. (See Ex. 6.)

22. On September 29, 2023, the Court entered another order on a joint application permitting removal of my ankle bracelet for an ▮▮▮ scheduled for October 3, 2023, with the bracelet to be put back on promptly afterward under Pretrial Services supervision. (See Ex. 7.)

23. When my ankle bracelet was removed for ▮▮▮▮▮▮▮, it was removed because the testing required removal of metal or electronic monitoring equipment and because the Court and Pretrial Services had authorized the procedure.

24. In connection with that court-authorized ▮▮▮▮▮▮▮, my electronic monitoring device was removed before testing and reattached afterward in accordance with the Court's orders and as directed by Pretrial Services. After the testing, I traveled to the Pretrial Services office location identified to me, including Camden on one occasion and Trenton on another, so that the device could be reattached.

25. Those Pretrial Services locations were more than approximately 75 minutes from ▮▮▮ ▮▮▮▮▮▮▮▮▮▮, New Jersey. I made those trips after ▮▮▮▮ because I understood that I had to have the device reattached as directed by Pretrial Services.

## July 2024 EDNY Court Appearance and JFK Stop

26. On or about July 25, 2024, I was subpoenaed as a third-party witness in litigation then pending in the United States District Court for the Eastern District of New York. (See Ex. 8, subpoena; Ex. 9, EDNY appearance notice or docket entry.)

27.  The proceeding was at or near Central Islip, New York, which is more than two hours from my residence in Seaside Heights, New Jersey.

28.  A car service or limousine arranged by others picked me up at approximately 3:00 a.m. to take me to the court proceeding. (See Ex. 10, car-service records.)

29.  At the end of the proceeding, I was ill and exhausted. During the return trip, I was lying down or sleeping in the back of the vehicle.

30.  I was not the only passenger in the vehicle. At least one other passenger was traveling from the court proceeding to JFK Airport. (See Ex. 11, statement of driver or passenger.)

31.  While I was asleep in the vehicle, the vehicle stopped at JFK Airport for a few minutes so that the other passenger could get out. (See Ex. 12, Pretrial Services petition, reflecting a stop of a few minutes and continuation to New Jersey.)

32.  I did not ask the driver to go to JFK Airport. I did not know at the time that the vehicle had entered the JFK Airport area or stopped at a terminal.

33.  I did not get out to take a flight. I did not enter airport security. I did not board any aircraft. I did not possess or use a passport or any travel document. I did not remove or tamper with my GPS bracelet. (See Ex. 13, GPS or BI monitoring records.)

34.  After the brief stop, the vehicle continued to my residence in New Jersey.

35.  Before August 22, 2024, my conditions of release did not require advance permission for travel between New Jersey and New York. My conditions were modified to home incarceration on or after August 22, 2024. I preserved this point in my objections to the Presentence Report. (See Ex. 14, prior conditions order; Ex. 15, modified conditions order; Ex. 16, PSR objections.)

36.  I should have asked in advance whether the vehicle would pass through or stop at any airport. I should have instructed the driver that the vehicle could not enter or stop at an airport without prior notice to Pretrial Services. I should also have notified Pretrial Services once I learned what had happened.

37.  I accept responsibility for not asking those questions in advance and for not communicating more clearly with Pretrial Services afterward. (See Ex. 17, medical records or contemporaneous communications showing illness that day.)

**Other July 2024 GPS-Recorded Stops**

38. The Pretrial Services petition also referenced several other GPS-recorded stops in July 2024, including a T-Mobile store, a cash-and-carry or grocery-related stop, a beach cabana location, and a Staten Island location associated with a Tiki Bar and a nearby boat or camper storage area. (See Ex. 12.)

39. The T-Mobile stop was brief and related to a phone issue.

40. The grocery-related stop was for basic household items, including food and pet-related necessities.

41. The beach cabana visit related to a family birthday gathering. I spent most of that time in a private cabana or bedroom area where I could rest.

42. The Staten Island and Tiki Bar area visit involved meeting a person I understood to provide holistic or wellness-related advice. I spent much of that time away from the restaurant area, resting in a private or non-public area.

43. I should have communicated the details of these stops more clearly to Pretrial Services at the time.

44. I remained on GPS monitoring during each of these stops.

**Later Modifications to My Conditions of Release**

45. On November 17, 2025, the Court granted my request to travel to my father's home at 5 Muncee Court, Holmdel, New Jersey, twice per week on dates and for time periods to be agreed upon with Pretrial Services. The order directed me to provide all details regarding that travel to Pretrial Services. (See Ex. 18.)

46. On December 18, 2025, Officer Lura Jenkins of Pretrial Services stated by email that Pretrial Services would be amenable to an order modifying my location-monitoring condition from home incarceration back to stand-alone location monitoring. (See Ex. 19.)

47. In that same email, Officer Jenkins stated that I had remained compliant while on home incarceration, had entered a plea, and was pending sentencing. She also stated that stand-alone location monitoring would ensure that the Court still knew my whereabouts while allowing me to travel to and from and accommodate requests by defense counsel. (See Ex. 19.)

48. In a December 18, 2025 email, AUSA Kelly Lyons stated that the Government would not consent to me coming off home incarceration through sentencing. The Government stated

that it would consent to holiday travel before January 2, subject to advance requests and no overnight travel, but did not consent to travel outside the holiday season. (See Ex. 19.)

49.  On January 13, 2026, the Court granted my January 6, 2026 request and modified my conditions of release from home incarceration to stand-alone monitoring via remote electronic monitoring services. (See Ex. 20.)

50.  After sentencing, the Court permitted me to surrender voluntarily and set a voluntary surrender date of June 4, 2026, which was later extended to June 11, 2026. (See Ex. 21, voluntary surrender orders or docket entries.)

**Post-Sentencing Airport Permission Emails**

51.  After sentencing, when I needed to go to an airport for family arrivals or departures, I requested permission from Pretrial Services in advance. (See Ex. 22.)

52.  On May 15, 2026, I emailed Pretrial Services and Officer Jenkins requesting permission to go to JFK Airport, Terminal 4 International Arrivals, to pick up family members arriving from India. I stated that I would not be at the airport for more than 30 minutes, would not go anywhere except the international arrivals waiting or receiving area, and would notify Pretrial if anything changed. (See Ex. 22.)

53.  On May 15, 2026, Pretrial Services approved the request. (See Ex. 22.)

54.  On May 17, 2026, I provided a status update before leaving, including the updated arrival time, my planned route, phone numbers for me and my brother-in-law, and the plan to proceed directly to JFK Terminal 4 International Arrivals and return directly to Seaside Heights. (See Ex. 22.)

55.  On May 17, 2026, I provided a further status update that I had arrived at JFK at approximately 10:30 a.m., received my family members, left the airport by approximately 11:00 a.m., and returned home to Seaside Heights. (See Ex. 22.)

56.  On May 22, 2026, I emailed Pretrial Services requesting permission to drop off my family at the airport the next day, stating that I would leave home at 8:30 a.m., be at the airport for less than 30 minutes, and return home. (See Ex. 22.)

57.  On May 23, 2026, I provided an update that the flight was delayed, stated my revised plan to leave home at approximately 9:30 a.m., remain at the airport for no more than 30 minutes, and then drive to my sister's house in Holmdel, New Jersey. (See Ex. 22.)

58. On May 23, 2026, I provided a status update that I had dropped off my family at the airport, had left the airport area, and was at my sister's house in Holmdel, New Jersey. (See Ex. 22.)

59. I understand that airport permissions are case-by-case permissions. I understand that I may not travel to an airport unless I have prior authorization from Pretrial Services or the Court.

60. If counsel attaches additional Pretrial Services emails approving Newark Liberty International Airport travel, I request that they be included with this same group of exhibits.

**Current Conditions and Compliance**

61. Since the Court modified my conditions, I have remained on supervision.

62. I have not failed to appear, and my release has not been revoked. (See Ex. 23, supervision-history summary; Ex. 24, Pretrial Services correspondence after Cooley's appearance.)

63. I am willing to comply with any additional condition the Court imposes pending appeal, including GPS location monitoring, home incarceration, restrictions on travel to any airport, seaport, train station, bus terminal, marina, or border area absent prior written authorization, travel restrictions, prompt communication requirements, and medical documentation requirements.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

| Executed on: ___June 5___, 2026 | *Paul Parmar* |
| --- | --- |
| | Parmjit Parmar |