

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

---

*970 Broad Street, 7th floor*                                    *973-645-2700*
*Newark, New Jersey 07102*

June 5, 2026

<u>**VIA ECF**</u>

Hon. Madeline Cox Arleo
United States District Judge
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07102

> Re:    *United States v. Parmjit Parmar*,
>         <u>Crim. No. 18-735 (MCA)</u>

Dear Judge Arleo:

The Government opposes defendant Parmjit Parmar's ("Parmar") motion for bail pending appeal, or in the alternative, for a stay of his June 11, 2026 surrender date (Dkt. Nos. 360, 362).

"Congress enacted the Bail Reform Act of 1984 to create a presumption in favor of post-conviction detention." *United States v. Douglas*, 2024 WL 195256, at *2 (D.N.J. Jan. 17, 2024) (citing, *inter alia*, *United States v. Miller*, 753 F.2d 19, 22–24 (3d Cir. 1985)). Parmar's detention is mandatory under 18 U.S.C. § 3143(b). That statute provides that a defendant shall be released on bail pending appeal **only** if the court finds: (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released, and (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process. *See United States v. Smith*, 793 F.2d 85, 87 (3d Cir. 1986).

Parmar meets none of these requirements. Parmar has not satisfied the legal standard for bail pending appeal as he plainly is a flight risk, the appeal is brought for the purposes of delay, and Parmar does not raise a substantial question of law or fact likely to result in a shorter sentence.

A.      **Parmar's repeated lies and obfuscation show that he is a flight risk.**

Parmar, who is a prolific and adjudicated liar and has repeatedly failed to comply with the conditions of his release, is a flight risk and cannot show by clear and convincing evidence that he is not likely to flee. Throughout the pendency of this case, Parmar has repeatedly lied to this Court and to Pretrial Services, including about his whereabouts, his health, and purportedly required medical procedures, to obtain an "unprecedented" number of adjournments. *See* Dkt. No. 230.

For example, throughout the first half of 2024, Parmar played fast and loose with his conditions of release. He moved from New York to New Jersey without advising Pretrial Services, was $8,000 in arrears on his electronic monitoring fees, and was missing required telephonic check-ins with Pretrial Services. PSR ¶¶ 73-76. In July 2024, after years of adjournment requests based on alleged health concerns and purportedly scheduled medical procedures, discussed further *infra*, and less than a week before an in-person status conference, Parmar claimed that he had a medical emergency requiring immediate hospitalization and lifesaving surgery, and that he would be unable to make his check-ins with Pretrial Services due to being heavily medicated and in severe pain. PSR ¶ 76. He further claimed that he was unable to walk or perform daily activities and that his recovery period would last between six and ten weeks. *Id.* Pretrial Services requested documentation, which Parmar never provided. *Id.* The Court later learned that Parmar underwent an outpatient stent procedure and was prescribed aspirin. *See* August 22, 2024 Bail Hearing Tr. at 9:6-13. GPS monitoring showed that on July 16, the day of the postponed status conference, Parmar was at a beach cabana club until almost midnight. *Id.* at 4.

On July 24, 2024, Parmar's GPS tracking service showed him at a Tiki Bar and adjacent restaurant and boating area in Staten Island, New York, from 1:00 p.m. to 11:00 p.m. *Id.* On July 25, 2024, Parmar's GPS tracking system alerted Pretrial Services that he was at John F. Kennedy International Airport. PSR ¶ 77. When Pretrial Services called him, Parmar claimed that he had been in bankruptcy court, but that he felt ill and could not return home. *Id.* He did not explain why he had been at the airport. *Id.* The next day, Parmar told Pretrial Services that he experienced another life-threatening event and needed to be hospitalized immediately. *Id.* ¶ 78. He never provided any requested medical documentation about this incident.

On August 22, 2024, during a bail hearing, the Court expressed "real concerns about the truthfulness of your statements to the Court," Bail Hearing Transcript at 5:2-3, and Your Honor found that Parmar had "breached the trust" through "repeated inconsistent representations." *Id.* at 7:8-11. For example, Parmar's lawyer had told the Court "three years ago that you had metastatic brain cancer. . . . Then we stopped getting reports of the metastatic brain cancer and tumors and orthopedic tumors and surgeons[.] Now you had a stent put in and you're describing it in a much more exaggerated way than the . . . sparse medical documents that you've provided[.]" *Id.*

at 5:10-16. Parmar's doctors gave unreliable information as well, and the Court placed no "trust in [them] anymore. I have doctors that reported to me that he had metastatic brain cancer and orthopedic cancer as well, and that turned out not to be truthful from the doctors." *Id.* at 11:16-19. Accordingly, Your Honor ordered that Parmar undergo an evaluation "by a neutral medical professional that can advise the Court whether or not you're well enough to move forward to trial[.] And we're going to get your medical records." *Id.* at 7:12-19. Following the hearing, rather than undergo evaluation by neutral doctors and hand over his medical records, Parmar told the Court that he was healthy and ready to go to trial.[1]

Parmar finally pleaded guilty on May 7, 2025, and the Court sentenced him to 60 months' imprisonment on May 5, 2026. During the sentencing hearing, the Court recounted in detail Parmar's dishonest behavior on pretrial release and read into the record statements of two state court judges finding testimony Parmar had given in other cases in 2023 and 2024 to be self-serving and incredible.

The record is replete with the Court's findings that it does not credit Parmar with regards to his own medical issues, does not find him credible in general, that he has been untruthful to Pretrial Services, and has failed to comply with his conditions of release. He has affirmatively lied to this Court about his whereabouts, including about traveling to John F. Kennedy International Airport. Now with a BOP report date just a week away and a definitive 60-month term of imprisonment looming, Parmar has increased incentive to lie and to flee. And over the course of more than eight years, he has given the Court no reason to trust his word that he will not. Accordingly, Parmar cannot show by clear and convincing evidence that he is not likely to flee and his motion for release should be denied.

## B.    <u>The appeal is brought as yet another delay tactic.</u>

This latest appeal is another in a long string of poorly veiled attempts to avoid facing adjudicated penalties for his serious criminal conduct. Indeed, Parmar has a well-documented record of exercising delay tactics to avoid the consequences of his now decade-old crime, and none of the reasons he gives for delaying service of his sentence are compelling. As noted above, throughout the pendency of this case, Parmar has repeatedly lied to the Court and to Pretrial Services to obtain an

---

[1] On June 5, 2026, five days after filing this motion, Parmar belatedly filed an affidavit in support of his request for release attempting to explain away or justify his many lies to this Court and pretrial services. Dkt. No. 367. None of his self-serving explanations, which reek of further obfuscation and delay tactics, are compelling, and more importantly, nothing in this affidavit that is based on wholly unsupported contentions changes the fact that he repeatedly lied to the Court and Pretrial Services over the course of this litigation, as laid out in great detail in this letter and other Government filings, and by the Court during sentencing.

"unprecedented" number of adjournments. *See* Dkt. No. 230; *see also* Dkt. No. 235. The Government provides here some examples of this relentless pattern of behavior.

Beginning in early 2020, just before his pretrial motions were due, Parmar began filing a years-long litany of motions for extensions and adjournments. *See* Dkt. Nos. 75, 76, 99, 102, 111. In 2022, Parmar sought and received four adjournments of oral argument on his pre-trial motions based on purported health issues and represented that he was not prepared for trial "due to his medical condition." Dkt. No. 172. The adjournment requests continued in 2023 and in 2024, after further requests for delays, the Court told Parmar that it had received "an unprecedented number of adjournment requests both through your prior counsel and through you in the last three months [that Parmar had been proceeding pro se]. Never seen anything like it before." Dkt. No. 230; *see also* Dkt. No. 235. Even worse, Parmar had "breached the trust" by making "repeated inconsistent representations" to "delay and stall" the case. *Id.*

Faced with the prospect of evaluation by neutral doctors, Parmar admitted that he was healthy and ready to go to trial on October 3, 2024. But he did not retain counsel until February 2025, a full ten months after he had stopped communicating with his prior defense counsel. *Id.* Parmar finally pled guilty in May 2025, after the Court denied his motion to continue a June 2025 trial date. A year passed before sentencing, during which the Court granted Parmar's repeated requests to adjourn sentencing. Dkt. Nos. 315, 322, 323, 331.

Now, over a year after entering his guilty plea, Parmar seeks to delay yet again. Even after sentencing, the adjournment requests have continued unabated. On May 18, the Probation Office ordered Parmar to voluntarily surrender to BOP custody on June 4, 2026. Parmar moved to extend his surrender date to August 3, 2026, citing a litany of administrative tasks he wants to accomplish over the summer – all of which could have been accomplished over the many years he has been on pretrial release in this case. On May 26, Your Honor agreed that Parmar could have an additional week to report to BOP custody, but denied his request for a full 60-day extension. Dkt. No. 358. Parmar then filed an emergency motion to stay his surrender date and extend his time to voluntarily surrender with the Third Circuit Court of Appeals on May 29, 2026, and on June 1, 2026, he filed this motion for release pending appeal.

As noted below, Parmar has failed to meet a threshold issue required for release pending appeal, as he has not presented a substantial question of law or fact likely to result in a shorter sentence. Thus, the only purpose of this motion is to delay serving his lawfully imposed sentence of imprisonment and it should be denied.

### C.    Parmar has not presented a substantial question of law or fact likely to result in a shorter sentence.

Parmar claims that because his appeal is based on arguments about the Court's loss calculation and application of an enhancement under U.S.S.G. § 2B1.1(b)(1)(N), including "whether actual loss . . . could be calculated from the gross transaction amount with a determination of the value" of the (wholly fabricated) company that he sold and "whether the disputed issues of valuation, causation, and reliance on the results of the bankruptcy proceedings required findings" through an evidentiary hearing, he has presented a substantial question of law or fact likely to result in a shorter sentence. Mot. at 1. Not so.

The Bail Reform Act requires that the pending appeal "raises a substantial question of law or fact." 18 U.S.C. § 3143(b)(1)(B). To be substantial, our Court of Appeals "requires that the issue on appeal be *significant* in addition to being novel, not governed by controlling precedent or fairly doubtful." *See United States v. Smith*, 793 F.2d 85, 88 (3d Cir. 1986). The absence of controlling precedent is not itself enough to meet this test. *See id.* A question is substantial if the defendant can demonstrate that it is "fairly debatable" or is "debatable among jurists of reason." *See id.* at 89 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)); *United States v. Handy*, 761 F.2d 1279, 1281-82 (9th Cir. 1985). A substantial question is "one of more substance than would be necessary to a finding that it was not frivolous." *See Smith*, 793 F.2d at 89 (quoting *Handy*, 761 F.2d at 1282 n.2). Whether a question is substantial should be made on a case-by-case basis. *Id.* (quoting *Handy*, 761 F.2d at 1281-82).

The Court thoroughly considered and rejected Parmar's arguments regarding the loss amount during the sentencing hearing and "imposed a reasonable sentence likely to be upheld upon appellate review." *United States v. Johnson*, No. Crim. 09-698, 2010 WL 1688547, at *3 (E.D. Pa. Apr. 26, 2010). The PSR indicated that "[b]ased upon a total offense level of 41 and a criminal history category of I, the guideline imprisonment range [for defendant] is 324 to 405 months. However, the statutorily authorized maximum sentence of five years is less than the minimum of the applicable guideline range." PSR ¶ 183. The Court imposed a Guideline term of imprisonment of 60 months' incarceration. Thus, the Court's sentence was reasonable. *See Rita v. United States*, 551 U.S. 338, 347 (2007) ("[A] court of appeals may apply a presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines."); *United States v. Goff*, 501 F.3d 250, 257 (3d Cir. 2007) (The *Rita* case "supports our prior instruction that 'a within-guidelines range sentence is *more likely* to be reasonable than one that lies outside the advisory guidelines range[.]'") (citation omitted) (emphasis original).

To calculate the fraud loss, the Court followed established Third Circuit precedent. The Court found that the Government had shown by a preponderance of the evidence that the actual loss under U.S.S.G. § 2B1.1 was the total loss incurred

by investors, namely the approximately $212 million that investors were fraudulently induced to pay to acquire Parmar's entirely sham company based on Parmar's lies. Sentencing Tr. at 23:16-20, 28:19-29:1. The Court's calculation is in accord with *United States v. Georgiou*, 777 F.3d 125 (3d Cir. 2015), and *United States v. Kirschner*, 995 F.3d 327 (3d Cir. 2021), and does not raise a substantial question, that is one which is ungoverned by controlling precedent or which is fairly debatable. *See Miller*, 753 F.2d at 23.

In coming to this conclusion, the Court explicitly noted that there was "no law that supports the contrary in the Third Circuit," Tr. 16:11-12, and distinguished Parmar's cited authorities, including *United States v. Nathan,* 188 F.3d 190 (3d Cir. 1999) and *United States v. Nagle*, 803 F.3d 167 (3d Cir. 2015), cases involving procurement fraud where defendants were entitled to credit against the total loss amount because victims received some services under the relevant contracts, as a "far cry" from the facts underlying Parmar's fraud scheme. Tr. at 20:11-24; 25:6-23. Rather, the Court found that under controlling Third Circuit precedent, the Government had shown that the loss amount is approximately $212 million, or the full investment amount, and applied the enhancement under U.S.S.G. § 2B1.1(b)(1)(N) for three main reasons: (1) Defendant pleaded guilty to falsely inflating the value of the company, (2) other evidence in the case showed the "significant and fundamental" extent of that false inflation, (3) and within months of uncovering the fraud, the underlying company filed for bankruptcy, which was still ongoing at the time of sentencing. Tr. 27:1-28:8.

Parmar tries to argue that his request for a hearing on "transaction-date value received and on whether later bankruptcy events could substitute for that finding" is "independently substantial" and justifies his release pending appeal. Mot. at 22. But this is the same argument stated differently that was explicitly rejected by the Court: the value of the company at the time of the sale is not relevant to the loss amount calculation, which is based upon the sale price investors paid for Parmar's entirely fabricated company. Accordingly, any arguments about a hearing on "valuation" fails to present a substantial question likely to result in a reduced term of imprisonment.

The Court also found at sentencing that "even if the Court were to agree that the estimate of actual loss here should account for the value the company had at the time of the [] transaction, there is a preponderance of the evidence to suggest that the estimated actual loss would be significant enough to have no impact on defendant's sentence." Tr. 25:24-26:4. That is because for Defendant to fall within the Guidelines range of 57-71 months, the actual loss amount would only need to be more than approximately $150,000, "a number that would be very hard to deny – is a fraction of the investment, it would be hard to deny would not apply here." Tr. 26:5-16. Accordingly, Parmar's arguments that he would have received a lower sentence under a different loss calculation fall flat.

Thus, Parmar has not shown that his issues presented on appeal present a substantial question likely to result in a reduced sentence and his motion should accordingly be denied.

And even if Parmar's appeal did present a "substantial question," the Bail Reform Act still directs that Parmar be detained. As noted above, if the requirements of the Bail Reform Act are otherwise met, the judicial officer shall order the defendant's release "except" where the appeal is likely to result in a reduced sentence. *See* 18 U.S.C. § 3143(b)(1). In that circumstance, "the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence." *Id.*

Here, Parmar is not seeking to reverse his conviction, obtain a new trial, or even obtain a non-custodial sentence. Instead, Parmar is seeking resentencing in the hopes of receiving "a reduced sentence." 18 U.S.C. § 3143(b)(1)(B)(iv). In that posture, bail pending appeal is simply not an available remedy, even accepting *arguendo* the merits of Parmar's arguments.

**D.    <u>Parmar's alternative request for an extended self-surrender date should be denied.</u>**

For the extensive reasons cited above and in its June 3, 2026 letter to the Court requesting a statement of reasons for the Court's May 26, 2026 Order declining to grant Parmar a 60-day extension to surrender, Dkt. No. 363, Parmar's request to extend his self-surrender date should be denied. Extending Parmar's self-surrender date beyond June 11, 2026 would circumvent the text and structure of the Bail Reform Act, and diminish the deterrent effect from prompt execution of a sentence. Congress established a presumption in favor of detention pending appeal. That presumption applies in Parmar's case, as it would in any other.

Respectfully submitted,

ROBERT FRAZER
United States Attorney

By: _Kelly Lyons_____

Kelly M. Lyons
George M. Barchini
Assistant U.S. Attorneys

CC: Counsel of record (via ECF)