# PUBLIC — REDACTED VERSION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

UNITED STATES OF AMERICA,

Plaintiff,

v.

PARMJIT PARMAR, a/k/a "Paul Parmar,"

Defendant.

Crim. No. 2:18-cr-00735 (MCA)

Appeal No. 26-2218 (3d Cir.)

Hon. Madeline Cox Arleo

## EXHIBIT 10

### Second Supplemental Declaration of Parmjit Parmar

This is the PUBLIC, REDACTED version of this document. Material concerning Mr. Parmar's medical information and his service to and cooperation with federal law enforcement—the substance of which was sealed at the May 5, 2026 sentencing hearing at the defense's request—has been redacted and is shown by solid black marking. An unredacted version is filed under seal. This document is offered solely in support of Mr. Parmar's motion for release pending appeal and alternative stay of surrender, and not to relitigate guilt, sentencing, valuation, or loss.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

UNITED STATES OF AMERICA,                    Crim. No. 2:18-cr-00735 (MCA)

        Plaintiff,                                  Appeal No. 26-2218 (3d Cir.)

  v.                                            Hon. Madeline Cox Arleo

PARMJIT PARMAR, a/k/a "Paul Parmar,"

        Defendant.

I, Parmjit Parmar, declare as follows:

**Introduction**

1.  I submit this second supplemental declaration in support of my motion for release pending appeal and my related request for a stay of surrender.

2.  I submit it for one limited purpose: to provide additional facts relevant to the Government's claim that I am presently likely to flee.

3.  I do not submit this declaration to challenge my guilty plea, to relitigate my sentencing, to argue the merits of my appeal, or to make allegations against the Government.

4.  

5.  I understand that the Court must decide whether I am presently likely to flee. I offer these facts because my conduct before my arrest is inconsistent with an intent to flee. I defer to counsel on the legal significance of anything stated here.

6.  This declaration supplements, but does not replace, my prior supplemental declaration. My prior declaration addressed the 2024 Pretrial Services issues and my post-sentencing compliance. This declaration addresses my pre-arrest conduct, which is relevant because it shows how I behaved before any court order, GPS monitoring, passport restriction, bond condition, or surrender obligation existed.



7.

8.    I did so without seeking payment or public recognition.

9.

10.

11.

12.

13.

*See*

14.

**Voluntary Contacts Regarding CHT in Late 2017 and Early 2018**

15.

16.

17.

18.

19.

20.

21.

22.

23.



24.

25.

26.

27.

28.

29.

30.



31.

32.

**Disclosure of International Travel and Voluntary Return**

33. In or about January 2018, before my arrest and before any release condition existed, I was scheduled to travel internationally to the United Arab Emirates, India, and Thailand.

34.

35.

36. I provided the itinerary and details of my travel.

37.

38. I stated that, if the Government had any concern, I would cancel the trip.

39.



40. My return was later delayed by a few weeks.

41.

42. I returned to the United States. A few weeks later, I was arrested.

43. At no point during that trip did I attempt to hide my location from the Government.

44. At no point during that trip did I attempt to avoid returning to the United States.

45. I was not under GPS monitoring, passport restrictions, bond conditions, or Court supervision at that time.

46. I returned voluntarily, despite understanding that there could be legal consequences.

**Voluntary Appearance When Contacted Before Arrest**

47.

48.

49.

50.



51.

52.

53. I appeared because I had been contacted and because I had no intention of fleeing.

54. I understand that the Government may describe this event differently. I state only my personal recollection and understanding.

55.

**Contact With Another Longstanding Government Contact**

56.

57.

58.

59.

60. I did not request any personal favor in exchange.

61.

62.

63.

64.

65.

66.

67.

68.



**Compliance Under Supervision After Sentencing**

69. After my sentencing on May 5, 2026, I remained on location monitoring supervised by the United States Pretrial Services Agency for the District of New Jersey, Location Monitoring Unit.

70. On more than one occasion after sentencing, I asked the Location Monitoring Unit for permission to go to an international airport to receive elderly family members arriving from abroad.

71. I directed those requests to the Location Monitoring Unit, including Officer Lura Jenkins and Officer Eliana Jimenez, and to the manager and officer in charge of the unit. In each request, I provided the relevant flight information and itineraries.

72. The Location Monitoring Unit approved those requests in writing. On May 15, 2026, the Unit responded, "Approved as requested."

73. In connection with that approved travel, I went to John F. Kennedy International Airport, Terminal 4, International Arrivals, to receive my arriving family members, and then returned home.

74. I proposed and observed strict limits on my own conduct. I stated that I would remain at the airport for no more than approximately thirty minutes, that I would go only to the international arrivals receiving area, and that I would return directly home.

75. I reported my movements to the Location Monitoring Unit before and after each trip, including when I left home, when I arrived at the airport, and when I returned, even when no rule required me to send those updates.

76. I provided more than one telephone number at which I could be reached at any time, and I provided contact information for a family member who accompanied me.

77. I did not enter any departure area, I did not pass through security screening, and I did not travel. I went only to receive arriving family and returned home as I had stated I would.

78. These approved trips occurred while I was under GPS location monitoring, which disclosed my location throughout.

**Why These Facts Bear on Present Flight Risk**

79. I understand that I now bear the burden of showing that I am not likely to flee.

80. I respectfully submit that my conduct before arrest is relevant to that question.

81.

82. Before any release condition required me to do so, I disclosed international travel.

83. Before any passport restriction required me to do so, I provided my itinerary and offered to cancel my travel if the Government objected.

84. Before any GPS monitoring existed, I returned to the United States.

85. Before any arrest warrant was executed against me, I appeared when I was contacted.

86.

87. Most recently, after my sentencing, the federal agency responsible for assessing and managing my supervision permitted me to travel to an international airport, and I complied fully each time and reported my movements throughout. The supporting communications with the Location Monitoring Unit are attached as Exhibit 6-B.

88. I recognize that the Court has concerns about my past communications with Pretrial Services, and I do not minimize those concerns.

89.

90.

**Response to the Government's Characterization of the 2024 Events**

91. I respectfully provide the following facts to address the Government's reliance on events from 2024. I do not offer them to relitigate any prior bail ruling or to minimize the Court's concerns. I offer them only to show that the 2024 events, properly understood, do not establish that I am presently likely to flee.

92. Until the August 22, 2024 bail review hearing, my release conditions did not place me on home incarceration and did not require me to obtain advance permission to travel within New York and New Jersey. My understanding at that time was that I was permitted to be in New York and New Jersey, subject to GPS monitoring and the other conditions of release.

93. For that reason, the Government's references to my being at locations in New Jersey, Staten Island, or elsewhere in New York in July 2024 do not establish that I was attempting to flee or that I violated a geographic restriction. Those locations were within the area I understood I was permitted to be, and each was recorded by GPS, which confirms that I was not concealing my location from Pretrial Services.

94. The Government has suggested that a delay in paying for electronic monitoring reflected an effort to avoid supervision. That is not accurate. My BI Incorporated payment agreement set a monitoring rate of $3.95 per day. A true and correct copy of that agreement is attached as Exhibit 10-A to this declaration.

95. I had raised the billing rate with Pretrial Services years earlier. On February 26, 2020, I emailed United States Pretrial Services Officer Robert Hyde to report that the rate I was being charged was wrong, that the monitoring company had told me only the officer could correct it, and that I had just made a $500 payment. A true and correct copy of that email, together with the payment confirmation, is attached as Exhibit 10-C.

96. On July 10, 2024, Pretrial Services advised me by email that my location-monitoring bill had been adjusted to the $3.95 per day rate reflected in my payment agreement, that an increased amount of approximately $389.52 was not my responsibility, and that the corrected balance was due by July 24, 2024. A true and correct copy of that email is attached as Exhibit 10-B. The correction of the rate therefore occurred in July 2024, years after I first flagged the issue.

97. After the corrected balance was provided, I attempted to make the payment, and it appeared to me at the time that the payment had been accepted. I later learned that the monitoring company did not process the payment immediately and that, when the charge was later

submitted, my card issuer declined it because it did not recognize the vendor for a charge of that size. I did not understand at the time that the payment had failed.

98. Throughout this period I remained on GPS monitoring. I did not remove or tamper with the device, I did not abscond, and I remained visible to Pretrial Services. The monitoring-fee issue was a billing and payment-processing matter, not an effort to avoid supervision.

99.



100.

101.

102.

103. The one 2024 location that I understand reasonably drew separate concern was a brief GPS-recorded stop at John F. Kennedy International Airport on July 25, 2024. I did not go to the airport to travel. I did not leave the vehicle, enter any terminal, check in for a flight, pass through security, or board or attempt to board any aircraft. To the best of my recollection, I was asleep in the vehicle during the brief stop. The stop was incidental to the vehicle's movement and was not an attempt to travel or to flee.

104. After the August 22, 2024 hearing, my conditions were changed to home incarceration, and I complied with those stricter conditions. I respectfully submit that my compliance after the conditions were made clear is more probative of present risk than the Government's characterization of monitored movements that occurred before home incarceration was imposed.

**Willingness to Comply With Any Condition**

105. If released pending appeal, I will comply with any condition the Court imposes.

106. I will remain on GPS monitoring or home incarceration if ordered.

107. I will not travel to any airport, seaport, train station, bus terminal, marina, border area, or other transportation hub without prior written authorization from Pretrial Services or the Court.

108. I will not apply for or obtain any passport, OCI card, foreign travel document, or other travel authorization.

109.

110. I will appear for any hearing or surrender date ordered by the Court.

111. If release is denied or later revoked, I will surrender as directed.

**Summary**

112.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on: June 7, 2026

_Parmjit Parmar_ (signature)

Parmjit Parmar