---

# PUBLIC VERSION

---

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Crim. No. 2:18-cr-00735 (MCA) |
| Plaintiff, | Appeal No. 26-2218 (3d Cir.) |
| v. | Hon. Madeline Cox Arleo |
| PARMJIT PARMAR, a/k/a "Paul Parmar," | |
| Defendant. | |

---

## EXHIBITS 1 AND 2

**Chronology of Valuation Preservation and Valuation-Related Data Available to the Government**

This is the PUBLIC version of this document. It contains no material concerning Mr. Parmar's medical information or his service to or cooperation with federal law enforcement, and is filed publicly in unredacted form. It is offered solely in support of Mr. Parmar's motion for release pending appeal and alternative stay of surrender.

# EXHIBIT 1

## Chronology of Valuation Preservation and Defense Requests
## for Transaction-Date Valuation

*United States v. Parmjit Parmar, Crim. No. 2:18-cr-00735 (MCA) (D.N.J.)*
*Appeal No. 26-2218 (3d Cir.)*

## Purpose Statement

This exhibit catalogs the procedural history demonstrating that, since 2018, the defense repeatedly identified valuation as central to the determination of actual loss, identified Duff & Phelps and SunTrust as contemporaneous valuation evidence, sought valuation-related discovery, and challenged the Government's decision to equate the investment amount with loss under U.S.S.G. § 2B1.1.

This exhibit is **not** offered to establish any specific value. It is offered solely to identify where valuation-related issues were preserved and litigated. Each entry is tied to a docket filing, transcript citation, exhibit, or declaration of record.

> **What This Exhibit Shows and What It Does Not Show**
> - It shows that transaction-date valuation was raised repeatedly, from 2018 through sentencing.
> - It shows that contemporaneous valuation materials existed, including the Duff & Phelps and SunTrust analyses—within the Government's own production.
> - It does not ask the Court to determine the value of the company now.

# Executive Summary of Preservation

The central appellate theme is narrow and supported by the record:**by April 2026 the Government did not contend that valuation evidence was unavailable — it contended that valuation was legally irrelevant.**The preservation history below shows the defense identified transaction-date valuation as material from the outset of the case.

1. **Duff & Phelps and SunTrust valuation identified in 2018.**The June 20, 2018 Bail Appeal Reply stated that Duff & Phelps and SunTrust, using the same data the Government alleged was inflated, valued the company at "over double the price" at which the transaction closed. Doc. 21 at 2, PageID 49.

2. **Valuation reasserted as central in 2020.**The December 22, 2020 Rule 17(c) motion stated that the transaction "significantly undervalued CHT," that "Valuation is essential to a fraud case," and sought discovery of Duff & Phelps, KPMG, BofA, FTI, CC, and Pegasus/PARCS materials. Doc. 97 at 7, 10, PageID 706.

3. **2021 filings tied the D&P valuation to the Government's own production.**The April 15, 2021 motion to dismiss described an independent Duff & Phelps valuation using accurate data below the marketing figures (Doc. 107-1 at 13, PageID 877); the June 17, 2021 reply stated the Government's own discovery production included a Duff & Phelps report finding a value range "well above the actual sale price." Doc. 117 at 6, PageID 1165.

4. **The D&P report exists and is in the record.**The August 17, 2016 Duff & Phelps "Project Aquila Alpha" materials, prepared for the Special Committee of the Board, set out a discounted-cash-flow Indicated Enterprise Value Range (Rounded) of $310.0M–$375.0M, against a stated CC Capital offer enterprise value of $252M.

5. **2026 sentencing litigation preserved the legal issue.**The defense argued actual loss requires a value-received finding; the Government argued valuation was "completely irrelevant" and the dispute "legal, not factual." Doc. 344 at 3–4, PageID 2846–47; Tr. 12–28.

> ### The single strongest entry
>
> The Government's own discovery production included a Duff & Phelps report finding a value range "well above the actual sale price." Reply, Doc. 117 at 6, PageID 1165 (June 17, 2021). The valuation evidence was therefore not missing—it was in the Government's hands years before sentencing. The Government's later position that valuation was irrelevant was a legal election, not a consequence of absent evidence.

## Part A — Master Chronology Table

The following table identifies, in chronological order, the filings and proceedings in which valuation, fair market value, actual loss, value received, or loss methodology were raised. The table is presented in landscape orientation on the following pages.

| Date | Docket / Source | Filing | Page / PageID / ¶ | Valuation Issue Raised | Exact Quotation | Why It Matters |
|---|---|---|---|---|---|---|
| Aug. 17, 2016 | D&P "Project Aquila Alpha" | Duff & Phelps discussion materials for the Special Committee of the Board | p. 5, 18 | Contemporaneous independent valuation: DCF Indicated Enterprise Value Range (Rounded) $310.0M–$375.0M; stated CC Capital offer EV $252M | "Indicated Enterprise Value Range (Rounded) $310.0 – $375.0" (p. 18); EV of $252M representing CC Capital's offer (p. 5) | Pre-transaction professional valuation existed and exceeded the offer EV. Anchors feasibility. |
| June 20, 2018 | Doc. 21 (filed 06/28/18) | Bail Appeal Reply | PageID 49–50 | D&P and SunTrust valued the company at over double the closing price using the data alleged inflated; fairness opinion under 17 CFR § 229.1014 | "Duff & Phelps Corp. and SunTrust Bank, relying on the data that the government alleges was false and inflated, determined that Company A should be valued at over double the price that CC Capital and Company A agreed to close at." | Earliest explicit identification of contemporaneous valuation evidence exceeding price. |
| Oct.–Nov. 2019 | Bail correspondence (Hoffman / USAO) | Letter / email re: bail conditions and search terms | — | Bail-modification and discovery logistics; no valuation language located in this item | — | Retained for completeness; this item does not itself contain D&P/valuation content. |
| Dec. 22, 2020 | Doc. 97 | Rule 17(c) Motion | PageID 706; pp. 10, 16, 24–27 | Transaction "significantly undervalued CHT"; "Valuation is essential to a fraud case"; sought D&P / KPMG / BofA / FTI / CC / Pegasus-PARCS discovery | "a transaction that significantly undervalued CHT solely because they were aware of CHT's true value"; "Valuation is essential to a fraud case." | Shows defense sought the very valuation inputs the Government never assembled into a valuation. |
| Apr. 15, 2021 | Doc. 107-1 | Motion to Dismiss | PageID 877; p. 14 | Independent D&P valuation used accurate data "millions of dollars below the marketing spreadsheet figures"; "essential valuation evidence … withheld" | "the data used by Duff & Phelps in producing their valuation of Company A contained accurate numbers that were millions of dollars below the marketing spreadsheet figures." | Ties D&P to accurate (non-inflated) data and frames the value-vs-price dispute. |
| June 17, 2021 | Doc. 117 | Reply (re: Motion to Dismiss) | PageID 1165 | Government's own production included a D&P report; D&P revenue not inflated; D&P value range well above sale price | "the Government's production of documents in discovery included a Duff & Phelps report … Duff & Phelps found a value range for the company well above the actual sale price." | Strongest single entry: the valuation evidence was in the Government's own production. |
| Jan. 30, 2017 | PSR (Doc. 306) | Go-Private closing | PageID 2375 | Purchase price / amount | "On January 30, 2017 the full | Fixes the transaction date and the |

| Date | Docket / Source | Filing | Page / PageID / ¶ | Valuation Issue Raised | Exact Quotation | Why It Matters |
|---|---|---|---|---|---|---|
| | | (referenced in PSR / Trustee Decl.) | | invested fixed at $212,502,160.25 ($130M debt + $82,502,260.25 equity) | $212,502,260.25 was disbursed … as purchase proceeds for the Go-Private Transaction." | figure later equated with loss. |
| Aug. 28, 2025 | Doc. 306 | Final Presentence Report | PageID 2380; ¶¶ 89–90 | PSR adopts actual loss = $212,502,160.25 (+26); no independent transaction-date valuation | "The actual loss in this case is $212,502,160.25 … increased by 26 levels." (¶ 89) | Loss figure taken from the investment amount, not a valuation at closing. |
| Jan. 26, 2026 | Doc. 328 | Defendant's sentencing submission | | Loss methodology / value-received; objection to PSR loss | | Preserves loss objection (referenced by Govt., Doc. 344). |
| Feb. 11, 2026 | Doc. 334 | Defendant's reply sentencing submission | | Continued loss-methodology challenge | | Referenced by Govt., Doc. 344 at 1. |
| Apr. 2, 2026 | Doc. 341 | Defendant's letter re: sentencing / loss & valuation | Doc. 341 | Requested transaction-date valuation of CHT and an evidentiary hearing with witnesses | (Per Govt., Doc. 344 at 2) defense contended the Government "is required to present evidence regarding the 'valuation of CHT at the time of CC Capital's investment or the bank loans.'" | Direct, dated request for a transaction-date valuation and a hearing. |
| Apr. 27, 2026 | Doc. 344 | Government letter response | PageID 2846 | Government argues valuation is "completely irrelevant"; loss = $212,502,160.25 | "any evidence regarding the 'valuation of CHT at the time of the acquisition' … [is] completely irrelevant to the loss amount under § 2B.1.1." | Government declines valuation and rests on price. |
| Apr. 27, 2026 | Doc. 344 | Government letter response | PageID 2847 | Government characterizes dispute as legal, not factual; opposes evidentiary hearing | "Defendant's argument presents a legal dispute, not a factual one, which does not require any sort of factual findings." | The controlled fork: legal → de novo; factual → Rule 32 / § 6A1.3 findings required. |
| May 5, 2026 | Sentencing Tr. (EX C) | Hearing before Hon. M.C. Arleo | Tr. 12–17 | Value existed (≈1,000 employees, 9 locations, businesses sold for >$100M); valuation expert could derive value; "never done" | "there's no evidence about what the value of the company was … a valuation expert would and could … come up with the valuation of the company." (Tr. 13) | Live preservation of value-received and "never done" argument. |
| May 5, 2026 | Sentencing Tr. (EX C) | Court ruling | Tr. 23–28 | Court adopts $212M; relies on Georgiou and Komar; distinguishes Nathan/Nagle; | "The reasonable estimate is the $212 million." (Tr. 16); "Both of these cases … dealt with fraudulently induced | The ruling under review. |

| Date | Docket / Source | Filing | Page / PageID / ¶ | Valuation Issue Raised | Exact Quotation | Why It Matters |
|------|-----------------|--------|-------------------|------------------------|-----------------|----------------|
| | | | | alternative finding | contracts between the government and the defendant." (Tr. 25) | |
| May 6, 2026 | Doc. 349 (EX Q) | Judgment | Doc. 349 | 60-month sentence; loss/restitution figures entered | (judgment) | Final appealable judgment. |

## Part B — Detailed Narrative Discussion

For each principal filing or proceeding, the following subsections summarize the valuation issue raised, set out the relevant language of record, and state what was thereby preserved.

### A.  August 17, 2016 — Duff & Phelps "Project Aquila Alpha" Valuation

#### Summary

Duff & Phelps Securities, LLC prepared discussion materials for the Special Committee of the Board in connection with the contemplated transaction. The materials applied multiple valuation methodologies, including a discounted-cash-flow analysis and public-company and precedent-transaction multiple analyses.

#### Relevant Figures of Record

> *"Indicated Enterprise Value Range (Rounded) $310.0 – $375.0 [million]."*
> D&P, Project Aquila Alpha, at 18 (DCF summary).

The same materials state an enterprise value of $252 million representing CC Capital's offer on a cash-free, debt-free basis (at 5), reflect 2016E revenue of $140.4M and 2017P revenue of $142.0M and 2016E adjusted EBITDA of $43.3M (at 17–18), and present an EBITDA-sensitivity observed value range of approximately $250.3M–$588.3M across a multiple range of 5.9x–13.6x (at 13).

#### Preservation Significance

This is contemporaneous, professional valuation evidence prepared at the transaction's board level. Its existence is dispositive of feasibility: a transaction-date valuation was not merely possible — one was performed. Whether its conclusions are adopted is a separate question; the exhibit draws no such conclusion.

### B.  June 20, 2018 — Bail Appeal Reply (Doc. 21, PageID 48–53)

#### Summary

In the Bail Appeal Reply, the defense identified the Duff & Phelps and SunTrust valuations as evidence that the company was worth substantially more than the price paid, and argued the Government had not calculated an appropriate valuation.

#### Relevant Language of Record

> *"Duff & Phelps Corp. and SunTrust Bank, relying on the data that the government alleges was false and inflated, determined that Company A should be valued at over double the price that CC Capital and Company A agreed to close at."*
> Doc. 21 at 2, PageID 49.

> *"The flaw in the government's theory is their failure to calculate an appropriate valuation of Company A."*
> Doc. 21 at 2, PageID 49.

#### Preservation Significance

As of 2018, the defense had (1) identified contemporaneous valuation evidence by name (D&P and SunTrust); (2) tied it to a fairness opinion under 17 CFR § 229.1014; and (3) framed the Government's

failure to value the company as the flaw in the loss theory. The value-received position is continuous from this point forward.

## C.  December 22, 2020 — Rule 17(c) Motion (Doc. 97)

### Summary

The Rule 17(c) motion asserted that valuation was central because the transaction significantly undervalued the company, and sought production of the valuation and diligence materials held by the transaction participants.

### Relevant Language of Record

> *"a transaction that significantly undervalued CHT solely because they were aware of CHT's true value and structured their actions accordingly."*
> Doc. 97 at 7, PageID 706.

> *"Valuation is essential to a fraud case …"*
> Doc. 97 at 10.

The motion's document requests expressly named Duff & Phelps, KPMG, Bank of America, FTI, CC Capital, and Pegasus/PARCS materials, among others.

### Preservation Significance

The motion preserves both the substantive valuation position and a documented request for the valuation inputs. It tends to show that the materials needed to value the company existed and were sought — and that the Government nonetheless never assembled a valuation.

## D.  2021 — Motion to Dismiss (Doc. 107-1) and Reply (Doc. 117)

### Summary

The 2021 filings argued that the Government's own discovery production contained the Duff & Phelps valuation, that the data D&P used was accurate (not inflated), and that D&P's value range exceeded the sale price.

### Relevant Language of Record

> *"the data used by Duff & Phelps in producing their valuation of Company A contained accurate numbers that were millions of dollars below the marketing spreadsheet figures."*
> Motion to Dismiss, Doc. 107-1 at 13, PageID 877.

> *"the Government's production of documents in discovery included a Duff & Phelps report … Duff & Phelps found a value range for the company well above the actual sale price."*
> Reply, Doc. 117 at 6, PageID 1165.

### Preservation Significance

These filings establish that the valuation evidence was not only available but was in the Government's own production years before sentencing. The Government's later position that valuation is irrelevant is thus a legal election, not a consequence of missing evidence.

## E.  April 2 and April 27, 2026 — The Sentencing Letters (Docs. 341, 344)

### Summary

The defense requested a transaction-date valuation and an evidentiary hearing (Doc. 341). The Government declined to present a valuation, argued valuation was legally irrelevant, and characterized the dispute as legal rather than factual (Doc. 344).

### Relevant Language of Record

> *"any evidence regarding the 'valuation of CHT at the time of the acquisition,' 'offers made [by Parmar] to purchase the business prior to bankruptcy,' and any subsequent 'asset sales through a bankruptcy fire sale' are completely irrelevant to the loss amount under § 2B.1.1."*
> Doc. 344 at 3, PageID 2846.

> *"Defendant's argument presents a legal dispute, not a factual one, which does not require any sort of factual findings."*
> Doc. 344 at 4, PageID 2847.

### Preservation Significance

The Government's response converts the dispute into a controlled fork. If legal (its position), review is de novo on whether § 2B1.1 permits equating price with loss absent a value-received finding. If factual, the Government's own framing required a hearing and findings under Rule 32(i)(3)(B) and U.S.S.G. § 6A1.3, which did not occur.

## F.  May 5, 2026 — Sentencing Hearing (EX C, Transcript)

### Relevant Language of Record — Defense

> *"the company clearly was not completely without value because there were … about a thousand employees, there were nine office locations … sold … for over a hundred million dollars."*
> Tr. at 12 (Mr. Hemann).

> *"loss equals the investment minus the value, and … we're also missing the valuation variable. … the company may have been worth $400 million or $500 million. We don't know because that was never done."*
> Tr. at 16–17 (Mr. Hemann).

### Relevant Language of Record — The Court

> *"the government has not provided any evidence of the value of the company at the time of the investors' purchase."*
> Tr. at 24 (the Court, summarizing the defense position).

> *"Both of these cases, however, dealt with fraudulently induced contracts between the government and the defendant."*
> Tr. at 25 (the Court, distinguishing Nathan and Nagle).

**The Court's Alternative Finding**

> *"Even if the Court were to agree that the estimate of actual loss here should account for the value the company had at the time of the Go-Private Transaction, there is a preponderance of the evidence to suggest that the estimated actual loss would be significant enough to have no impact on defendant's sentence."*

Tr. at 25–26 (the Court).

## Part C — Evolution of the Dispute

The following side-by-side table tracks how the defense and Government positions developed, anchored to the confirmed record.

| Period | Defense Position | Government Position |
|---|---|---|
| 2016 | — (pre-charge) | D&P valuation prepared for the Board: DCF EV range $310–375M vs. $252M offer EV (Project Aquila Alpha). |
| 2018 | D&P and SunTrust valued the company at over double the closing price using the same data alleged inflated (Doc. 21). | Fraud inflated company metrics; victim induced to overpay. |
| 2020 | Transaction significantly undervalued CHT; valuation essential; sought D&P/KPMG/BofA/FTI/CC discovery (Doc. 97). | Acquired companies had no or lower value; loss tied to investment. |
| 2021 | Government's own production contained the D&P report; D&P data not inflated; value range above sale price (Docs. 107-1, 117). | Alleged fraudulent inflation; loss = amount invested. |
| Jan.–Apr. 2026 | Government must present a transaction-date valuation; requested evidentiary hearing (Docs. 328, 334, 341). | Valuation "completely irrelevant"; loss = $212,502,160.25; dispute "legal, not factual"; no hearing (Doc. 344). |
| May 5, 2026 | Loss = investment minus value (Nathan); value existed; valuation "never done" (Tr. 13–17). | Reasonable estimate is $212M; Georgiou/Komar control; Nathan/Nagle distinguishable; alternative finding (Tr. 23–28). |

# Part D — Key Preservation Themes

## Theme 1 — Value Received Matters

The defense consistently maintained that the company received value and that actual loss must account for value received.

| Source | Supporting Language / Citation |
|---|---|
| Doc. 21 (2018) | D&P/SunTrust valued the company "at over double the price" of closing. |
| Sentencing Tr. 12 | "the company clearly was not completely without value …" |
| Sentencing Tr. 16–17 | "loss equals the investment minus the value … missing the valuation variable." |

## Theme 2 — Actual Loss Requires Valuation

The defense asserted that determining actual loss requires a transaction-date valuation of the enterprise.

| Source | Supporting Language / Citation |
|---|---|
| Doc. 97 (2020) | "Valuation is essential to a fraud case." |
| Sentencing Tr. 13 | Valuation expert could derive value from revenue × multiple. |
| Doc. 341 (2026) | Valuation "necessary to determine the loss amount under § 2B1.1." |

## Theme 3 — The Government Never Presented a Valuation

The Government did not commission or present a transaction-date valuation and rested on the purchase price.

| Source | Supporting Language / Citation |
|---|---|
| Doc. 344 at 2–3 | Government rests on $212M; offers case law, not a valuation. |
| Sentencing Tr. 24 | "the government has not provided any evidence of the value … at the time of the investors' purchase." |
| Sentencing Tr. 17 | "We don't know because that was never done." |

## Theme 4 — Defense Repeatedly Requested Valuation Analysis and Discovery

The defense requested valuation analysis, the underlying inputs, and an evidentiary hearing.

| Source | Supporting Language / Citation |
|---|---|
| Doc. 97 (2020) | Sought D&P/KPMG/BofA/FTI/CC/Pegasus-PARCS materials. |
| Doc. 341 (2026) | Requested valuation and witness testimony at a hearing. |
| Doc. 344 at 4 | Government acknowledges defense sought "valuation evidence" testimony. |

### Theme 5 — The Government Argued Valuation Was Irrelevant (Not Unavailable)

By 2026 the Government did not claim valuation evidence was unavailable; it argued valuation was legally irrelevant.

| Source | Supporting Language / Citation |
|---|---|
| Doc. 117 (2021) | Government's own production included the D&P report (availability not disputed). |
| Doc. 344 at 3 | Valuation is "completely irrelevant to the loss amount under § 2B.1.1." |
| Doc. 344 at 4 | "Defendant's argument presents a legal dispute, not a factual one." |

# EXHIBIT 2

## Valuation-Related Data Available to the Government
## for a Reasonable Transaction-Date Loss Estimate

*United States v. Parmjit Parmar, Crim. No. 2:18-cr-00735 (MCA) (D.N.J.)*

*Appeal No. 26-2218 (3d Cir.)*

### Purpose Statement

This exhibit does **not** attempt to determine fair market value and draws no valuation conclusion. It catalogs valuation-related information available to the Government and illustrates that contemporaneous valuation analysis was feasible using information already in existence.**This exhibit is offered to show feasibility and available inputs, not to substitute for the valuation the Government bore the burden to prove.**

Every data point is tied to a source of record identified in the table.

## Part A — Master Data Inventory

The table below (landscape, following pages) inventories valuation-relevant data points, their sources, and what each could inform. It distinguishes two tiers: hard record data—the contemporaneous Duff & Phelps valuation, segment financials, going-concern indicators, and creditor recoveries—and methodology inputs, such as the Houlihan Lokey segment teasers, which supply multiple-based comparables. The "Record Basis for Access" column states the basis on which each item was available to the prosecution or its investigative agencies, distinguishing items within the Government's own production from defense exhibits of record.

| Category | Data Point | Source | Date | What It Could Inform | Record Basis for Access | Citation |
|---|---|---|---|---|---|---|
| D&P Valuation (contemporaneous) | DCF Indicated Enterprise Value Range (Rounded) $310.0M–$375.0M; stated CC Capital offer EV $252M; 2016E rev $140.4M / 2017P $142.0M; 2016E adj. EBITDA $43.3M | Duff & Phelps "Project Aquila Alpha" (for Special Committee of the Board) | Aug. 17, 2016 | Independent DCF / multiple-based enterprise value at the transaction | In Government's discovery production (per Doc. 117 at 6) | D&P report at 5, 13, 18; Doc. 117, PageID 1165 |
| D&P / SunTrust (2018 statement) | D&P and SunTrust valued the company at "over double the price" of closing using the data alleged inflated | Bail Appeal Reply | June 20, 2018 | Two independent valuations exceeding price; fairness opinion (17 CFR § 229.1014) | Defense filing of record | Doc. 21, PageID 49 |
| Cash at Closing / Capital Structure | Go-Private financed by $130,000,000 BofA debt + $82,502,260.25 CC Holdco equity = $212,502,160.25 | Final PSR / Liquidating Trustee Declaration | Aug. 28, 2025 | Capital structure; enterprise vs. equity value framing | PSR of record | Doc. 306, PageID 2375 |
| 2017 Revenue — Orion | ~$18.6M revenue (2017); ~170 customers; 150+ US FTE; 7 locations | Houlihan Lokey teaser (Orion) | 2018 (re: FY2017) | Revenue-multiple / comparable-company inputs | Third-party banker materials | Ex. 20 |
| 2017 Rev/EBITDA — IPS | ~$20.5M billings, ~$2.2M EBITDA (2017); GPO ~4,000 physicians | Houlihan Lokey teaser (IPS) | 2018 (re: FY2017) | EBITDA-multiple inputs; segment going-concern | Third-party banker materials | Ex. 21 |
| 2017 Rev/EBITDA — NYNM | ~$101M billings, ~$12.2M net rev, ~$7.9M adj. EBITDA (2017); 23-yr history | Houlihan Lokey teaser (NYNM) | 2018 (re: FY2017) | EBITDA-multiple inputs; multi-year performance | Third-party banker materials | Ex. 22 |
| 2017 Rev/EBITDA — Allegiance | ~$10.4M revenue, ~$2.3M EBITDA (2017); ~$100M billings; 350 clients | Houlihan Lokey teaser (Allegiance) | 2018 (re: FY2017) | EBITDA-multiple inputs; segment going-concern | Third-party banker materials | Ex. 23 |
| Banking / Lender Materials | BofA Global Banking financing; internal communications re: underwriting and syndication | FBI 302s; BofA-DOJ production | Jan. 2017 | Lender diligence and the bank's contemporaneous view | Produced to DOJ | Exs. 9–11; BANA-DOJ-0003145 |
| Acquisition Offer (post-closing) | GSS proposals: Proposal 1 — $90M cash + $150M minimum guaranteed payments; secured debt repaid in full | GSS letter to CC Capital | Jan. 10, 2018 | Market-derived going-concern interest and price | Defense exhibit of record | Ex. 18 |
| Operating Footprint | ~1,000 employees; nine office | Sentencing colloquy; PSR | May 5, 2026 | Going-concern indicators (non-zero | Record / | Tr. 12; PSR |

| Category | Data Point | Source | Date | What It Could Inform | Record Basis for Access | Citation |
|---|---|---|---|---|---|---|
| | locations; operating businesses across segments | | | value) | transcript | |
| Bankruptcy / Creditor Recoveries | ~$16M (of $82M equity) + ~$71M (of $130M debt) ≈ $87M recovered (per the Court) | Sentencing colloquy; Plan / Trustee materials | May 5, 2026 | Recovery value; distinguishes total-loss scenario | Record / transcript | Tr. 12; Plan via Doc. 306 |
| Post-Closing Operations | Operated ~14 months before April 2018 Chapter 11 | Sentencing colloquy; PSR / Trustee Decl. | 2017–2018 | Going-concern duration; timing of measurement | Record | Tr. 24; PSR PageID 2375 |
| Asset Sales (bankruptcy) | Operating businesses sold for "over a hundred million dollars" (defense) | Sentencing colloquy | May 5, 2026 | Realized value of operating assets | Record / transcript | Tr. 12 |
| Rule 17(c) Discovery Targets | D&P / KPMG / BofA / FTI / CC / Pegasus-PARCS materials expressly sought | Rule 17(c) Motion | Dec. 22, 2020 | Identifies the universe of valuation inputs in participants' hands | Defense filing of record | Doc. 97 at 16, 24–27 |
| KPMG Due Diligence | ~One year of buy-side due diligence (referenced at sentencing) | KPMG diligence record | 2016–17 | Scope and findings of professional diligence | Referenced; scope | Tr. 17 |

## Part B — Duff & Phelps Section

The August 17, 2016 Duff & Phelps "Project Aquila Alpha" materials, prepared for the Special Committee of the Board, applied multiple valuation methodologies. The figures below are drawn directly from the report and are cited to the page on which they appear.

### Confirmed Figures of Record

| Figure / Output | Methodology | Source (D&P report) |
|---|---|---|
| DCF Indicated Enterprise Value Range (Rounded): $310.0M–$375.0M | Discounted cash flow | at 18 |
| Enterprise value $252M representing CC Capital's offer (cash-free, debt-free, 6/30/16 BS) | Offer build-up | at 5 |
| 2016E revenue $140.4M; 2017P revenue $142.0M; 2016E adjusted EBITDA $43.3M | Management projections | at 17–18 |
| Observed value range ≈ $250.3M–$588.3M (multiple range 5.9x–13.6x) | Public-company / M&A multiple sensitivity | at 13 |
| DCF implied multiples: 8.5x–10.3x LTM adj. EBITDA; 3.1x–3.7x LTM revenue; 7.2x–8.7x 2016E adj. EBITDA | DCF implied | at 18 |
| Proposed 2016E EV/EBITDA transaction multiple: 5.8x | Implied transaction multiple | at 12 |

**Source:** the cited Duff & Phelps pages (5, 12–14, 17–18) are attached as Sub-Exhibit 2-A so the figures travel with their source. The defense does not ask the Court to adopt the Duff & Phelps valuation. The point is that a transaction-date valuation existed, was capable of testing, and was within the Government's production.

## Part C — Company Value Indicators

Objective indicators of value drawn from the confirmed record. No legal conclusion is drawn.

| Indicator | Record Detail | Source |
|---|---|---|
| Contemporaneous valuation | D&P DCF EV range $310–375M; $252M offer EV | D&P report at 5, 18 |
| Cash deployed at closing | $212,502,160.25 disbursed Jan. 30, 2017 ($130M debt + $82.5M equity) | Doc. 306, PageID 2375 |
| Revenue (segments, FY2017) | Orion ~$18.6M; IPS ~$20.5M billings; NYNM ~$101M billings / ~$12.2M net; Allegiance ~$10.4M | Exs. 20–23 |
| EBITDA (segments, FY2017) | IPS ~$2.2M; NYNM ~$7.9M adj.; Allegiance ~$2.3M | Exs. 21–23 |
| Employees / locations | ~1,000 employees; nine locations | Tr. 12 |
| Post-closing operation | Operated ~14 months before Chapter 11 | Tr. 24; Doc. 306 |
| Acquisition offer | GSS: $90M cash + $150M minimum guaranteed payments | Ex. 18 |
| Asset sales in bankruptcy | "Over a hundred million dollars" (defense) | Tr. 12 |
| Creditor recoveries | ~$87M total (~$16M equity + ~$71M debt) | Tr. 12 |

## Part D — Reasonable Valuation Pathways

Methodologies that could have been applied using information of record. This section identifies inputs and sources; it draws no valuation conclusion.

| Methodology | Available Inputs of Record | Source Documents |
|---|---|---|
| Discounted Cash Flow | Management projections; segment revenue/EBITDA; D&P performed a DCF | D&P report at 18; Exs. 20–23 |
| Revenue Multiples | Segment revenue; D&P LTM revenue multiples 3.1x–3.7x | D&P report at 18; Exs. 20–23; Tr. 13 |
| Comparable Companies | D&P public-company set; banker segment teasers | D&P report at 14; Exs. 21–23 |
| Comparable Transactions | D&P M&A transaction multiples; Houlihan sale process; GSS offer | D&P report at 12; Exs. 18, 20–23 |
| Asset-Based | Asset sales realized in bankruptcy; balance-sheet items at closing | Tr. 12; Doc. 306 |
| Fairness-Opinion Approach | D&P/SunTrust fairness work (17 CFR § 229.1014); KPMG diligence | Doc. 21, PageID 49; Tr. 17 |

The point of this section is feasibility, not result: each pathway has at least one confirmed input of record, and one (DCF) was in fact performed. Whether any pathway yields a value above or below the purchase price is not addressed here.

## Part E — Government Position

The following catalogs, with exact citations, the statements in which the Government argued that valuation was unnecessary or irrelevant and that loss equals the amount invested.

> *"any evidence regarding the 'valuation of CHT at the time of the acquisition,' 'offers made [by Parmar] to purchase the business prior to bankruptcy,' and any subsequent 'asset sales through a bankruptcy fire sale' are completely irrelevant to the loss amount under § 2B.1.1."*
> Doc. 344 at 3, PageID 2846.

> *"'valuation evidence,' which … is not a relevant figure under § 2B.1.1."*
> Doc. 344 at 4, PageID 2847.

> *"Defendant's argument presents a legal dispute, not a factual one, which does not require any sort of factual findings, and one that moreover finds no support in relevant case law."*
> Doc. 344 at 4, PageID 2847.

> *"The Government's theory on loss depends on one thing: a Go-Private Transaction … in which victims indisputably paid $212,502,160.25 for a company in a deal inextricably tainted by Parmar's fraud."*
> Doc. 344 at 3, PageID 2846.

## Part F — Synthesis

The record reflects that valuation-related information existed and was available from numerous sources, including a contemporaneous Duff & Phelps valuation, segment-level revenue and EBITDA figures, a senior secured financing, a banker-led sale process, a post-closing acquisition proposal, and bankruptcy recoveries.

The record further reflects that the parties disputed whether transaction-date value was legally relevant to the determination of actual loss under U.S.S.G. § 2B1.1.

The defense repeatedly asserted that actual loss required consideration of value received, and requested a transaction-date valuation, the underlying discovery, and an evidentiary hearing.

The Government repeatedly asserted that valuation was unnecessary and that loss equaled the amount invested, and declined to present a transaction-date valuation — while not contending that valuation evidence was unavailable.

The exhibits cited herein document the existence of valuation-related information available during the investigation, prosecution, sentencing, and post-sentencing proceedings.

*Nothing in this exhibit states or implies a fair market value, and nothing here should be read as a conclusion that the company was or was not worth any particular amount.*

## Part G — Burden-of-Proof Relevance

The Government bore the burden to prove loss by a preponderance of the evidence. U.S.S.G. § 2B1.1; United States v. Kirschner, 995 F.3d 327 (3d Cir. 2021). The materials catalogued above show that transaction-date valuation inputs existed — indeed, that a professional valuation had been performed and was within the Government's own production.

The Government's April 27, 2026 letter did not claim that valuation was impossible or that the inputs were unavailable. It argued that valuation was irrelevant. That distinction is the issue preserved for review: whether § 2B1.1 permits the Government to satisfy its burden by equating the amount invested with actual loss, without any finding as to value received, where contemporaneous valuation evidence existed and was identified.

*This section draws no conclusion as to the correct value or the correct loss figure. It identifies only the relationship between the available inputs and the burden the Government bore.*