# PUBLIC — REDACTED VERSION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Crim. No. 2:18-cr-00735 (MCA) |
| Plaintiff, | Appeal No. 26-2218 (3d Cir.) |
| v. | Hon. Madeline Cox Arleo |
| PARMJIT PARMAR, a/k/a "Paul Parmar," | |
| Defendant. | |

## EXHIBIT 7

**Guidelines Anchoring, Harmless-Error, and Qualifying-Result Sensitivity Analysis**

This is the PUBLIC, REDACTED version of this document. Material concerning Mr. Parmar's medical information and his service to and cooperation with federal law enforcement—the substance of which was sealed at the May 5, 2026 sentencing hearing at the defense's request—has been redacted and is shown by solid black marking. An unredacted version is filed under seal. This document is offered solely in support of Mr. Parmar's motion for release pending appeal and alternative stay of surrender, and not to relitigate guilt, sentencing, valuation, or loss.

# EXHIBIT 7

**Guidelines Anchoring, Harmless-Error, and Qualifying-Result Sensitivity Analysis**

*United States v. Parmjit Parmar, Crim. No. 2:18-cr-00735 (MCA) (D.N.J.); Appeal No. 26-2218 (3d Cir.)*

---

### NOTICE AND PURPOSE

This exhibit addresses the anticipated harmless-error / same-sentence argument for purposes of 18 U.S.C. § 3143(b)(1)(B). It is not offered to relitigate sentencing, to propose any sentence, or to ask the Court to reweigh the § 3553(a) factors. It is offered only to show that if Mr. Parmar prevails on the preserved loss and valuation issue, the result is likely to be a qualifying outcome under § 3143(b). All Guidelines figures are the Court's own, drawn from the certified May 5, 2026 sentencing transcript. The "accommodation" figures in the sensitivity tables are hypothetical and are used only to test materiality; they are not proposed sentences, predictions, or assertions about the reduction any factor warrants.

---

## A. Executive Summary

1. The Court adopted offense level 41, criminal history category I, producing an advisory Guidelines range of 324 to 405 months, subject to the 60-month statutory maximum. "The guideline level that probation has calculated has a substantially higher guideline range. They calculate an offense level of 41, with a criminal history category of 1 which puts Mr. Parmar in a guideline range of 324 to 405 months." Tr. 5:6–11; "His guideline range is criminal history of 41 — an offense level 41, criminal history category of 1 is 324 to 405 months." Tr. 41:5–7.

2. ███████████████████████████████████████████████████████████ ██████

3. ███████████████████████████████████████████████████████████ █████

4. The Court's alternative $150,000 discussion did not perform a full § 3553(a) resentencing from a corrected low anchor. It stated only that a loss above $150,000 would reach a range "consistent with the statutory maximum." "Excluding the enhancement that is based on the estimated actual loss, defendant is facing an offense level of 15. For the defendant to fall within a guideline range consistent with the statutory maximum, he would need to be an offense level of 25, which has a recommended range of 57 to 71 months. That means the enhancement based on the estimated actual loss would need to be at least 10." Tr. 26:9–17.

5. Even the Court's bankruptcy-offset alternative remained far above the cap. "Even if the Court gave — reduced the amount of loss based on the money that was paid to the investors during the bankruptcy, that would still result in a level 24 and a guideline range well above the 60 months' maximum here. It would be in the range of 262 to 373 months." Tr. 26:18–23.

6. The record therefore does not establish harmlessness. It shows the Court used a very high Guidelines anchor, considered mitigation against that anchor, and still imposed the maximum. A corrected range would require a materially different sentencing analysis.

7. Under § 3143(b), Mr. Parmar need not prove the exact sentence on remand. He need only show that a favorable ruling is likely to result in a qualifying outcome. This exhibit shows that the likely-result requirement is satisfied.

## B. Transcript Quotations (Certified May 5, 2026 Sentencing Transcript)

| Transcript / Speaker | Quotation and Significance |
|---|---|
| Tr. 5:6–11; Tr. 41:5–7 (The Court) | "… an offense level of 41, with a criminal history category of 1 which puts Mr. Parmar in a guideline range of 324 to 405 months."<br><br>**Why it matters:** Establishes the Guidelines anchor. The sentence was imposed from a 324-to-405-month framework capped at 60 months. |
| Tr. 17:4–13 (Mr. Hemann) | "[T]he formula is that loss equals the investment minus the value, and I think we're missing two variables here. We're missing the loss variable, obviously, which we're solving for, but we're also missing the valuation variable. … [T]he company may have been worth $400 million or $500 million. We don't know because that was never done."<br><br>**Why it matters:** The defense identified the missing valuation variable on the record; transaction-date value was never determined. |
| Tr. 23–24 (The Court, summarizing the defense) | "… the difference between the price paid for the company and the actual value of the company at the time of the transaction, and … the government has not provided any evidence of the value …"<br><br>**Why it matters:** The Court itself recorded that the Government provided no transaction-date value evidence. |
| Tr. 13–14 (Mr. Hemann / The Court) | MR. HEMANN: "[T]here's no evidence about what the value of the company was … a valuation expert would and could, and does every day, take that revenue number, multiply it by the appropriate multiple … and come up with the valuation of the company." THE COURT: "Yes, there isn't, but I will say this: Revenue is one way to value a company."<br><br>**Why it matters:** The Court acknowledged the absence of transaction-date valuation evidence in the record and recognized that revenue is one possible valuation method. |
| Tr. 25–26 (The Court) | "Even if the Court were to agree that the estimate of actual loss here should account for the value the company had at the time of the Go-Private Transaction, there is a preponderance of the evidence to suggest that the estimated actual loss would be significant enough to have no impact on defendant's sentence."<br><br>**Why it matters:** The alternative harmlessness statement assumed a loss above $150,000 without a corrected valuation or a full § 3553(a) resentencing. |
| Tr. 26:9–23 (The Court) | "… defendant is facing an offense level of 15. … he would need to be an offense level of 25, which has a recommended range of 57 to 71 months. … [E]ven if the Court … reduced the amount of loss … that would still result in a level 24 and a guideline range … [of] 262 to 373 months."<br><br>**Why it matters:** The Court's own fallback anchors are 57–71 (level 25) and 262–373 (level 24); the no-enhancement level is 15. |
| Tr. 43:6–7; 43:20–24 (The Court / Mr. Hemann) | ██████████████████████████████████ ███████<br><br>**Why it matters:** ███████████████████████████████ ███████ |
| Tr. 44:22–23; 50:12–16 (Mr. Hemann) | ██████████████████████████████████ ███████<br><br>**Why it matters:** ███████████████████████████████ ███████ |

| Transcript / Speaker | Quotation and Significance |
|---|---|
| Tr. 45:5–8 (The Court) | ██████████████████████████████████ <br><br>**Why it matters:** <br>██████████████████████████████ |
| Tr. 72:8–11; 73:1–4 (The Court) | █████████████████████████ <br><br>**Why it matters:** <br>██████████████████████ |
| Tr. 77:13–19 (The Court) | █████████████████████████ <br><br>**Why it matters:** The Court imposed the maximum after considering mitigation against the 324–405-month anchor. |

## C.  Guidelines Anchoring Analysis

The Guidelines are the starting point and initial benchmark for federal sentencing. This exhibit does not ask the Court to reconsider the sentence. It identifies why the harmlessness argument is not automatic.

The Court began from offense level 41, criminal history category I, with an advisory range of 324 to 405 months. That range was more than five times the statutory maximum at the low end and more than six times the maximum at the high end. Once the statutory cap applied, the Guidelines sentence became 60 months. From that framework, every mitigating factor had to work against an already-capped sentence.

By contrast, under the Court's own alternative $150,000 discussion, the relevant range would have been 57 to 71 months, not 324 to 405. The statutory maximum would no longer operate as a dramatic cap on a far higher range; it would sit inside or near the center of the advisory range. That materially changes the sentencing anchor. And if the Government failed to prove any actual loss after value received, the loss enhancement would not apply at all; the Court stated that excluding the loss enhancement, the offense level was 15.

The record does not contain an independent same-sentence ruling. The Court did not state: "If the correct range were 57 to 71 months, I would still impose 60 months after independently applying § 3553(a) from that corrected range." Nor did it state: "If there were no proven actual loss, I would still impose 60 months." The Court considered mitigation from the adopted 324-to-405-month framework, and a materially lower range would materially change that anchor.

## D.  Sensitivity Table 1 — High-Range Anchor (324 to 405 Months)

| Scenario | Assumed accommodation | Range after accommodation | Statutory-cap effect |
|---|---|---|---|
| No accommodation | 0 months | 324–405 months | Capped at 60 (maximum) |
| 50-month accommodation | 50 months | 274–355 months | Capped at 60 (maximum) |
| 100-month accommodation | 100 months | 224–305 months | Capped at 60 (maximum) |
| 150-month accommodation | 150 months | 174–255 months | Capped at 60 (maximum) |
| 200-month accommodation | 200 months | 124–205 months | Capped at 60 (maximum) |

*Illustrative only; accommodation figures are hypothetical and subtracted from both ends of the Court's range. The arithmetic is the Court's own.*

Under the adopted 324-to-405-month framework, even very large accommodation could not move the sentence below the statutory maximum. The fact that the Court imposed 60 months after considering mitigation therefore does not establish that the same sentence would have been imposed under a materially lower correct range.

### E.  Sensitivity Table 2 — The Court's Own $150,000 Anchor (57 to 71 Months)

| Scenario | Assumed accommodation | Range after accommodation | § 3143(b) effect |
|---|---|---|---|
| **No accommodation** | 0 months | **57–71 months** | Within cap; requires independent explanation from corrected anchor |
| **50-month accommodation** | 50 months | **7–21 months** | Qualifying: far below the cap |
| **100-month accommodation** | 100 months | **0 months / time served** | Qualifying: non-custodial |
| **150-month accommodation** | 150 months | **0 months / time served** | Qualifying: non-custodial |
| **200-month accommodation** | 200 months | **0 months / time served** | Qualifying: non-custodial |

*Illustrative only; not proposed sentences and not predictions. The same accommodation that is absorbed by the statutory cap under the high anchor becomes sentence-changing under the Court's own corrected anchor.*

This is the asymmetry. The identical mitigation the Court said it considered is mathematically invisible against the 324–405-month anchor and outcome-determinative against the Court's own 57–71-month anchor. **On the Court's own numbers, the loss finding was the difference between a maximum sentence and a sentence at or near release.**

## F.  Sensitivity Table 3 — The No-Proven-Loss Scenario

| Loss finding | Loss enhancement | Offense level (Court's figures) | § 3143(b) significance |
|---|---|---|---|
| No transaction-date value proven / no value received | None | 15 | Dramatically lower than the 57–71-month range; strongly qualifying. |
| Some loss proven, but not above $150,000 | Less than +10 | Below 25 | Advisory range below the statutory maximum; likely qualifying. |
| Loss above $150,000 (Court's alternative) | +10 | 25 (57–71 mo.) | Still materially lower than 324–405; not automatically harmless, because mitigation could produce a lower sentence. |

*"Excluding the enhancement that is based on the estimated actual loss, defendant is facing an offense level of 15." Tr. 26:9–10.*

The defense position is not that $150,000 should be substituted as an arbitrary loss figure. The Government bore the burden to prove actual loss after accounting for transaction-date value received. If the Government did not prove the value received, it did not prove actual loss. In that scenario the correct loss is not $150,000; it is unproven, and the enhancement cannot be imposed.

## G.  Why the $150,000 Threshold Cannot Cure the Error

1. **It does not apply the value-received methodology.** The preserved issue is not whether some loss "feels" likely; it is whether the Government proved actual loss by subtracting transaction-date value received from the amount paid. The $150,000 statement performs no such subtraction.

2. **It assumes the answer to the disputed valuation question.** Treating $150,000 as a floor assumes the company's transaction-date value was at least roughly $212 million less than the amount paid. But the Government presented no transaction-date valuation, and the Court recorded that "the government has not provided any evidence of the value" as of the transaction. Tr. 24:5; Tr. 14:3.

3. **It does not conduct a corrected-range resentencing.** A 57-to-71-month range is not equivalent to a 324-to-405-month range capped at 60. The same mitigation has radically different consequences under each, and the record contains no independent ruling that the sentence would be the same from the lower anchor.

The legally relevant question is not whether the Court believed some loss existed. It is whether the Government proved the *amount* of actual loss under the correct legal methodology. Where it did not, and where the court made no transaction-date value finding, the loss enhancement cannot be sustained on the current record absent proof of actual loss under the correct methodology. The defense does not ask this Court to resolve that question now; it shows only that the question is substantial and that its resolution is consequential.

## H.  Relationship to Exhibit 3 and to § 3143(b)

See Exhibit 3 for the Government's statements that transaction-date valuation was legally irrelevant, that no evidentiary hearing was required, and that the dispute required no factual findings. This exhibit assumes those positions and shows their sentencing consequence: a loss finding that, on the Court's own

numbers, determined the sentence. In short, Exhibit 3 addresses substantiality; Exhibit 7 addresses consequence and materiality. Together they satisfy both prongs of § 3143(b)(1)(B): a substantial question of law or fact, and a likelihood that its favorable resolution would produce a qualifying result.

## I. Limitations

- This exhibit does not ask the Court to resentence Mr. Parmar.
- It does not argue that any specific alternative sentence must be imposed.
- It does not claim the Court ignored mitigation; the Court expressly considered it.
- It does not rely on any new valuation opinion and does not substitute $150,000 as the correct loss.
- It is offered only to show that the preserved loss issue is consequential and that, if resolved in Mr. Parmar's favor, it is likely to result in a qualifying outcome under § 3143(b)(1)(B).