**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**CHAMBERS OF**
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

**MARTIN LUTHER KING COURTHOUSE**
**50 WALNUT ST. ROOM 4066**
**NEWARK, NJ 07101**
**973-297-4903**

September 3, 2026

VIA ECF
All Counsel of Record

# LETTER ORDER

**Re: United States v. Parmjit Parmar**
**Criminal Action No. 18-735**

Dear Litigants:

Pending before the Court is Defendant Parmjit Parmar's ("Parmar") Motion to Vacate the Court's April 1, 2026 Preliminary Order of Forfeiture as to Specific Property. See ECF No. 339 ("Forfeiture Order"); ECF No. 345 ("Vacatur Motion"). The Government opposes the Vacatur Motion. See ECF No. 346 ("Opposition"). For the reasons set forth below, the Vacatur Motion is **DENIED**.

On October 6, 2025, the Government filed a Motion for a Preliminary Order of Forfeiture as to Specific Property ("Forfeiture Motion"). See ECF No. 314. For over five months, Parmar filed no opposition to the Forfeiture Motion. See generally Docket. On March 24, 2026, the Government filed a letter requesting the Court construe the Forfeiture Motion as unopposed and grant it. See ECF No. 338. On April 1, 2026, the Court entered the Forfeiture Order.

The next day, Parmar filed a letter that objected to the Forfeiture Order's inclusion of two TD Bank accounts held in the name of First Connect Center Investors Fund LP under account number -8861 and account number -7218 (the "At-Issue Accounts"). See ECF No. 341. On April 3, 2026, the Court rescheduled Parmer's long-belated sentencing hearing and ordered him to file a formal motion to vacate if necessary. See ECF No. 342.[1] More than three weeks later, on the eve of the sentencing hearing, Parmar filed the Vacatur Motion. It opposes the Forfeiture Order on the grounds that: (1) Parmar was not required to respond to the Forfeiture Motion while there was no legally appointed U.S. Attorney in the U.S. Attorney's Office for the District of New Jersey; and (2) the Government has failed to prove the requisite nexus between the conspiracy to which Parmar pleaded guilty and the At-Issue Accounts. See Vacatur Mot. at 2–4. Both contentions lack merit.

[1] For a recounting of Parmar's use of various tactics to delay this case's resolution, see ECF No. 372.

First, Parmar's Vacatur Motion is untimely. Parmar was required to respond to the Forfeiture Motion within 14 days of the designated motion day, or by October 20, 2025. See L. Cr. R. 1.1; L. Civ. R. 7.1(c); L. Civ. R. 78.1(a). He waited more than five months to do so, and did so informally and non-substantively in a letter. Then, after being instructed by the Court to file a formal motion to vacate, he waited an additional three weeks (and until the eve of his sentencing hearing) to do so (and submitted a four-page objection). Parmar's decision to wait until the eleventh hour to raise objections to the Vacatur Motion is but another example of the pattern of dilatory conduct and intentional obfuscation that he exhibited throughout this case (which the Court previously documented in detail, see ECF No. 372). He continues to demonstrate indifference to the Court's local rules and established deadlines.[2]

Second, even if considered on its merits, Parmar's Vacatur Motion fails. "Any property, real or personal, which constitutes or is derived from proceeds traceable to" a conspiracy to commit securities fraud is subject to forfeiture. 18 U.S.C. § 981(a)(1)(C); see also 28 U.S.C. § 2461(c). The court orders forfeiture as a mandatory part of sentencing. See 28 U.S.C. § 2461(c); accord United States v Monsanto, 491 U.S. 600, 607 (1989). The Government must prove, by a preponderance of the evidence, that the property to be forfeited "has some nexus to the property 'involved' in the" offense conduct. See United States v. Voight, 89 F.3d 1050, 1087 (3d Cir. 1996); see also United States v. Sandini, 816 F.2d 869, 875–76 (3d Cir. 1987).

Here, the Government has met this burden. In support of its Forfeiture Motion, the Government provided the Affidavit of FBI Special Agent James Wolfe. See ECF No. 314.2 ("Wolfe Affidavit"). The Wolfe Affidavit details, in sworn testimony, how Parmar and his co-conspirators conducted secondary offerings to acquire three fake shell companies to fraudulently inflate the value of their publicly-traded company, Constellation Healthcare Technologies ("CHT"), before inducing a group of investors to purchase CHT as part of a go-private transaction at a price far exceeding its actual value. See Wolfe Aff. ¶¶ 11–48. It also explained how the funds obtained through these secondary offerings were funneled to the At-Issue Accounts. See id. ¶¶ 61–127. And it explained how Parmar was tied to these accounts. See id. Parmar offers no serious objection to this factual account, and the Court finds it sufficient to show the requisite nexus between the offense conduct and the At-Issue Accounts.[3]

---

[2] The Court also finds Parmar's objections to timing unpersuasive. Although he is correct that during most of the Forfeiture Motion's pendency no U.S. Attorney was legally appointed for the U.S. Attorney's Office in the District of New Jersey, that fact did not stop him from filing his sentencing submission on January 26, 2026, see ECF No. 328, or replying to the Government's sentencing submission on February 11, 2026 (the latter of which was signed by then-U.S. Deputy Attorney General Todd Blanche), see ECF No. 334. Such activity makes in implausible that Parmar was not aware of the Government's Forfeiture Motion and instead supports the conclusion that he elected to wait to respond until it suited his strategy of continually delaying this case's resolution.

[3] Parmar offers two arguments to contest this factual nexus. He first argues that the secondary transactions took place one year before the go-private transaction. The funds obtained through them were therefore not proceeds of the go-private transaction and are not traceable to the offense to which he pleaded guilty. See Vacatur Mot. at 3. But Parmar pleaded guilty to inflate the value of CHT to defraud investors, and the secondary offerings were a key method by which CHT's value was inflated. See ECF No. 298 (plea agreement); ECF No. 300 (transcript of plea hearing). The funds obtained through those offerings are therefore traceable to the ultimate fraud. Separately, Parmar claims (without any factual evidence) that the funds in the At-Issue Accounts were deposited by (and are the property of) third party Anil Sharma. He then argues that the Government does not explain how these funds were traceable to the secondary offerings or efforts to inflate CHT's value. See Vacatur Mot. at 4. But the Government laid out, in

Accordingly, the Vacatur Motion, ECF No. 345, is **DENIED**. The At-Issue Accounts will be forfeited pursuant to this Court's Forfeiture Order.

**SO ORDERED**.

***s/ Madeline Cox Arleo***
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

meticulous fashion, this connection. See Forfeiture Mot. at 7–11 (citing Wolfe Aff. ¶¶ 72–114). And Parmar has no response to the fact that both At-Issue Accounts were opened under his home address in New Jersey. See Opp. at 2 n.1.